James Bradley Haag -- In Propria Persona
California Institution For Men
[C.D.C.R. #]: T-75535 ["Housing Unit"] Sycamore West--201-L
P.O. Box 3100
Chino, California

FILED

JUN 07 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY [signature]
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES BRADLEY HAAG,<br>PLAINTIFF,<br>V<br>JEFF MACOMBER, SECRETARY -- CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br>RON BROOMFIELD, DIRECTOR OF ADULT DIVISION -- CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br>JOSEPH POICK, DIRECTOR -- CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES,<br>BRANDON STROBELT, CASE COUNSELOR III -- "DIRECTOR" OF INTEGRATED SUBSTANCE USE DISORDER TREATMENT PROGRAM --- CALIFORNIA INSTITUTION FOR MEN,<br>"NUMEROUS OTHERS," ET AL,<br>DEFENDANTS. | CASE #: 2:24-CV-1624 CKD (PC)<br>(To be supplied by the Clerk)<br><br>**CIVIL RIGHTS COMPLAINT BY A PRISONER**<br><br>[X] Original Complaint<br>[ ] First Amended Complaint<br>[ ] Second Amended Complaint |

**A. JURISDICTION**

1. This Court has Jurisdiction over this Action pursuant to:
   - [X] 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   - [ ] 28 U.S.C. § 1331; Bivens v Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971)
   - [ ] Other: ____

2. Institution where Violation Occurred: CALIFORNIA INSTITUTION FOR MEN - CHINO, CALIFORNIA

## ADDITIONAL DEFENDANTS

5. ALICE GRUTMAN -- LICENSED CLINICAL SOCIAL WORKER -- [EMPLOYED BY] CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES.
6. GRACIELA ROMERO -- L.C.S.W. -- [EMPLOYED BY] C.C.H.C.S..
7. OUSMAN CEESAY -- REGISTERED NURSE -- [EMPLOYED BY] THE CALIFORNIA INSTITUTION FOR MEN AS A R.N. AT FACILITY "C".
8. M. FAROOK -- M.D./M.P.H./F.A.A.F.P./C.C.H.P./CHIEF MEDICAL EXECUTIVE -- [EMPLOYED BY] CALIFORNIA INSTITUTION FOR MEN.
9. S. GATES -- CHIEF / HEALTH CARE CORRESPONDENCE AND APPEALS BRANCH POLICY AND RISK MANAGEMENT SERVICES [EMPLOYED BY] C.C.H.C.S..

## B. DEFENDANTS

JEFF MACOMBER, the first Defendant, is employed as the: SECRETARY [OF THE] CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; in Sacramento, California.

RON BROOMFIELD the Second Defendant, is employed as the DIRECTOR [OF] C.D.C.R. ADULT DIVISION; in Sacramento, California

JOSEPH POICK, the third Defendant, is employed as the: DIRECTOR/CHIEF MEDICAL OFFICER; in Elk Grove, California.

BRANDON STROBELT, the fourth Defendant, is employed as [THE] CALIFORNIA INSTITUTION FOR MEN[S]' CASE COUNSELOR III; in Chino, California (purportedly "in charge" of C.I.M'S. I.S.U.D.T. PROGRAM).

[THERE ARE 5 ADDITIONAL DEFENDANTS. THEIR NAMES, POSITIONS, AND LOCATIONS ARE ON PG.1-A].

## C. PREVIOUS LAWSUITS

1. I HAVE NOT FILED ANY OTHER LAWSUITS WHILE I'VE BEEN A PRISONER.

2. -0-

a. -0-

b. -0-

c. -0- *

* I HAVE NOT 'FULLY TYPED THE QUESTIONS PERTAINING TO PREVIOUS LAWSUITS' SINCE THERE IS NOTHING TO ANSWER / NO INFORMATION TO PROVIDE. THIS IS MY VERY FIRST LAWSUIT.

## D. CAUSE OF ACTION

### CLAIM I

1. State the Constitutional or other Federal Right that was violated: Fourteenth Amendment's Equal Protection of the Law Clause; Eighth Amendment's Cruel and Unusual Punishment Clause.

2. **Claim I.** Identify the issue involved. Check **only one.** State additional issues in separate Claims.

- [ ] Basic necessities
- [ ] Mail
- [ ] Access to the Court
- [ ] Disciplinary Proceedings
- [ ] Property
- [ ] Exercise in Religion
- [ ] Excessive Force by an Officer
- [ ] Threat to Safety
- [X] Medical Care
- [ ] Retaliation
- [ ] Other: ______________________

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim I. Describe exactly what **each Defendant** did or did not do that violated your Rights. State the Facts clearly in your own words without citing Legal Authority or Arguments.

["FOR THE MASTER ISSUE," "MEDICAL CARE" IS THE CLOSEST. HOWEVER, PLEASE NOTE FOR THE RECORD THAT "DISCIPLINARY PROCEEDINGS" ALSO DIRECTLY "TIE IN" TO CLAIM I]. ON JANUARY 21, 2020, [C.D.C.R'S.] CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES "LAUNCHED [THE] INTEGRATED SUBSTANCE USE DISORDER **TREATMENT** PROGRAM (A "SELF-HELP" GROUP). AT FIRST, 'SUCH WAS VOLUNTARY.' 'VERY FEW VOLUNTEERED, SO ATTENDANCE BECAME MANDATORY STATEWIDE.' I **DO NOT HAVE ANY "SUBSTANCE ISSUES / PROBLEMS," WHATSOEVER.** ON JANUARY 24, 2023, I WAS TRANSPORTED TO C.I.M'S. FACILITY "D" FOR A "TELECONFERENCE" WITH: [C.C.H.C.S.] 'LICENSED CLINICAL SOCIAL WORKER,' ALICE GRUTMAN."HER SOLE MISSION" 'WAS TO SIGN ME UP FOR I.S.U.D.T..' I IMMEDIATELY INFORMED HER THAT ("AT THAT TIME") I HAD BEEN PERFECTLY SOBER: 34 YEARS, 1 MONTH, 2 WEEKS, AND 6 DAYS -- COMMENCING ON DECEMBER 4, 1988. I ALSO TOLD HER THAT I'VE BEEN "TOBACCO FREE" SINCE JUNE 1, 1990. MS. GRUTMAN WAS PERSISTENT. SO WAS I. FINALLY "THE INTERVIEW ENDED." I SIGNED A REFUSAL. ON AUGUST 8, 2023, "I WAS SUMMONED" TO C.I.M'S. FACILITY "C" CLINIC FOR AN "IN-PERSON" INTERVIEW WITH [C.C.H.C.S.] L.C.S.W.: GRACIELA ROMERO. "HER SOLE MISSION" WAS "TO SIGN ME UP FOR I.S.U.D.T.." I INFORMED HER "OF MY CURRENT TIME" OF PERFECT SOBRIETY: 34 YEARS, 8 MONTHS, AND 4 DAYS. I ALSO INFORMED HER OF MY BEING >>>[CONTINUED ON PG.3-A]>>>

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

I HAVE BEEN UNJUSTLY SUBJECTED TO C.D.C.R. "DISCIPLINARY PROCEEDINGS" BECAUSE OF MY RESISTANCE TO ATTENDING I.S.U.D.T. GROUPS, "AM AT RISK" OF FURTHER, "MORE SERIOUS" DISCIPLINE, AND "HAVE BEEN MADE A SUBJECT OF LIES AND EXTREMELY PREJUDICIAL "STATEMENTS BY C.C.H.C.S. / INTERRELATED PERSONNEL.""

5. **Administrative Remedies**

a. Are there Administrative Remedies (Grievance Procedures or Administrative Appeals) available at your institution? [XX] Yes [ ] No

b. Did you submit a Request For Relief on Claim I? [XX] Yes [ ] No

c. Did you Appeal your Request For Relief on Claim I To the Highest Level? [XX] Yes [ ] No

d. If you did not submit or appeal a Request For Administrative Relief at any level, briefly explain why you did not. N/A.

3. SUPPORTING FACTS (continued)

>>>THIRTY THREE YEARS, TWO MONTHS, ONE WEEK, AND ONE DAY, TOBACCO FREE. I STRONGLY "EMPHASIZED THE FACT THAT I DO NOT HAVE "SUBSTANCE ISSUES.""

MS. ROMERO ATTEMPTED 'TO GET ME TO AGREE TO TAKE PSYCHOTROPIC MEDICATION.' I ADAMANTLY REFUSED -- VERBALLY CITING STATE AND FEDERAL APPLICABLE AUTHORITIES 'PERTAINING TO MY RIGHT TO REFUSE.' MS. ROMERO THEN INFORMED ME "THAT I MIGHT HAVE ONE MORE INTERVIEW." 'SHE THEN PRODUCED A PURPORTED "REFUSAL FORM" -- ASKING ME TO SIGN IT.' UPON READING THE "BIASED LANGUAGE IN THE FORM," I REFUSED TO SIGN IT. I THEN "TOLD HER I WAS DONE AND TO LEAVE ME ALONE," GOT UP, AND LEFT.

ON AUGUST 21, 2023, I WAS "ASSIGNED" TO I.S.U.D.T'S. COGNITIVE BEHAVIORAL INTERVENTION CLASSES ON MONDAYS, WEDNESDAYS, AND FRIDAYS, FROM: 8:15 A.M. - 10:15 A.M.. "AT FIRST," I WAS REALLY MAD. SUBSEQUENTLY, I REFUSED TO ATTEND THOSE CLASSES. AS A RESULT OF SAID REFUSAL, I WAS 'ISSUED A "COUNSELING CHRONO" BY SECURITY/CUSTODY OFFICER, VELAZQUEZ.' I THEN STARTED "GOING TO THE GROUP ROOM," "SIGNING IN," THEN LEAVING. THAT RESULTED IN MY "BEING ISSUED AN ADMINISTRATIVE 115," BY OFFICER VELAZQUEZ. ACCORDINGLY, TO 'AVOID FURTHER, PROGRESSIVE, MORE SERIOUS, C.D.C.R. DISCIPLINARY PROCEEDINGS, I WENT TO "THE GROUPS," JUST SAT THERE, BUT REFUSED TO ACTUALLY PARTICIPATE ("I HAD BEEN INFORMED BY "CUSTODY STAFF" THAT -- "AS LONG AS I WAS PHYSICALLY THERE" -- I WAS SAFE").'

ON JANUARY 9, 2024, 'I WAS MOVED FROM FACILITY "C" TO FACILITY "B".'

ON, OR ABOUT MARCH 11, 2024, I "WAS SUMMONED" TO ATTEND I.S.U.D.T. CLASSES ON MONDAY, WEDNESDAY, AND FRIDAY NIGHTS FROM 5:30 P.M. - 7:30 P.M.. AS OF MARCH 11, 2024, 'MY LENGTH OF TIME SOBER' HAD "GROWN TO:" 35 YEARS, 3 MONTHS, AND 1 WEEK. 'MY LENGTH OF TIME BEING TOBACCO FREE' HAD "GROWN TO:" 33 YEARS, 9 MONTHS, 1 WEEK, AND 4 DAYS. BEFORE "THE START" OF THE FIRST SESSION, I CONCISELY STATED 'THOSE LENGTHS OF TIME' TO FACILITATOR: ROBERT BOND, AND, "HIS SUPERVISOR," AMY CASIAS. AFTER MAKING IT "ABUNDANTLY CLEAR" THAT I DO NOT HAVE **ANY** "SUBSTANCE ISSUES," I INFORMED BOTH THAT I DID NOT WANT 'TO BE IN THAT GROUP.' I WAS INFORMED 'THAT IT IS MANDATORY, IF I "ELECT TO LEAVE," I WILL BE "SUBJECTED TO "WRITE-UPS" -- AS WELL AS OTHER "PROGRESSIVE C.D.C.R. DISCIPLINARY PROCEDURES."'

THOSE "THREATS" DUPLICATE "THE 2023 THREATS" WHILE I "WAS IN" FACILITY "C". [GROUP] FACILITATOR: HUMPHREY MOORE; "AMITY" SUPERVISOR: SETTLES; AND SECURITY/CUSTODY OFFICER: VELAZQUEZ -- "ESENTIALLY MADE THE SAME SPEECH:" "SACRAMENTO HAS MADE THESE CLASSES MANDATORY STATEWIDE -- REFUSING TO ATTEND WILL RESULT IN YOUR BEING SUBJECTED TO "WRITE-UPS" -- EACH ONE BEING MORE SERIOUS THAN THE LAST -- WHICH WILL RESULT IN "WORSE AND WORSE" C.D.C.R. PROGRESSIVE DISCIPLINE."

3. SUPPORTING FACTS (continued)

THESE "FOREGOING FACTS" ARE NOT ALL INCLUSIVE. I WILL BE DRAFTING A: **SEPARATE MEMORANDUM OF POINTS AND AUTHORITIES** (HEREAFTER: "MEM. OF P'S & A'S" [OR] "MEM.") IN SUPPORT OF THIS FORM.

THERE ARE 2 "ADDITIONAL FACTS" RELATING TO PREVIOUSLY PRESENTED FACTS: [1] THE "ADMINISTRATIVE 115" THAT C.O. VELAZQUEZ "AUTHORED" ON SEPTEMBER 13, 2023, CONTAINED THE FOLLOWING STATEMENT: (QUOTE) "PARTICIPANTS WHO ARE MEDICALLY REFERRED AND DETERMINED TO BE AT RISK FOR SUBSTANCE USE DISORDER (SUD) RELATED HARMS WILL BE PLACED INTO EITHER THE CBI-INTENSIVE OUTPATIENT OR CBI-OUTPATIENT PROGRAM." (END QUOTE).

THAT STATEMENT 'INSPIRED ME TO ENGAGE IN AN "OLSON REVIEW" OF MY MEDICAL FILE.' I REQUESTED ALL FILES THAT SPANNED JANUARY THROUGH AUGUST OF 2023 (ENCOMPASSING "THE JANUARY 24 AND AUGUST 8, 2023, "INTERVIEWS""). SUBSEQUENTLY, "IN SEPTEMBER, 2023," I WOULD RECEIVE 28 PAGES OF MEDICAL DOCUMENTS. NUMEROUS 'PAGES CONTAIN FALSE INFORMATION, HAVE INCOMPLETE ENTRIES, AND SEVERAL "OPIONIONATED, EXTREMELY PREJUDICIAL, UNNECESSARY STATEMENTS" THAT WERE MADE ABOUT ME BY VARIOUS C.C.H.C.S. PERSONNEL. **THOSE "FILES"** CONSTITUTE THE "MEDICAL REFERRALS" THAT C.O. VELAZQUEZ "MENTIONED" WITHIN 'THE ADMINISTRATIVE 115 AS QUOTED ABOVE WITHIN L.7-10, SUPRA. C.C.H.C.S. PERSONNEL "LITERALLY INVENTED SUBSTANCE CONCERNS AND PROBLEMS" THAT I DO NOT HAVE.

THE FOREGOING FACTS ARE "BASIC." ADDITIONAL FACTS WILL BE PRESENTED WITHIN THE MEM. OF P'S & A'S. THOSE "ADDITIONAL FACTS" WILL BE PRESENTED IN ORDER TO ENABLE ARGUMENT -- WHICH ENCOMPASSES CITING LEGAL AUTHORITIES THAT ARE APPLICABLE.

EVEN THOUGH "FORM INSTRUCTIONS" STATE THAT **EXHIBITS** ARE NOT NECESSARY, I WILL BE ATTACHING DOCUMENTS THAT ARE NECESSARY IN ORDER TO **PROVIDE PROOF** OF MY ALLEGATIONS -- **PROOF** THAT THE LAW DEMANDS.

["AS CHECKED ON PG.3, "ADMINISTRATIVE REMEDIES" ARE EXHAUSTED"]:

I "FILED THE INSTITUTIONAL GRIEVANCE" ON OCTOBER 23, 2023;

THE "INSTITUTIONAL LEVEL RESPONSE" WAS "CLOSED" ON DECEMBER 28, 2023;

I "REFILED TO C.C.H.C.S.' HEADQUARTERS" ON JANUARY 16, 2024;

THE "HEADQUARTERS' LEVEL RESPONSE" WAS "CLOSED" ON MARCH 22, 2024.

"FACTS AND DISCUSSIONS" PERTAINING TO THE "ADMINISTRATIVE MATERIALS" ARE RESERVED FOR THE MEM. OF P'S & A'S, INFRA.

**RIGHTS VIOLATED / INJURY / HARM**

"THE DEFENDANTS" HAVE VIOLATED MY FOURTEENTH AMENDMENT EQUAL PROTECTION OF THE LAW GUARANTEE BY FORCING ME INTO A "SUBSTANCE GROUP" THAT I DO NOT NEED OR WANT

3. SUPPORTING FACTS (continued)

VIS-A-VIS: "SUBVERSIVE TACTICS; FRAUD; AND INTIMIDATION." "NUMEROUS ARENAS OF INJURY" EXIST. "THE GREATEST" AND MOST INSIDIOUS INJURY ENTAILS THE NUMEROUS ENTRIES OF 'OUTRIGHT FALSE,' INCOMPLETE, 'NEGATIVE OPINIONS,' AND EXTREMELY PREJUDICIAL STATEMENTS INTO MY MEDICAL FILE. ANYONE 'READING "THAT INFORMATION" WOULD BE "EASILY LED" TO CONCLUDE THAT I HAD "RECENT PROBLEMS" THAT I NEVER HAD.' THERE ARE "COMMENTS" ABOUT NARCOTICS AND HARD DRUGS THAT I NEVER EVEN EXPERIMENTED WITH IN MY ENTIRE LIFE. "THOSE FILES" DO NOT GIVE ME ANY POSITIVE RECOGNITION OF ANY NATURE RE. "WELL OVER 35 YEARS OF PERFECT SOBRIETY -- NOR "WELL OVER" 33 YEARS OF BEING TOBACCO FREE." "WHAT LITTLE IS SAID HAS BEEN DOWNPLAYED, ALTERED, OR NEVER ENTERED. THUS, POSITIVE ACCOMPLISHMENTS THAT COULD BE BENEFICIAL TO ME ARE NONEXISTENT. IF "THOSE FALSE, NEGATIVE MATERIALS" WERE TO BE READ BY "IMPORTANT PEOPLE," SUCH AS: PAROLE BOARD COMMISSIONERS; MY "SUITABILITY FOR RELEASE COULD BE SERIOUSLY JEOPARDIZED." **INJURY** COULD NOT BE "MUCH WORSE."

**HARM** WAS -- AND STILL IS PRESENT BECAUSE FIRST -- I HAVE ALREADY BEEN SUBJECTED TO C.D.C.R. 'DISCIPLINE FOR MY EARLY REFUSALS TO ATTEND I.S.U.D.T. SUB GROUPS.' SECOND, "I LIVE IN FEAR OF MORE EGREGIOUS, PROGRESSIVE DISCIPLINARY PROCEDURES" IF I FAIL "TO MAKE MYSELF PHYSICALLY PRESENT" FOR CURRENT I.S.U.D.T. CLASSES. I AM 'STRESSED OUT, DEPRESSED, AND MISERABLE.' MY MENTAL HEALTH HAS BEEN SUBSTANTIALLY **HARMED**.

FINALLY, AS FAR AS MY **RIGHTS VIOLATED**, I HAVE ALREADY ASSERTED THAT MY RIGHT TO EQUAL PROTECTION OF THE LAW AS GUARANTEED UNDER THE FOURTEENTH AMENDMENT HAS BEEN VIOLATED [SEE PG.3-B.L.35 - 3-C.L.14,(ABOVE), SUPRA].

I RESPECTFULLY SUBMIT THAT MY PROTECTION AGAINST CRUEL AND UNUSUAL PUNISHMENT AS GUARANTEED UNDER THE EIGHTH AMENDMENT HAS BEEN VIOLATED BY 'FORCING ME INTO A "SUBSTANCE USE DISORDER PROGRAM" WHEN I DO NOT HAVE **ANY** "SUBSTANCE ISSUES" -- AND ENFORCING SUCH FORCED ATTENDANCE VIS-A-VIS THREATS OF EGREGIOUS, PROGRESSIVE, C.D.C.R. DISCIPLINE. ALL ELSE "EVOLVES INTO DISCUSSION" -- WHICH WILL BE PRESENTED WITHIN THE MEM. OF P'S & A'S, INFRA.

**CONCLUSION**

I HAVE PROVIDED "A BASIC PRESENTATION" OF WHAT **SOME** OF THE DEFENDANTS DID. I HAVE "SUBSTANTIALLY SUMMARIZED" THE: RIGHTS VIOLATED; INJURY SUFFERED; AND HARM [THAT IS STILL ONGOING] -- AS "THE FORM" INSTRUCTS ME TO DO. THERE EXISTS "MAJOR, RELEVANT, ADDITIONAL FACTS; ARGUMENT THAT IS ESSENTIAL TOWARD PROSECUTING THIS MATTER; AND APPLICABLE FEDERAL AND STATE AUTHORITIES THAT APPLY -- AND NEED TO BE CITED. SUCH WILL BE PRESENTED WITHIN THE [SEPARATE] MEM. OF P'S & A'S, INFRA.

## CLAIM II

1. State the Constitutional or other Federal Right that was violated; Fourteenth Amendment's Due Process & Equal Protection Clauses; Eighth Amendment's Cruel & Unusual Punishment Clause.

2. **Claim II.** Identify the issue involved. Check **only one.** State additional issues in separate Claims.

- [ ] Basic Necessities
- [ ] Disciplinary Proceedings
- [ ] Excessive Force by an Officer
- [ ] Retaliation
- [ ] Mail
- [ ] Property
- [ ] Threat To Safety
- [ ] Other ______
- [ ] Access To The Court
- [ ] Exercise in Religion
- [X] Medical Care

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what **each Defendant** did or did not do that violated your Rights. State the Facts clearly in your own words without citing Legal Authority or Arguments.

VARIOUS CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES PERSONNEL HAVE EITHER ENTERED "ITEMS" INTO MY MEDICAL FILE THAT ARE OUTRIGHT FALSE -- OR ARE UNNECESSARY, EXTREMELY PREJUDICIAL, OPINIONATED STATEMENTS -- "ITEMS" THAT ARE INCOMPLETE - THE OMITTED INFORMATION INSINUATING "ACTIVE PROBLEMS" THAT REALISTICALLY DO NOT EXIST -- AND MERELY 'QUOTING "YEARS OLD DIAGNOSES" WITHOUT INVESTIGATING THE VALIDITY OF SUCH DIAGNOSES -- CONSTITUTING: **SLANDER; LIBEL; AND CHARACTER ASSASSINATION.**

**NOTICE**

THE **FACTS** THAT SUPPORT **CLAIM II** ARE THE SAME CONSTRUCTIVE FACTS THAT COMPRISE **CLAIM I**, SUPRA. PLEASE SEE "THIS FORM'S" PG.3 - 3-C.. **"SUCH FACTS"** "DO NOT STOP THERE. THERE "ARE A HOST" OF **SUPPLEMENTAL FACTS**. I HAVE BEGAN A: **SEPARATE MEMORANDUM OF POINTS AND AUTHORITIES. SUCH SUPPLEMENTAL FACTS** ARE WITHIN THE **MEMORANDUM'S** PGS. [14] - [23] (PGS. [2] - [13] ARE ALSO VERY RELEVANT AND IMPORTANT). EVEN THOUGH "IT IS SAID" THAT EXHIBITS ARE NOT NECESSARY, THIS ACTION **DEMANDS** EXHIBITS BECAUSE THEY PROVIDE PROOF 'AS EVERYDAY LAW REQUIRES.' MOST RELEVANT TO **CLAIM II IS: ATTACHMENT 2** -- THE "OBJECTED TO" MEDICAL DOCUMENTS.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

THE "DISPARAGING INFORMATION" THAT WAS ENTERED INTO MY MEDICAL FILE WAS UTILIZED "AS A "JUSTIFIER" TO FORCE ME INTO "SUBSTANCE USE DISORDER CLASSES" THAT I DO NOT NEED OR WANT. FURTHERMORE, IF I WERE TO GO BEFORE THE PAROLE BOARD, SAID "DISPARAGING INFORMATION" 'WOULD GO FAR TOWARD JEOPARDIZING ANY OPPORTUNITY OF "RECEIVING A PAROLE."'

5. **Administrative Remedies**

a. Are there Administrative Remedies (Grievance Procedures or Administrative Appeals) available at your institution? [XX] Yes [ ] No

b. Did you submit a Request For Relief on Claim II? [XX] Yes [ ] No

c. Did you Appeal your Request For Relief on Claim II To the Highest Level? [XX] Yes [ ] No

d. If you did not submit or appeal a Request For Administrative Relief at any level, briefly explain why you did not. N/A.

## CLAIM III

1. State the constitutional or other federal civil right that was violated: ______________________

2. **Claim III.** Identify the issue involved. Check **only one**. State additional issues in separate claims.

☐ Basic necessities ☐ Mail ☐ Access to the court ☐ Medical care
☐ Disciplinary proceedings ☐ Property ☐ Exercise of religion ☐ Retaliation
☐ Excessive force by an officer ☐ Threat to safety ☐ Other: ______________________.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☐ Yes ☐ No
   b. Did you submit a request for administrative relief on Claim III? ☐ Yes ☐ No
   c. Did you appeal your request for relief on Claim III to the highest level? ☐ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. N/A

**If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.**

## E. REQUEST FOR RELIEF

State the Relief that you are seeking:

[1] AN **OPINION** THAT -- BY INCORPORATING **"TREATMENT"** INTO THE TITLE OF ITS PROGRAM'S MISSION, THE "FOUNDERS" OF [THE] INTEGRATED SUBSTANCE USE DISORDER **TREATMENT** PROGRAM AND I.S.U.D.T'S "SPLINTER GROUPS" HAVE VIOLATED: THE FOURTEENTH AMENDMENT'S EQUAL PROTECTION OF THE LAW CLAUSE; [CONTROLLING] LAW AS DETERMINED BY THE UNITED STATES SUPREME COURT; AND ["CLEAR-CUT"] STATE OF CALIFORNIA LAW -- BY 'MAKING I.S.U.D.T. AND ITS "SPLINTER GROUPS" 1 MANDATORY, STATEWIDE;

[2] THE **OPINION** TO HOLD THAT EVERY INMATE IS NOT THE SAME -- AND THAT EVERY INMATE WITHIN C.D.C.R'S. CUSTODY DOES NOT HAVE "SUBSTANCE USE DISORDERS." "LUMPING ALL INMATES INTO ONE CATEGORY" IS A DEFINITE VIOLATION OF THE FOURTEENTH AMENDMENT'S EQUAL PROTECTION OF THE LAW CLAUSE;

[3] A **HOLDING** THAT 'ULTIMATE RESPONSIBILITY' PERTAINING TO THE FORCING OF ALL INMATES TO SUBMIT TO I.S.U.D.T./"SPLINTER" GROUPS RESTS WITH CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES, SINCE C.C.H.C.S. 'FOUNDED THE I.S.U.D.T. PROGRAM ON JANUARY 21, 2020.' [WHILE IT IS TRUE THAT "C.D.C.R. CUSTODY" INSTITUTED "THE MANDATORY ATTENDANCE" REQUIREMENT, SUCH OCCURRED AT THE BEHEST OF C.C.H.C.S.. C.D.C.R'S. ROLE IS LIMITED TO ENFORCING ATTENDANCE AND "IMPOSING PUNISHMENT" FOR "RULE[S] VIOLATIONS".];

[4] AN **ORDER** THAT C.D.C.R'S. "CUSTODY HIERARCHY" **MUST IMMEDIATELY REMOVE** THE "STATEWIDE MANDATORY ATTENDANCE" OF I.S.U.D.T. AND ITS "SPLINTER GROUPS" DUE TO SUCH MANDATORY ATTENDANCE BEING IN CLEAR VIOLATION OF THE: FOURTEENTH AMENDMENT'S EQUAL PROTECTION OF THE LAW CLAUSE; LAW AS DETERMINED BY THE UNITED STATES SUPREME COURT; AND ["CLEAR-CUT"] CALIFORNIA LAW;

[5] A **HOLDING** THAT I HAVE SUFFERED SUBSTANTIAL **PREJUDICE** DUE TO C.C.H.C.S. PERSONNEL: PLACING OUTRIGHT PERFIDIOUS STATEMENTS; REPEATEDLY QUOTING (CURRENT) UNCONFIRMED, PAST DISPUTED "DIAGNOSES;" PLACING BIASED, OPINIONATED STATEMENTS THAT WERE TOTALLY UNNECESSARY; OMITTING IMPORTANT POSITIVE INFORMATION THAT WAS KNOWN; AND PLACING "NON-PROBLEMS" INTO "ACTIVE PROBLEMS CATEGORIES" -- INTO MY MEDICAL FILE. IT SHOULD BE ENCOMPASSED THAT "THESE COLLECTED ENTRIES AND OMISSIONS" WERE UTILIZED BY C.C.H.C.S. PERSONNEL TO JUSTIFY 'FORCING ME INTO I.S.U.D.T. CLASSES.' AS LONG AS THESE UNTRUE AND UNJUST "ENTRIES" REMAIN WITHIN MY MEDICAL FILE, FUTURE **PREJUDICE** EXISTS. ANY "REVIEWER" -- SUCH AS PAROLE BOARD COMMISSIONERS -- WOULD BE LED TO BELIEVE THAT I HAVE PROBLEMS THAT I NEVER HAD;

[6] A **HOLDING** THAT I HAVE SUFFERED (AND CONTINUE TO SUFFER) **'MAJOR MENTAL DURESS.'** AS DISCUSSED WITHIN THE **"MEMORANDUM'S ARGUMENT SECTION,"** I HAVE BEEN "LITERALLY BULLIED" INTO ATTENDING "SUBSTANCE USE DISORDER CLASSES" THAT I DO NOT NEED OR WANT. "IN 2023," I WAS "DISCIPLINED" FOR EXERCISING MY LEGAL RIGHT TO REFUSE "THEIR" **TREATMENT**. I AM MISERABLE. I AM STRESSED OUT AND DEPRESSED BECAUSE OF ""EXISTING" UNDER THE CLOUD OF: GO TO GROUP OR SUFFER PROGRESSIVE C.D.C.R. DISCIPLINARY ACTIONS." SINCE 'JANUARY OF 2023,' I "HAVE HAD A HOST" OF MENTAL HEALTH SESSIONS. MY **MENTAL DURESS** 'IS MAJOR AND CONSTANT;

[7] **HOLD** DEFENDANTS LIABLE FOR COURT COSTS AND "OTHER" UNSPECIFIED FEES;

[8] **GRANT** ME **PUNITIVE DAMAGES** IN THE AMOUNT OF: ONE HUNDRED THOUSAND DOLLARS **[100,000.00]** FOR MY SUFFERING DUE TO DEFENDANT'S ILLEGAL, NEFARIOUS "ACTS;"

---

**Fn.1**: "SPLINTER GROUPS:" (a) COGNITIVE BEHAVIORAL INTERVENTION;
(b) DIVISIONAL REHABILITATIVE PROGRAMMING.

[9] **ORDER** CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES TO "CLEAN UP" MY ENTIRE MEDICAL FILE. "CLEAN UP ENCOMPASSES:" [i] COMPLETING "PARTIAL" ENTRIES; [ii] REMOVING "ITEMS" THAT ARE NOT -- NOR HAVE BEEN -- "ACTIVE PROBLEMS" FROM "THE FILE'S" "ACTIVE PROBLEMS" COLUMNS; [iii] THE CESSATION OF LISTING HEPATITIS B AND HEPATITIS C AS "ONGOING CHRONIC PROBLEMS" SINCE I HAVE NEVER HAD ANY SUCH SYMPTOMS OF EITHER -- AS WELL AS THE REMOVAL OF HEPATITIS B AND C FROM "ONGOING PROBLEMS LISTS;" [iv] TOTAL DELETION OF FALSE INFORMATION; (AND) [v] TOTAL DELETION OF UNNECESSARY, EXTREMELY PREJUDICIAL STATEMENTS ABOUT ME. I RESPECTFULLY REQUEST THAT SAID **ORDER** DIRECT C.C.H.C.S. APPOINT SOMEONE 'TO COORDINATE WITH / WORK WITH ME IN ACCOMPLISHING THIS "CLEAN UP," THAT A TIME LIMIT BE SET, AND THAT ANY AND ALL FAILURE[S] ON THE PART OF C.C.H.C.S. TO COMPLY, WILL RESULT IN A HOLDING OF CONTEMPT OF COURT FOR ANY SUCH NONCOMPLIANCE;' (AND)

[10] **AWARD** ANY OTHER RELIEF THAT I DID NOT SPECIFY AS THIS **HONORABLE COURT** DEEMS JUST AND PROPER.

I DECLARE UNDER PENALTY OF PERJURY UNDER 28 U.S.C. §1746, THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on: June 4, 2024

James Haag
SIGNATURE OF PLAINTIFF

I AM AN UNLICENSED PARALEGAL. NOBODY HAS ASSISTED ME. I HAVE "PERSONALLY ASSEMBLED" THIS ENTIRE ACTION.

I HAVE NOT HAD THE ASSISTANCE OF ANY "EXTERNAL ATTORNEY" IN ANY WAY, SHAPE, OR FORM.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

**PROOF OF SERVICE**

| | | |
|---|---|---|
| James Bradley Haag, Plaintiff. | C.D.C.R. #: T-75535 | Case #: ________ |

**I Hereby Certify** Under Penalty Of Perjury Under 28 U.S.C. §1746 -- That On June 4, 2024, I Served The Following:

-- ["FORM"] 28 U.S.C. §1343(a) / 42 U.S.C. §1983 - CIVIL RIGHTS COMPLAINT BY A PRISONER;

-- [SEPARATE] MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CIVIL RIGHTS COMPLAINT BY A PRISONER UNDER 42 U.S.C. §1983;

-- [ACCOMPANYING] REQUEST FOR LEAVE OF COURT TO FILE DOCUMENT IN EXCESS OF 25 PAGES;

[AND]

-- ATTACHMENTS THAT ARE EVIDENCE TO -- AND SUPPORT FOR THIS ACTION..........

...By Placing Said Documents Within A Postage-Paid, Secure Vessel -- Addressed To The Party Hereinafter Listed -- And By Submitting Said Vessel To Prison Staff For **Placement In The UNITED STATES MAIL At:**

[The] California Institution For Men -- Facility "B" -- Sycamore West - 201-L[ow] -- P.O. Box 3100 -- Chino, California -- 91708-3100.

**THE PARTY SERVED IS:**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION
501 "I" STREET - #4-200
SACRAMENTO, CALIFORNIA
95814

---

I Declare Under Penalty Of Perjury Under 28 U.S.C. §1746 -- That The Foregoing Is True And Correct.

Dated: June 4, 2024 [By] James Haag

(Signature Of Person Completing Service)

James Bradley Haag -- In Propria Persona
California Institution For Men
T-75535 Sycamore West 201-L
P.O. Box 3100
Chino, California
91708-3100

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA [SACRAMENTO DIVISION]**

| | |
|---|---|
| JAMES BRADLEY HAAG,<br><br>PLAINTIFF,<br><br>V<br><br>JEFF MACOMBER, SECRETARY -- CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>RON BROOMFIELD, DIRECTOR OF ADULT DIVISION -- CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>JOSEPH POICK, DIRECTOR -- CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES,<br><br>BRANDON STROBELT, CASE COUNSELOR III -- "DIRECTOR" OF INTEGRATED SUBSTANCE USE DISORDER TREATMENT PROGRAM --- CALIFORNIA INSTITUTION FOR MEN,<br><br>"NUMEROUS OTHERS," ET. AL., **<br><br>DEFENDANTS. | CASE #: ____________<br><br>**REQUEST FOR LEAVE OF COURT TO FILE DOCUMENTS IN EXCESS OF 25 PAGES**<br><br>** [FOR DEFENDANT "#'S: 5 - 9'S" NAMES AND EMPLOYMENT, SEE "THE FORM'S" PG.1-A.] |

<u>THE DOCUMENTS IN EXCESS OF TWENTY FIVE (25) PAGES ARE:</u>

[1] [SEPARATE] MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CIVIL RIGHTS COMPLAINT BY A PRISONER UNDER 42 U.S.C. §1983 -- ITS' LENGTH — EXCLUDING "TABLES" & PROOF OF SERVICE IS <u>50 PAGES</u>;

[2] ATTACHMENTS "IN SUPPORT THEREOF" -- THEIR LENGTH IS <u>35 PAGES</u>.

THE "TOP EXHIBIT SECTION PAGE" AND INNER "SPACERS" ARE NOT INCLUDED.

[1] THE MEMORANDUM OF POINTS AND AUTHORITIES IS NECESSARY RE. "FULLY PRESENTING" THE MATTER THAT I "MERELY TOUCHED ON" WITHIN THE "MASTER FORM." EVEN THOUGH "THE FORM" 'DOES NOT CALL FOR LEGAL AUTHORITY OR ARGUMENTS,' THE ISSUES THAT I AM SUBMITTING TO THIS HONORABLE COURT ARE: TOO NUMEROUS; TOO EXTENSIVE; AND TOO EGREGIOUS TO NOT CITE APPLICABLE LEGAL AUTHORITIES AND UTILIZE ARGUMENT. SUCH IS ABSOLUTELY ESSENTIAL.

[2] MY ATTACHMENTS ARE DOCUMENTARY EVIDENCE THAT PROVE ALL THAT I HAVE ALLEGED. WITH ALL DUE RESPECT, THERE IS NO NEED FOR ME TO DISCUSS "REQUIREMENTS" RE. ESTABLISHING CREDIBILITY PERTAINING TO ALLEGATIONS MADE. THOSE ATTACHMENTS PROVIDE "SOLID EVIDENCE" TO THIS HONORABLE COURT IN REGARD TO 'WHAT I HAVE DRAFTED AND SUBMITTED.' IN THIS MATTER, ATTACHMENTS / EXHIBITS ARE ESSENTIAL -- NOT OPTIONAL.

WHEREFORE, I RESPECTFULLY MOVE THIS HONORABLE COURT TO ACCEPT AND FILE THESE AFOREMENTIONED DOCUMENTS.

DATED: June 4, 2024

RESPECTFULLY SUBMITTED BY:

James Haag

**DECLARATION OF PLAINTIFF**

I, JAMES BRADLEY HAAG, DO HEREBY CERTIFY UNDER PENALTY OF PERJURY UNDER 28 U.S.C. §1746, THAT I AM THE PLAINTIFF AND AUTHOR OF THIS: "REQUEST FOR LEAVE OF COURT TO FILE DOCUMENTS IN EXCESS OF 25 PAGES." [THIS "REQUEST" ACCOMPANIES SAID, AFOREMENTIONED DOCUMENTS]

I FURTHER DECLARE UNDER PENALTY OF PERJURY UNDER 28 U.S.C. §1746, THAT ALL SET FORTH HEREIN IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF -- AND THAT I EXECUTED THIS "DECLARATION" AT:

[THE] CALIFORNIA INSTITUTION FOR MEN -- FACILITY "B" -- [C.D.C.R. #: T-75535] // SYCAMORE WEST 201[LOW] -- P.O. BOX 3100 -- CHINO, CALIFORNIA -- 91708-3100.

DATED: June 4, 2024

RESPECTFULLY SUBMITTED BY:

James Haag

JAMES BRADLEY HAAG;
PLAINTIFF;
IN PROPRIA PERSONA.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

## PROOF OF SERVICE

| | | |
|---|---|---|
| James Bradley Haag, Plaintiff. | C.D.C.R. #: T-75535 | Case #: ______ |

**I Hereby Certify** Under Penalty Of Perjury Under 28 U.S.C. §1746 -- That On June 4, 2024, I Served The Following:

-- ["FORM"] 28 U.S.C. §1343(a) / 42 U.S.C. §1983 - CIVIL RIGHTS COMPLAINT BY A PRISONER;

-- [SEPARATE] MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CIVIL RIGHTS COMPLAINT BY A PRISONER UNDER 42 U.S.C. §1983;

-- [ACCOMPANYING] REQUEST FOR LEAVE OF COURT TO FILE DOCUMENT IN EXCESS OF 25 PAGES; [AND]

-- ATTACHMENTS THAT ARE EVIDENCE TO -- AND SUPPORT FOR THIS ACTION..........

...By Placing Said Documents Within A Postage-Paid, Secure Vessel -- Addressed To The Party Hereinafter Listed -- And By Submitting Said Vessel To Prison Staff For **Placement In The UNITED STATES MAIL At:**

[The] California Institution For Men -- Facility "B" -- Sycamore West - 201-L[ow] -- P.O. Box 3100 -- Chino, California -- 91708-3100.

**THE PARTY SERVED IS:**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION
501 "I" STREET - #4-200
SACRAMENTO, CALIFORNIA
95814

---

I Declare Under Penalty Of Perjury Under 28 U.S.C. §1746 -- That The Foregoing Is True And Correct.

Dated: June 4, 2024 [By] James Haag

(Signature Of Person Completing Service)

# EXHIBIT SECTION

ATTACHMENT 1:

"INSTITUTIONAL LEVEL GRIEVANCE"

RECEIVED
HCCAB
JAN 19 2024

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

# HEALTH CARE GRIEVANCE

**CDCR 602 HC (Rev. 10/18)**

Page 1 of 2

**STAFF USE ONLY** Expedited? ☐ Yes ☐ No Tracking #:

Staff Name and Title (Print) Signature Date

**If you think you have a medical, mental health or dental emergency, notify staff immediately.** If additional space is needed, use Section A of the CDCR 602 HC A Health Care Grievance Attachment. Only one CDCR 602 HC A will be accepted. You must submit this health care grievance to the Health Care Grievance Office for processing. Refer to California Code of Regulations (CCR), Title 15, Chapter 2, Subchapter 2, Article 5 for further guidance with the health care grievance process.

**Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First, MI): | CDCR #: | Unit/Cell #: |
|---|---|---|
| Haag, James B. | T-75535 | Alpine 210-L |

**SECTION A:** **Explain the** applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy:

"THE APPLIED HEALTH CARE POLICY AND CONDITION" THAT HAS HAD AN ADVERSE AFFECT UPON MY MENTAL HEALTH CONSISTS OF BEING FORCED INTO THE "MEDICALLY ESTABLISHED GROUP INTEGRATED SUBSTANCE USE DISORDER TREATMENT GROUP." I DO NOT HAVE **ANY** "SUBSTANCE ABUSE PROBLEMS." AS I BEGIN TYPING THIS GRIEVANCE -- TODAY BEING OCTOBER 22, 2023 -- I HAVE BEEN TOTALLY SOBER: **34 YEARS, 10 MONTHS, 2 WEEKS, AND 4 DAYS.** ON TWO (2) DIFFERENT OCCASIONS, I PROVIDED "C.I.M. AND SACRAMENTO" MEDICAL PERSONNEL CLEAR AND CONCISE INFORMATION PERTAINING TO MY "TRIPLE DECADES +" SOBRIETY. AS I WILL SHOW, INFRA, "CERTAIN INDIVIDUALS" ENTERED FALSE, NEGATIVE INFORMATION INTO MY MEDICAL RECORDS -- "DOWNPLAYING" MY "TRIPLE DECADES +" SOBRIETY -- IN ORDER TO 'JUSTIFY PLACING ME IN THE I.S.U.D.T. GROUP.' I DO NOT NEED "I.S.U.D.T.."

**Supporting Documents Attached. Refer to CCR 3999.227** ☒ **Yes** ☐ **No**

**Grievant Signature:** James Haag **Date Submitted:** OCTOBER 23 , 2023

**BY PLACING MY INITIALS IN THIS BOX, I REQUEST TO RECEIVE AN INTERVIEW AT THE INSTITUTIONAL LEVEL.** J.H.[illegible]

**SECTION B:** **HEALTH CARE GRIEVANCE REVIEW INSTITUTIONAL LEVEL: Staff Use Only** Is a CDCR 602 HC A attached? ☐ Yes ☐ No

This grievance has been:

☐ Rejected (See attached letter for instruction): Date: ______ Date: ______

☐ Withdrawn (see section E)

☐ Accepted Assigned To: ______ Title: ______ Date Assigned: ______ Date Due: ______

Interview Conducted? ☐ Yes ☐ No Date of Interview: ______ Interview Location: ______

Interviewer Name and Title (print): ______ Signature: ______ Date: ______

Reviewing Authority Name and Title (print): ______ Signature: ______ Date: ______

**Disposition:** See attached letter ☐ Intervention ☐ No Intervention

**HCGO Use Only:** Date closed and mailed/delivered to grievant:

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | |
|---|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ Patient asked questions | **STAFF USE ONLY** |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ Patient summed information | |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | **Please check one:** | |
| ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached* ☐ Reached | |
| ☐ Not Applicable | ☐ Other* | *See chrono/notes | |

4. Comments: ______

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE ATTACHMENT**
**CDCR 602 HC A (10/18)**

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

**STAFF USE ONLY**
Tracking #:

Attach this form to the CDCR 602 HC, Health Care Grievance, only if more space is needed. Only one CDCR 602 HC A may be used.
**Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First, MI): | CDCR Number: | Unit/Cell Number: |
|---|---|---|
| Haag, James B. | T-75535 | Alpine 210-L |

**SECTION A:** Continuation of CDCR 602 HC, Health Care Grievance, Section A only (Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy):

I WAS ORIGINALLY "DUCATED" TO BEGIN I.S.U.D.T. ON AUGUST 21, 2023. I "STARTED OUT" REFUSING TO ATTEND. ON AUGUST 30, 2023, I WAS INTERVIEWED BY CUSTODY OFFICER J. VELASQUEZ AND AMITY SUPERVISOR: SKETTLES. I ALSO TALKED WITH GROUP COORDINATOR MOORE. I INFORMED ALL OF MY "LONG-TERM SOBRIETY" -- THAT "I HAD GONE DECADES WITHOUT ANY "SUBSTANCE ISSUES" WHATSOEVER" -- AND THAT I HAD NO NEED FOR I.S.U.D.T., AND DID NOT WANT TO BE ASSIGNED TO THAT GROUP. I THEN LEFT.// I WAS GOING TO THE "DEL NORTE MEETING LOCALE," "SIGNING IN," THEN LEAVING. SUBSEQUENTLY, I WAS ISSUED AN "ADMINISTRATIVE R.V.R." FOR MY CONTINUED REFUSAL TO PARTICIPATE "IN THAT GROUP." [PLEASE TAKE NOTICE: I AM NOT APPEALING THE R.V.R.. WHEN IT WAS HEARD, I PLED GUILTY. ACCORDINGLY, WHEN THIS "GRIEVANCE" IS RESPONDED TO, DO NOT CONSTRUE THE R.V.R. AS AN ISSUE. IT IS NOT].

UPON A "CLOSE REVIEW" OF BOTH OFFICER VELASQUEZ' COUNSELING CHRONO AND THE R.V.R., A STATEMENT WITHIN BOTH DOCUMENTS PIQUED MY CURIOUSITY: "PARTICIPANTS WHO ARE MEDICALLY REFERRED AND DETERMINED TO BE AT RISK FOR SUBSTANCE USE DISORDER (SUD) RELATED HARMS WILL BE PLACED INTO EITHER THE CBI-INTENSIVE OUTPATIENT OR CBI OUTPATIENT PROGRAM." I WAS PLACED INTO THE "I.S.U.D.T. INTENSIVE GROUP."

ACCORDINGLY, I DECIDED TO "DO AN OLSON REVIEW" OF MY MEDICAL FILE -- CONCENTRATING ON 2023 -- BECAUSE C.I.M. MEDICAL PERSONNEL TWICE ATTEMPTED TO "GET ME TO AGREE TO I.S.U.D.T.." THE "PRINT-OUTS" (ATTACHED / HIGHLIGHTED) REVEALED "A HOST" OF LIES AND FALSE INFORMATION. THE EXACT PERFIDIOUSNESS WITHIN THOSE DOCUMENTS WILL BE LISTED ON AN ATTACHMENT PAGE.

**Grievant Signature:** James Haag **Date Submitted:** OCTOBER 23, 2023

**SECTION B:** Staff Use Only: Grievants do not write in this area. Grievance Interview Clarification. Document issue(s) clarified during interview.

**Name and Title:** ______ **Signature:** ______ **Date :** ______

**STAFF USE ONLY**

ATTACHMENT 1-A

"INSTITUTIONAL LEVEL RESPONSE"

**CALIFORNIA CORRECTIONAL**
**HEALTH CARE SERVICES**

## Institutional Level Response

**Closing Date:** DEC 28 2023

**To:** HAAG, JAMES (T75535)
C A 2210001LP
California Institution for Men
P.O. Box 128
Chino, CA 91710

**Tracking #:** CIM HC 23000710

**RULES AND REGULATIONS**

The rules governing these issues are: California Code of Regulations, Title 15; Health Care Department Operations Manual; Mental Health Services Delivery System Program Guide; California Department of Corrections and Rehabilitation Department Operations Manual.

**HEALTH CARE GRIEVANCE SUMMARY**

In your CDCR 602 HC, Health Care Grievance, you explained the decision, action, condition, omission, policy, or regulation that has had a material adverse effect upon your health or welfare for which you seek administrative remedy.

| Issue | | Description |
|---|---|---|
| Issue: | ISUDT (Program Exclusion) | You are being forced to attend the Integrated Substance Use Disorder Treatment group. |
| Issue: | Health Records (Amend Health Records) | False information in health record. |

**INTERVIEW**

On December 21, 2023, you were interviewed by S. Milne, Health Care Appeals Registered Nurse regarding this health care grievance. During the interview, you were allowed the opportunity to fully explain your health care grievance issue(s).

**INSTITUTIONAL LEVEL DISPOSITION**

[X] No intervention. [ ] Intervention.

**BASIS FOR INSTITUTIONAL LEVEL DISPOSITION**

Your health care grievance was reviewed by the Centralized Screening Team per California Code of Regulations, Title 15, Section 3486.1, and was deemed not to meet the definition of staff misconduct against health care staff.

Your health care grievance package and health record, and all pertinent departmental policies and procedures were reviewed. These records indicate:

Note 1: The institutional level review is based on records available as of the date the Institutional Level Response is signed by the reviewing authority.
Note 2: The closing date reflects the closed, mailed/delivered date of the health care grievance.
Note 3: Permanent health care grievance document. Do not remove from the health care grievance package.

RECEIVED
HCCAB
JAN 19 2024

During the interview, you expressed that you have been sober over 34 years and you do not need or want to participate in the Integrated Substance Use Disorder Treatment (ISUDT)/Cognitive Behavioral Intervention (CBI) groups. You explained that you have been attending the group because you want to prevent being written up again. You should not be forced to attend a class that you have no need for.

The Health Care Appeals Registered Nurse (HCARN) informed you that the CBI program offers other topics besides drug and alcohol. This curriculum incorporates the most current, evidence-based strategies and covers a spectrum of topics, including substance use disorder (SUD), trauma, criminal thinking, breaking through denial, exploring the impact crime has on victims, anger and violence emotion regulations, family dynamics/support systems, and parenting. You stated that you were aware, and you would not benefit from any of those other topics. You reiterated multiple times throughout the encounter that you have been sober for over three decades. The HCARN informed you that this is a custody issue and would need to speak with your counselor to discuss removal from this group. You indicated that you are waiting to be interviewed by Correctional Counselor III Strobelt regarding mandatory participation in the ISUDT/CBI groups.

You also stated that as you were reviewing your medical record, you noticed that there was information in your medical record that was false.

The Health Care Correspondence and Appeals Branch responds to specific patient health care and treatment concerns. As such, your concerns regarding participation in the CBI group should be addressed through the appropriate channels at your institution.

Concerns regarding custody actions, decisions, or application of policies or procedures are not health care services issues over which California Correctional Health Care Services has jurisdiction. As such, any concerns related to custody staff or functions will not be addressed in this health care grievance response.

Your health record is considered legal documentation. As such, all documents entered into your health record are permanent and may not be removed. Per the Health Care Department Operations Manual, Section 2.2.7, Patient Privacy Rights, patients have the right to request that California Correctional Health Care Services amend their Personally Identifiable Information/Protected Health Information in their health record. All requests for amendments shall be made in writing and submitted to Health Information Management staff at the patient's institution by utilizing the CDCR 7236, Request to Amend Health Records. California Correctional Health Care Services is not obligated to agree to an amendment and may deny requests or only partially accept amendments. Workforce members shall follow procedures pursuant to the Health Care Department Operations Manual, Section 2.3.16 Patient's Right to Amend Health Record, when responding to a patient's request to amend their health record.

A CDCR 128-MH5, Mental Health Referral Chrono, was submitted on your behalf for reporting distress related to mandatory involvement in the ISUDT group. You were seen by mental health staff on November 7, 2023. It was noted that you have discussed the distress with your mental health primary clinician in prior sessions.

You are enrolled in the Mental Health Services Delivery System at the Correctional Clinical Case Management System level of care. You have been provided with the opportunity to access mental health services and clinical staff regarding your stated issues. Your mental health condition will continue to be monitored consistent with treatment guidelines, as outlined in the Mental Health Services Delivery System Program Guide.

---

Note 1: The institutional level review is based on records available as of the date the Institutional Level Response is signed by the reviewing authority.

Note 2: The closing date reflects the closed, mailed/delivered date of the health care grievance.

Note 3: Permanent health care grievance document. Do not remove from the health care grievance package.

RECEIVED HCCAB JAN 19 2024

While the health care grievance process is a means of setting forth your health care concerns, it is not a substitute for direct communication about your health with your health care providers. You are encouraged to continue your care with your assigned health care providers and share with them new or additional clinical information about your conditions that you believe may affect your care. However, California law directs your health care providers to offer and provide only the care they determine to be currently medically or clinically necessary for you, in accordance with appropriate policies and procedures. Previous orders from other health care facilities or staff, input from health care consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current health care providers.

Concerns regarding custody actions, decisions, or application of policies or procedures are not health care services issues over which California Correctional Health Care Services has jurisdiction. As such, any concerns related to custody staff or functions will not be addressed in this health care grievance response. This does not preclude the Centralized Screening Team from identifying allegations of staff misconduct against custody staff during the review of this health care grievance and processing such in accordance with California Code of Regulations, Title 15, Section 3486.2

If you are dissatisfied with the Institutional Level Response, follow the instructions on the CDCR 602 HC, Health Care Grievance, and submit the entire health care grievance package for headquarters' level review. The headquarters' level review constitutes the final disposition on your health care grievance and exhausts your administrative remedies.

M. Farooq, MD, MPH, MBA,
FAAFP, CCHP
Chief Medical Executive
California Institution for Men

12/27/23
Reviewed and Signed Date

Note 1: The institutional level review is based on records available as of the date the Institutional Level Response is signed by the reviewing authority.
Note 2: The closing date reflects the closed, mailed/delivered date of the health care grievance.
Note 3: Permanent health care grievance document. Do not remove from the health care grievance package.

RECEIVED
HCCAB
JAN 19 2024

ATTACHMENT 2:

"PRINT-OUTS" OF MEDICAL DOCUMENTS CONTAINING: FALSE STATEMENTS; IMPROPERLY/INCORRECTLY ALTERED "ITEMS;" "PARTIAL ONLY ENTRIES" DUE TO THE OMISSION OF RELEVANT, KNOWN, INFORMATION; EXTREMELY PREJUDICIAL "COMMENTS AND SPEECHES" THAT WERE UNNECESSARY. **

** THE PAGES ARE "HAND-NUMBERED AND ENCIRCLED" ON THE BOTTOM, LOWER LEFT SIDE.

**CIM - California Institution for Men**

Patient: **HAAG, JAMES BRADLEY**
DOB/Age/Birth Gender: 3/31/1951 / 72 years / Male CDCR: T75535

## *Assessment Forms*

Category: Drug ; Substance: No Known Medication Allergies ; Type: Allergy ; Severity: Unknown ; Updated By: Contributor_system, ADT_UPLOAD; Reviewed Date: 6/22/2023 18:12 PDT

Medication List

(As Of: 6/22/2023 18:28:52 PDT)

Normal Order

| | |
|---|---|
| measles mumps rubella vaccine (M-M-R II) Powder-Inj vial (4681-00) | : measles mumps rubella vaccine (M-M-R II) Powder-Inj vial (4681-00) ; Status: Ordered ; Ordered As Mnemonic: measles/mumps/rubella vaccine INJECTION ; Simple Display Line: 0.5 mL, Subcutaneous, As Indicated ; Ordering Provider: Elman, Arnolfo P&S; Catalog Code: measles/mumps/rubella virus vaccine ; Order Dt/Tm: 2/17/2023 11:08:26 PST |
| measles mumps rubella vaccine (M-M-R II) Powder-Inj vial (4681-00) | : measles mumps rubella vaccine (M-M-R II) Powder-Inj vial (4681-00) ; Status: Ordered ; Ordered As Mnemonic: measles/mumps/rubella vaccine INJECTION ; Simple Display Line: 0.5 mL, Subcutaneous, As Indicated ; Ordering Provider: Elman, Arnolfo P&S; Catalog Code: measles/mumps/rubella virus vaccine ; Order Dt/Tm: 2/17/2023 11:08:26 PST |
| methylcellulose Powder-Recon 454 gm (5675-16) | : methylcellulose Powder-Recon 454 gm (5675-16) ; Status: Ordered ; Ordered As Mnemonic: methylcellulose 2 g/19 g oral powder for reconstitution ; Simple Display Line: 1 scoop, Oral, Daily-KOP, PRN: constipation ; Ordering Provider: Espinoza, Robert P&S; Catalog Code: methylcellulose ; Order Dt/Tm: 5/31/2023 07:50:07 PDT ; Comment: mix with 8 oz of water (full glass of water) |

(As Of: 6/22/2023 18:28:52 PDT)

Problems(Active)

| | |
|---|---|
| Chronic hepatitis C (SNOMED CT :206586011 ) | Name of Problem: Chronic hepatitis C ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 206586011 ; Contributor System: PowerChart ; Last Updated: 4/6/2022 18:10 PDT ; Life Cycle Date: 04/06/22 ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT |
| Former heavy tobacco smoker (SNOMED CT :610141000124117 ) | Name of Problem: Former heavy tobacco smoker ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 610141000124117 ; Contributor System: |



**WARNING:** **This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.**

4

3. (of 9.) - 6/22/2023

CIM - California Institution for Men

Patient: HAAG, JAMES BRADLEY
DOB/Age/Birth Gender: 3/31/1951 / 72 years / Male CDCR: T75535

***Assessment Forms*** 6/22/2023

| | |
|---|---|
| | PowerChart ; Last Updated: 6/23/2021 20:01 PDT ; Life Cycle Date: 06/23/21 ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT |
| Gender dysphoria (SNOMED CT :154707011 ) | Name of Problem: Gender dysphoria ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 154707011 ; Contributor System: PowerChart ; Last Updated: 3/27/2023 11:03 PDT ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT ; Comments:<br><br>3/27/2023 11:03 - Dunton, Maria P&S<br>08/06/17 18:44 PDT - Duong, Han P&S<br>male-to-female; started hormone treatment on 4/25/17 |
| Gender dysphoria in adolescents and adults (SNOMED CT :154707011 ) | Name of Problem: Gender dysphoria in adolescents and adults ; Recorder: Dunton, Maria P&S; Confirmation: Confirmed ; Classification: Mental Health ; Code: 154707011 ; Contributor System: PowerChart ; Last Updated: 3/27/2023 11:04 PDT ; Life Cycle Status: Active ; Responsible Provider: Dunton, Maria P&S; Vocabulary: SNOMED CT ; Comments:<br><br>3/27/2023 11:04 - Dunton, Maria P&S<br>08/06/17 18:44 PDT - Duong, Han P&S<br>male-to-female; started hormone treatment on 4/25/17 |
| Healthcare maintenance (SNOMED CT :447501012 ) | Name of Problem: Healthcare maintenance ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 447501012 ; Contributor System: PowerChart ; Last Updated: 12/4/2022 15:15 PST ; Life Cycle Date: 12/04/22 ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT |
| Hepatitis B core antibody positive (SNOMED CT :3521926012 ) | Name of Problem: Hepatitis B core antibody positive ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 3521926012 ; Contributor System: PowerChart ; Last Updated: 12/5/2022 11:27 PST ; Life Cycle Date: 12/05/22 ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT |
| Hyperlipidemia (SNOMED CT :92826017 ) | Name of Problem: Hyperlipidemia ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 92826017 ; Contributor System: PowerChart ; Last |



**WARNING:** **This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.**

(5) 4. (of 9.) - 6/22/2023

**CIM - California Institution for Men**

Patient: **HAAG, JAMES BRADLEY**
DOB/Age/Birth Gender: 3/31/1951 / 72 years / Male CDCR: T75535

***Assessment Forms*** 8/25/2023

**Subjective**
Arrival to Clinic : 8/25/2023 08:58 PDT
Mode of Arrival : Ambulatory
Appointment Type : Initial
7362 Identifier (1) : 137.252.9.41.202308051117224806125812161#1.00
7362 Date Written (1) : 8/10/2023 PDT
7362 Order Details Template : 7362 Orders
7362 RN Initial Visit (Asymptomatic) - Ordered
-- 08/25/23 11:00:00 PDT, 137.252.9.41.202308051117224806125812161#1.00, WOULD LIKE TO ONLY SPEAK TO PCP RE CHANGE OF POWDER, 08/25/23 23:59:00 PDT
7362 Asymtomatic : Yes

Garcia, Kimberly RN - 8/25/2023 8:58 PDT

**Asymptomatic**
7362 Asymptomatic Interventions : I spoke to I/P and he was on methylcellulose and it was change to pills. Requesting to have powder again. I informed him that he was changed to a formulary medication which is the equivalent to what he was taking. I asked if he was constipated. He denied
(Comment: any constipation. I asked if he feels the pills are effective and he said that he won't even try the pills. He said he got a fiber product from a vendor and that is what he is taking. He said if he does not get the powder then he would like the fiber discontinued. I notified him That I would let his PCP know. He is also on the doctor line on 8/30 so he plans to address it at that time also. [Garcia, Kimberly RN - 8/25/2023 9:11 PDT] )
7362 Asymptomatic Plan : Requesting change fiber powder to fiber pill

Garcia, Kimberly RN - 8/25/2023 9:11 PDT

**Diagnosis/Problem**

(As Of: 8/25/2023 09:19:39 PDT)

Problems(Active)

| | |
|---|---|
| Acute stress disorder (DSM-5-TR :F43.0 ) | Name of Problem: Acute stress disorder ; Recorder: Betters, Denise Licensed Clinical Social Worker; Confirmation: Confirmed ; Classification: Mental Health ; Code: F43.0 ; Contributor System: PowerChart ; Last Updated: 7/7/2023 14:42 PDT ; Life Cycle Date: 07/07/23 ; Life Cycle Status: Active ; Responsible Provider: Betters, Denise Licensed Clinical Social Worker; Vocabulary: DSM-5-TR |
| Chronic hepatitis C (SNOMED CT :206586011 ) | Name of Problem: Chronic hepatitis C ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 206586011 ; Contributor System: PowerChart ; Last Updated: 4/6/2022 18:10 PDT ; Life Cycle Date: 04/06/22 ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT |
| Former heavy tobacco smoker (SNOMED CT :610141000124117 ) | Name of Problem: Former heavy tobacco smoker ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 610141000124117 ; Contributor System: PowerChart ; Last Updated: 6/23/2021 20:01 PDT ; Life Cycle |



**WARNING:** **This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.**

(12)

2. (of 5.) - 8/25/2023

## *Assessment Forms* 8/25/2023

| | |
|---|---|
| | Date: 06/23/21 ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT |
| Gender dysphoria (SNOMED CT :154707011 ) | Name of Problem: Gender dysphoria ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 154707011 ; Contributor System: PowerChart ; Last Updated: 3/27/2023 11:03 PDT ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT ; Comments: <br><br> 3/27/2023 11:03 - Dunton, Maria P&S <br> 08/06/17 18:44 PDT - Duong, Han P&S <br> male-to-female; started hormone treatment on 4/25/17 |
| Gender dysphoria in adolescents and adults (SNOMED CT :154707011 ) | Name of Problem: Gender dysphoria in adolescents and adults ; Recorder: Dunton, Maria P&S; Confirmation: Confirmed ; Classification: Mental Health ; Code: 154707011 ; Contributor System: PowerChart ; Last Updated: 3/27/2023 11:04 PDT ; Life Cycle Status: Active ; Responsible Provider: Dunton, Maria P&S; Vocabulary: SNOMED CT ; Comments: <br><br> 3/27/2023 11:04 - Dunton, Maria P&S <br> 08/06/17 18:44 PDT - Duong, Han P&S <br> male-to-female; started hormone treatment on 4/25/17 |
| Healthcare maintenance (SNOMED CT :447501012 ) | Name of Problem: Healthcare maintenance ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 447501012 ; Contributor System: PowerChart ; Last Updated: 12/4/2022 15:15 PST ; Life Cycle Date: 12/04/22 ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT |
| Hepatitis B core antibody positive (SNOMED CT :3521926012 ) | Name of Problem: Hepatitis B core antibody positive ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 3521926012 ; Contributor System: PowerChart ; Last Updated: 12/5/2022 11:27 PST ; Life Cycle Date: 12/05/22 ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT |
| Hyperlipidemia (SNOMED CT :92826017 ) | Name of Problem: Hyperlipidemia ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 92826017 ; Contributor System: PowerChart ; Last Updated: 6/23/2021 20:01 PDT ; Life Cycle Date: 06/23/21 ; |



**WARNING:** **This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.**

(13) 3. (of 5.) - 8/25/2023

NOT PROCESSED

CIM - California Institution for Men

Patient: HAAG, JAMES BRADLEY
DOB/Age/Birth Gender: 3/31/1951 / 72 years / Male CDCR: T75535

**Assessment Forms** 8/8/2023

Faustino, Maria RN - 6/22/2023 15:13 PDT

SUD Screening (NIDA-MA & Co-Triage) Entered On: 8/8/2023 10:55 PDT
Performed On: 8/8/2023 10:54 PDT by Romero, Graciela Medical LCSW

**Patient Encounter Information**
ENCTR Information : Encounter Info: Patient Name: JAMES HAAG,DOB: 03/31/1951,,FIN: 10000000611091138T75535,Facility: CIM,Encounter Type: Institutional Encounter

Romero, Graciela Medical LCSW - 8/8/2023 10:54 PDT

**Patient Present**
Patient Present : Yes
SUD Patient Participation : Refused

Romero, Graciela Medical LCSW - 8/8/2023 10:54 PDT

**General Information**
Referral source SUDT : Other: follow up after refusal in January 2023
NIDA QS Smart Template : NIDA Modified Assist Results
No NIDA Modified Assist information available.

Romero, Graciela Medical LCSW - 8/8/2023 10:54 PDT

**History SUDT 2.0**
SUD Screening PowerForm - AM Orders Smart Template : Addiction Medicine Orders
This patient does not have any current Addiction Medicine orders.

Romero, Graciela Medical LCSW - 8/8/2023 10:54 PDT
(As Of: 8/8/2023 10:55:32 PDT

Problems(Active)

| | |
|---|---|
| Acute stress disorder (DSM-5-TR :F43.0 ) | Name of Problem: Acute stress disorder ; Recorder: Betters, Denise Licensed Clinical Social Worker; Confirmation: Confirmed ; Classification: Mental Health ; Code: F43.0 ; Contributor System: PowerChart ; Last Updated: 7/7/2023 14:42 PDT ; Life Cycle Date: 07/07/23 ; Life Cycle Status: Active ; Responsible Provider: Betters, Denise Licensed Clinical Social Worker; Vocabulary: DSM-5-TR |
| Chronic hepatitis C (SNOMED CT :206586011 ) | Name of Problem: Chronic hepatitis C ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 206586011 ; Contributor System: PowerChart ; Last Updated: 4/6/2022 18:10 PDT ; Life Cycle Date: 04/06/22 ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT |



**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

(18) 1. (of 7.) - 8/8/2023

**CIM - California Institution for Men**

Patient: **HAAG, JAMES BRADLEY**
DOB/Age/Birth Gender: 3/31/1951 / 72 years / Male CDCR: T75535

***Assessment Forms*** 8/8/2023

| | |
|---|---|
| Healthcare maintenance | Date: 2/17/2023 ; Diagnosis Type: Discharge ; Confirmation: Confirmed ; Clinical Dx: Healthcare maintenance ; Classification: Medical ; Clinical Service: Non-Specified ; Code: ICD-10-CM ; Probability: 0 ; Diagnosis Code: Z00.00 |
| Ingrown toenail of left foot | Date: 12/5/2022 ; Diagnosis Type: Discharge ; Confirmation: Confirmed ; Clinical Dx: Ingrown toenail of left foot ; Classification: Medical ; Code: ICD-10-CM ; Probability: 0 ; Diagnosis Code: L60.0 |

Social History

(As Of: 8/8/2023 10:55:32 PDT

Tobacco:

Former, Cigarettes, Use Type: Packs. 2 per day. 15 year(s). Total pack years: 30. Started age 9 Years. Stopped age 39 Years. Previous treatment: None. Comments: 3/28/2023 12:36 - Dunton, Maria P&S: 5/31/1990 last use 12/5/2022 9:31 - Elman, Arnolfo P&S: quit in 1990 at age 39 yo (Last Updated: 3/28/2023 12:35:59 PDT by Dunton, Maria P&S)

Alcohol:

Former, Beer, Daily, Withdrawal Symptoms Present Yes. Previous treatment: Alcoholics Anonymous. Comments: 3/28/2023 12:36 - Dunton, Maria P&S: 12/3/1988 detox, no use since that date 12/18/2017 12:28 - Duong, Han P&S: had been drinking 23 yrs, stopped on 12/4/1998 (Last Updated: 3/28/2023 12:36:31 PDT by Dunton, Maria P&S)

Substance Abuse:

Former, Marijuana (Last Updated: 3/28/2023 12:37:18 PDT by Dunton, Maria P&S)

Medication List

(As Of: 8/8/2023 10:55:32 PDT)

Normal Order

| | |
|---|---|
| +1-polycarbophil 625 mg Tab | : +1-polycarbophil 625 mg Tab ; Status: Ordered ; Ordered As Mnemonic: polycarbophil ; Simple Display Line: 1,250 mg, Oral, BID-KOP, PRN: constipation ; Ordering Provider: Torres, Kirk CP&S; Catalog Code: polycarbophil ; Order Dt/Tm: 7/28/2023 10:16:02 PDT ; Comment: Take with a full glass of water |



**WARNING:** **This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.**

**CIM - California Institution for Men**

Patient: **HAAG, JAMES BRADLEY**
DOB/Age/Birth Gender: 3/31/1951 / 72 years / Male CDCR: T75535

***Assessment Forms*** 8/8/2023

| | |
|---|---|
| Former heavy tobacco smoker (SNOMED CT :610141000124117 ) | Name of Problem: Former heavy tobacco smoker ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 610141000124117 ; Contributor System: PowerChart ; Last Updated: 6/23/2021 20:01 PDT ; Life Cycle Date: 06/23/21 ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT |
| Gender dysphoria (SNOMED CT :154707011 ) | Name of Problem: Gender dysphoria ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 154707011 ; Contributor System: PowerChart ; Last Updated: 3/27/2023 11:03 PDT ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT ; Comments:<br><br>3/27/2023 11:03 - Dunton, Maria P&S<br>08/06/17 18:44 PDT - Duong, Han P&S<br>male-to-female; started hormone treatment on 4/25/17 |
| Gender dysphoria in adolescents and adults (SNOMED CT :154707011 ) | Name of Problem: Gender dysphoria in adolescents and adults ; Recorder: Dunton, Maria P&S; Confirmation: Confirmed ; Classification: Mental Health ; Code: 154707011 ; Contributor System: PowerChart ; Last Updated: 3/27/2023 11:04 PDT ; Life Cycle Status: Active ; Responsible Provider: Dunton, Maria P&S; Vocabulary: SNOMED CT ; Comments:<br><br>3/27/2023 11:04 - Dunton, Maria P&S<br>08/06/17 18:44 PDT - Duong, Han P&S<br>male-to-female; started hormone treatment on 4/25/17 |
| Healthcare maintenance (SNOMED CT :447501012 ) | Name of Problem: Healthcare maintenance ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 447501012 ; Contributor System: PowerChart ; Last Updated: 12/4/2022 15:15 PST ; Life Cycle Date: 12/04/22 ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT |
| Hepatitis B core antibody positive (SNOMED CT :3521926012 ) | Name of Problem: Hepatitis B core antibody positive ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 3521926012 ; Contributor System: PowerChart ; Last Updated: 12/5/2022 11:27 PST ; Life Cycle Date: 12/05/22 ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT |



**WARNING:** **This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.**

(20) 3. (of 7.) - 8/8/2023

CIM - California Institution for Men

Patient: HAAG, JAMES BRADLEY
DOB/Age/Birth Gender: 3/31/1951 / 72 years / Male CDCR: T75535

***Assessment Forms*** 8/8/2023

| | |
|---|---|
| measles mumps rubella vaccine (M-M-R II) Powder-Inj vial (4681-00) | : measles mumps rubella vaccine (M-M-R II) Powder-Inj vial (4681-00) ; Status: Ordered ; Ordered As Mnemonic: measles/mumps/rubella vaccine INJECTION ; Simple Display Line: 0.5 mL, Subcutaneous, As Indicated ; Ordering Provider: Elman, Arnolfo P&S; Catalog Code: measles/mumps/rubella virus vaccine ; Order Dt/Tm: 2/17/2023 11:08:26 PST |
| measles mumps rubella vaccine (M-M-R II) Powder-Inj vial (4681-00) | : measles mumps rubella vaccine (M-M-R II) Powder-Inj vial (4681-00) ; Status: Ordered ; Ordered As Mnemonic: measles/mumps/rubella vaccine INJECTION ; Simple Display Line: 0.5 mL, Subcutaneous, As Indicated ; Ordering Provider: Elman, Arnolfo P&S; Catalog Code: measles/mumps/rubella virus vaccine ; Order Dt/Tm: 2/17/2023 11:08:26 PST |

Clinical Information
Urine Drug Screen ST : UTOX Results
No Result found in EHRS
SUD HLOC return 6mo : No
SUD complications 6mo : No
SUD RVR in SOMS : No
HCV Reinfection : No

Romero, Graciela Medical LCSW - 8/8/2023 10:54 PDT

Co-Triage
ASAM Assessment : Assessment Refused

Romero, Graciela Medical LCSW - 8/8/2023 10:56 PDT
(As Of: 8/8/2023 11:02:22 PDT)

Problems(Active)

| | |
|---|---|
| Acute stress disorder (DSM-5-TR :F43.0 ) | Name of Problem: Acute stress disorder ; Recorder: Betters, Denise Licensed Clinical Social Worker; Confirmation: Confirmed ; Classification: Mental Health ; Code: F43.0 ; Contributor System: PowerChart ; Last Updated: 7/7/2023 14:42 PDT ; Life Cycle Date: 07/07/23 ; Life Cycle Status: Active ; Responsible Provider: Betters, Denise Licensed Clinical Social Worker; Vocabulary: DSM-5-TR |
| Chronic hepatitis C (SNOMED CT :206586011 ) | Name of Problem: Chronic hepatitis C ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 206586011 ; Contributor System: PowerChart ; Last Updated: 4/6/2022 18:10 PDT ; Life Cycle Date: 04/06/22 ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT |



**WARNING:** **This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.**

(22) 5. (of 7.) - 8/8/2023

**CIM - California Institution for Men**

Patient: **HAAG, JAMES BRADLEY**
DOB/Age/Birth Gender: 3/31/1951 / 72 years / Male CDCR: T75535

***Assessment Forms*** 8/8/2023

| | |
|---|---|
| Healthcare maintenance | Date: 2/17/2023 ; Diagnosis Type: Discharge ; Confirmation: Confirmed ; Clinical Dx: Healthcare maintenance ; Classification: Medical ; Clinical Service: Non-Specified ; Code: ICD-10-CM ; Probability: 0 ; Diagnosis Code: Z00.00 |
| Ingrown toenail of left foot | Date: 12/5/2022 ; Diagnosis Type: Discharge ; Confirmation: Confirmed ; Clinical Dx: Ingrown toenail of left foot ; Classification: Medical ; Code: ICD-10-CM ; Probability: 0 ; Diagnosis Code: L60.0 |

**Follow Up / Notification**
SUD Reorder Patient Refuse : 180 days
Education Provided : Compliance with appointments and programming, Submit Form 7362 for health care concerns
Education Response : Patient verbalized understanding of written/ verbal instructions
Romero, Graciela Medical LCSW - 8/8/2023 10:56 PDT

**Comments**
Comments SUDT : LCSW met with (PT) patient in a confidential office setting for the purposes of completing a NIDA Modified Assist screening. ?LCSW discussed confidentiality and limitations (i.e. danger to self or others, reported child and/or elder abuse, PREA). PT informed that LCSW is a mandated reported. PT confirmed receiving Board of Behavioral Sciences, written notice from medical staff regarding complaints related to services received from a Social Work Professional.

PT was informed that today's assessment/screening could result in referral(s) to appointment with Medication Assisted Treatment (MAT) provider for voluntary MAT medications and/or mandatory groups offered by ISUDT. PT also informed that possible referral to MH staff and other medical staff may be warranted if clinically appropriate. PT informed that participation in the interview is voluntary and that PT can choose to decline to participate for any reason. PT informed regarding possible delays for follow up with ISUDT program groups and treatment.

LCSW explained the program, its requirements and benefits. PT ultimately decided to decline to participate at this time. PT presents as irritabloe stating "this will only take a minute". PT shares that he does not have a substance use problem and feels ISUDT calling him into these appointments is "harrassment". PT identifies that if he is called again to another ISUDT appointment, he will file a "harrassment litigation". PT refuses to sign any refusal form at this time. PT was informed that per policy and continuity of care PT may be called again to follow up. PT is aware that he can submit a 7362 medical request form for self- referral should he change his mind in the future. PT encouraged to seek staff support in the event of a medical emergency, and submit a 7362 for non-urgent medical needs. PT was receptive to this.

Per record review, PT has not had higher level of care return in the last 6 months related to SUD, does not have SUD related complications, per record had diagnosis of "chronic hep c", as this writer is not a medical professional, it is unable to be confirmed if PT has a hep c reinfection, and does not have RVRs related to SUD.
The following information was obtained during today's screening per patient's self-report:
Drug of choice: Marijuana, cigarettes
Last use: December 4th 1988
Route of administration: PT did not disclose
Onset of use: OT did not disclose
History of overdoses: None
Withdrawals symptoms: None present



**WARNING:** **This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.**

(23)

6. (of 7.) - 8/8/2023

**CIM - California Institution for Men**

Patient: **HAAG, JAMES BRADLEY**
DOB/Age/Birth Gender: 3/31/1951 / 72 years / Male CDCR: T75535

***Assessment Forms*** (Last Of) 8/8/2023

Triggers for use: PT did not disclose
Coping skills: PT did not disclose

Mental Status Exam
Appearance: Well groomed
Activity: Within normal range
Eye contact: maintained throughout contact
Behavior: irritable however not disrespectful
Mood: irritable
Affect: congruent to mood
Speech: normal tone/rate
Attention and Concentration: intact
Thinking: linear
Perceptual disturbances: None
Cognition: fully oriented

Education provided:
LCSW educated patient on the risks of overdose and continued use of substances, in addition to education regarding ways to appropriately ask for help/support via 7362 process. Pt was also advised of the potential for substances to be knowingly/unknowingly laced with Fentanyl which further elevates the risk of accidental overdose and/or death.

(7. of 7.) Romero, Graciela Medical LCSW - 8/8/2023 10:56 PDT

**SUD Screening (NIDA-MA & Co-Triage) Entered On: 1/24/2023 8:06 PST**
**Performed On: 1/24/2023 8:05 PST by Grutman, Alice Medical LCSW**

1/24/2023

**Patient Encounter Information**
ENCTR Information : Encounter Info: Patient Name: JAMES HAAG,DOB: 03/31/1951,,FIN: 10000000611091138T75535,Facility: CIM,Encounter Type: Institutional Encounter
Grutman, Alice Medical LCSW - 1/24/2023 8:05 PST

**General Information**
Referral source SUDT : Nursing
Appt for NIDAMA/CoTriage or Intervention : Refused
NIDA QS Smart Template : NIDA Modified Assist Results
No NIDA Modified Assist information available.
Grutman, Alice Medical LCSW - 1/24/2023 8:05 PST

**Co-Triage**
ASAM Assessment : Assessment Refused

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID: 74642893 Print Date/Time: 9/21/2023 07:39 PDT

**WARNING:** **This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.**

 1. (of 4.) - 1/24/2023

**CIM - California Institution for Men**

Patient: **HAAG, JAMES BRADLEY**
DOB/Age/Birth Gender: 3/31/1951 / 72 years / Male CDCR: T75535

***Assessment Forms*** 1/24/2023

Grutman, Alice Medical LCSW - 1/24/2023 8:05 PST
(As Of: 1/24/2023 08:06:42 PST)

Problems(Active)

| | |
|---|---|
| Chronic hepatitis C (SNOMED CT :206586011 ) | Name of Problem: Chronic hepatitis C ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 206586011 ; Contributor System: PowerChart ; Last Updated: 4/6/2022 18:10 PDT ; Life Cycle Date: 04/06/22 ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT |
| Former heavy tobacco smoker (SNOMED CT :610141000124117 ) | Name of Problem: Former heavy tobacco smoker ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 610141000124117 ; Contributor System: PowerChart ; Last Updated: 6/23/2021 20:01 PDT ; Life Cycle Date: 06/23/21 ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT |
| Gender dysphoria (SNOMED CT :154707011 ) | Name of Problem: Gender dysphoria ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 154707011 ; Contributor System: PowerChart ; Last Updated: 4/6/2022 18:10 PDT ; Life Cycle Date: 04/06/22 ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT |
| Healthcare maintenance (SNOMED CT :447501012 ) | Name of Problem: Healthcare maintenance ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 447501012 ; Contributor System: PowerChart ; Last Updated: 12/4/2022 15:15 PST ; Life Cycle Date: 12/04/22 ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT |
| Hepatitis B core antibody positive (SNOMED CT :3521926012 ) | Name of Problem: Hepatitis B core antibody positive ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 3521926012 ; Contributor System: PowerChart ; Last Updated: 12/5/2022 11:27 PST ; Life Cycle Date: 12/05/22 ; Life Cycle Status: Active ; Responsible Provider: Elman, Arnolfo P&S; Vocabulary: SNOMED CT |
| Hyperlipidemia (SNOMED CT :92826017 ) | Name of Problem: Hyperlipidemia ; Recorder: Elman, Arnolfo P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 92826017 ; Contributor System: PowerChart ; Last Updated: 6/23/2021 20:01 PDT ; Life Cycle Date: 06/23/21 ; Life Cycle Status: Active ; Responsible Provider: Elman, |



**WARNING:** **This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.**

**CIM - California Institution for Men**

Patient: **HAAG, JAMES BRADLEY**
DOB/Age/Birth Gender: 3/31/1951 / 72 years / Male CDCR: T75535

***Assessment Forms*** 1/24/2023

| | |
|---|---|
| | Arnolfo P&S; Vocabulary: SNOMED CT |
| Noncompliance (SNOMED CT :2647221012 ) | Name of Problem: Noncompliance ; Recorder: Duong, Han P&S; Confirmation: Confirmed ; Classification: Medical ; Code: 2647221012 ; Contributor System: PowerChart ; Last Updated: 6/21/2018 11:19 PDT ; Life Cycle Date: 06/21/18 ; Life Cycle Status: Active ; Responsible Provider: Duong, Han P&S; Vocabulary: SNOMED CT ; Comments:<br><br>6/21/2018 11:19 - Duong, Han P&S<br>Refused medication: Statin, levothyroxine except hormone therapy. Refused all the blood work except hormone levels. Refused FOBT |

Diagnoses(Active)

| | |
|---|---|
| Constipation | Date: 1/12/2023 ; Diagnosis Type: Discharge ; Confirmation: Confirmed ; Clinical Dx: Constipation ; Classification: Medical ; Clinical Service: Non-Specified ; Code: ICD-10-CM ; Probability: 0 ; Diagnosis Code: K59.00 |
| Gender dysphoria | Date: 1/12/2023 ; Diagnosis Type: Discharge ; Confirmation: Confirmed ; Clinical Dx: Gender dysphoria ; Classification: Medical ; Code: ICD-10-CM ; Probability: 0 ; Diagnosis Code: F64.9 |
| Ingrown toenail of left foot | Date: 12/5/2022 ; Diagnosis Type: Discharge ; Confirmation: Confirmed ; Clinical Dx: Ingrown toenail of left foot ; Classification: Medical ; Code: ICD-10-CM ; Probability: 0 ; Diagnosis Code: L60.0 |

**Follow Up / Notification**
Need for Co- Consult or Notification : No
Education Provided : Compliance with appointments and programming, Submit Form 7362 for health care concerns
Education Response : Patient verbalized understanding of written/ verbal instructions
Grutman, Alice Medical LCSW - 1/24/2023 8:05 PST

**Comments**
Comments SUDT : Pt presents for session with neat appearance in prison-issued clothing, agitated mood, and appropriate behavior/affect. Client is oriented x4. Speech was WNL and eye-contact maintained. No SI/HI endorsed. Client did not appear to be responding to internal or external stimuli. Thought process was logical and goal-directed. Telepresenter was present during appointment.

Met with patient to complete NIDA-MA/Co-Triage, however, patient declined appointment. LCSW informed patient of purpose of appointment, confidentiality and limits to confidentiality. LCSW utilized motivational interviewing to build rapport, provide psychoeducation about the program, and facilitate discussion about patient's future goals. LCSW provided psychoeducation



**WARNING:** **This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.**

NOT PROCESSED

CIM - California Institution for Men

Patient: HAAG, JAMES BRADLEY
DOB/Age/Birth Gender: 3/31/1951 / 72 years / Male CDCR: T75535

**Assessment Forms** (Last OF) 1/24/2023

about the program and patient stated that he does not understand why he was referred for substance use treatment, as he has been in recovery for 34 years, stating "I went to a program in 1998 drunk as 5 men and left sober as can be. I haven't had any drugs or alcohol since." LCSW continued to build rapport with patient and discuss various LOC within ISUDT. Patient stated he was not interested in being assessed for any classes and would like to decline all ISUDT services. LCSW attempted to continue to build rapport and ask open-ended questions, however, patient continued to explain that he is not interested. LCSW honored patient's autonomy and advised him to submit 7362 at any time if he changes his mind. LCSW provided psychoeducation about Fentanyl being cut into various substances and the risk of overdose. Patient stated he understood. Telepresenter will have patient sign a Form 7225, refusal form and email to LCSW.

4.(of 4.) Grutman, Alice Medical LCSW - 1/24/2023 9:05 PST

**SUD Pre-Release Screening Entered On: 2/10/2023 11:42 PST**
**Performed On: 2/10/2023 11:40 PST by Ceesay, Ousman RN**

2/10/2023

Patient Encounter Information
ENCTR Information : Encounter Info: Patient Name: JAMES HAAG,DOB: 03/31/1951,,FIN: 10000000611091138T75535,Facility: CIM,Encounter Type: Institutional Encounter
Ceesay, Ousman RN - 2/10/2023 11:40 PST

SUD Pre-Release Screening NSG NIDA Quick Screen V2.0
NIDA Quick Screen Refused : No
Patient Is : Male
Alcohol - For Men, 5 or more drinks a day : Never
Tobacco Products : Never
Rx Drugs for Non-Medical Reasons : Never
Illegal Drugs : Never
Rx Drugs and Illegal Drugs Score : 0
Rx Drugs and Illegal Drugs Interpretation : Negative
Ceesay, Ousman RN - 2/10/2023 11:40 PST

SUD Pre-Release Screening Plan
Education Provided : Compliance with appointments and programming, Compliance with labs and diagnostics, Encourage HCV, HIV, & other sexually transmitted disease testing, Risk of continuous use, Medication compliance & awareness, Identifying and managing triggers and cravings, Submit Form 7362 for health care concerns
Education Response : Patient verbalized understanding of written/ verbal instructions

1 of 1 Ceesay, Ousman RN - 2/10/2023 11:40 PST

**COVID-19 Pre-Vaccination Screening Entered On: 6/29/2023 9:28 PDT**
**Performed On: 6/29/2023 9:27 PDT by Tena, Zac RN**



**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.



1. (of 2.) - 6/29/2023

ATTACHMENT 3:

REQUESTS FOR INTERVIEW WITH CASE COUNSELOR III, STROBELT

STATE OF CALIFORNIA
GA-0022 (Rev 2013-10)

DEPARTMENT OF CORRECTIONS & REHABILIATION

# INMATE REQUEST FOR INTERVIEW

| DATE | TO | FROM (LAST NAME) | CDCR NUMBER |
|---|---|---|---|
| 09/14/2023 | C.C.III: STROBELT | HAAG, JAMES BRADLEY | T-75535 |

| HOUSING | BED NUMBER | WORK ASSIGNMENT | JOB NUMBER |
|---|---|---|---|
| Alpine | 210-L | /// | FROM /// TO /// |

| OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.) | ASSIGNMENT HOURS |
|---|---|
| James Haag X /// | FROM /// TO /// |

**Clearly state your reason for requesting this interview.**
You will be called in for interview in the near future if the matter cannot be handled by correspondence.

"ON THE ADVICE OF C.O. VELASQUEZ" -- CUSTODY/OVERSEER OF THE [DEL NORTE: MONDAY, WEDNESDAY, FRIDAY] "I.S.U.D.T. GROUP" -- FOLLOWING AN EXTENSIVE CONVERSATION -- I AM RESPECTFULLY REQUESTING A 'PERSON-TO-PERSON MEETING/INTERVIEW WITH YOU.' I KNOW THAT YOU ARE A "VERY BUSY PERSON." HOWEVER, MY "ISSUES" ARE VERY IMPORTANT. PLEASE PROVIDE ME 'A RESPONSE TO THIS REQUEST' AS SPECIFIED WITHIN C.C.R. TITLE 15: §§3086(f)(1)(4)(A)(B)(C)(D). THANK YOU.

**Do NOT write below this line. If more space is required, write on back.**

INTERVIEWED BY: RCVD 10/19/23 G. Farias — DATE 10/19/23

DISPOSITION: You will be ducated for an in-person interview.

RECEIVED
HCCAB
JAN 19 2024

STATE OF CALIFORNIA
GA-0022 (Rev 2013-10)

DEPARTMENT OF CORRECTIONS & REHABILIATION

# INMATE REQUEST FOR INTERVIEW

| DATE | TO | FROM (LAST NAME) | CDCR NUMBER |
|---|---|---|---|
| April 3, 2024 | C.C.III: STROBELT | Haag, James Bradley (signed: James Haag) | T-75535 |

| HOUSING | BED NUMBER | WORK ASSIGNMENT | JOB NUMBER |
|---|---|---|---|
| Sycamore West | 201-L | /// | FROM /// TO /// |

| OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.) | ASSIGNMENT HOURS |
|---|---|
| [Monday / Wednesday / Friday] I.S.U.D.T. | FROM 5:30 TO 7:30 P.M. |

**Clearly state your reason for requesting this interview.**
You will be called in for interview in the near future if the matter cannot be handled by correspondence.

I AM REQUESTING A "PERSON TO PERSON" INTERVIEW PERTAINING TO "I.S.U.D.T.." [THIS IS MY SECOND REQUEST. "THE FIRST" DATES BACK TO: "09/14/2023" (REQUEST DATE) / "10/19/2023" (YOUR PROMISE TO "DUCAT ME FOR AN INTERVIEW")]. I HAVE NOT "NAGGED." NOR WILL I NOW. IF YOU SNUB ME THIS TIME, PLAN ON BEING 'A NAMED DEFENDANT IN A FORTHCOMING FEDERAL LAWSUIT.' "I HAVE HEARD FROM SACRAMENTO PERTAINING TO I.S.U.D.T., AND WISH TO TALK TO YOU ABOUT SUCH."

**Do NOT write below this line. If more space is required, write on back.**

INTERVIEWED BY: G Farias

DATE: 4/10/24

DISPOSITION: On 4/4 you were interviewed by DRP officer. You will be scheduled for interview with CCIII Strobelt

ATTACHMENT 4:

"COUNSELING CHRONO AND ADMINISTRATIVE "115""

CALIFORNIA DEPARTMENT of Corrections and Rehabilitation

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | MEPD | FACILITY | HOUSING LOCATION |
|---|---|---|---|---|
| T75535 | HAAG, JAMES B. | 10/08/2091 | CIM-Facility C | CIM-C - C A 2 - 210001L |

| VIOLATION DATE | VIOLATION TIME | VIOLATION LOCATION | WITH STG NEXUS |
|---|---|---|---|
| 08/30/2023 | 08:30:00 | CIM-Facility C - ASSIGNMENT AREA | No |

Did the reporting employee ensure the inmate understands (to the best of his/her ability) the consequences of the continued misconduct? N/A

Did the reporting employee take into consideration the severity of the inmate's disability and the need for adaptive support services when determining the method of discipline? N/A

CIRCUMSTANCES OF VIOLATION

On August 30, 2023, while performing my duties as FAC-C DRP 3 officer. At approximately 0830 hrs, Inmate HAAG, JAMES B., CDCR#T75535, FAC-C-A-210L, arrived for his assigned mandatory CBI-life skills (Cognitive Behavior Intervention) class and stated to both Amity Counselor Mr. Moore and me "I am going to refuse these classes. I don't want them, and I don't care if you have to write me up. Do what you have to do. I don't care. I just don't want to be here!" I spoke with Inmate Haag and verbally informed him of the consequences for not reporting or programing with his assigned mandatory CBI class. Inmate Haag once again stated in his own words "I know, and I understand that I will get a write up. But I don't want to be here. So just write me up. I have a long time to do and frankly don't care about any 115 write up's" Inmate Haag then proceeded exit FAC-C4 housing and returned to his housing unit.

On Friday, August 25, 2023, AMITY Supervisor Mr. Settles and I spoke with Inmate Haag and verbally counseled him on the importance of his full participation in the CBI-life skills program and that it is a mandatory requirement that he fully participate in this class. Inmate Haag was assigned to the CBI-life skills class 08/21/2023 and has failed to make any effort in participating in these class sessions.

On January 21, 2020, the California Department of Corrections and Rehabilitation (CDCR) and California Correctional Health Care Services (CCHCS) implemented Integrated Substance Use Disorder Treatment (ISUDT). ISUDT is a comprehensive and evidence-based cross-divisional program with pathways to treatment through DRP Cognitive Behavioral interventions (CBI) programs. Participants who are medically referred and determined to be at risk for Substance Use Disorder (SUD) related harms will be placed into either the CBI-Intensive Outpatient or CBI-Outpatient program. Inmate HAAG, J. CDCDR# T75535, is scheduled to attend the 0815 hrs. To 1015 hrs. ISUDT Intensive group on C-facility. Inmate HAAG, J. is aware of this documentation.

PRNR#40697

| REPORTING EMPLOYEE | TITLE | ASSIGNMENT | RDO | DATE: |
|---|---|---|---|---|
| J. Velazquez | C/O | FAC-DRP 3 C/O | S,S,H | 08/30/2023 |

RVR LOG NUMBER: 000000007343541 VIOLATED RULE NUMBER: 3001

SPECIFIC ACT: Failure to meet program/work expectations

/ 1 of 2 -- 8/30/2023

| CLASSIFICATION | | | |
|---|---|---|---|
| LEVEL: | Counseling Only | OFFENSE DIVISION: | |
| REFERRED TO: | | FELONY PROSECUTION LIKELY: | |

| REVIEWING SUPERVISOR | TITLE | DATE |
|---|---|---|
| A. Angel | Sergeant | 08/30/2023 |

CDCR SOMS ISST120 - RULES VIOLATION REPORT

2 of 2 -- 8/30/2023

CALIFORNIA DEPARTMENT of
Corrections and Rehabilitation

# RULES VIOLATION REPORT

| CDC NUMBER<br>T75535 | INMATE'S NAME<br>HAAG, JAMES B. | MEPD<br>10/08/2091 | FACILITY<br>CIM-Facility C | HOUSING LOCATION<br>CIM-C - C A 2 - 210001L |
|---|---|---|---|---|
| VIOLATION DATE<br>09/13/2023 | VIOLATION TIME<br>08:45:00 | VIOLATION LOCATION<br>CIM-Facility C - ASSIGNMENT AREA | | WITH STG NEXUS<br>No |

Did the reporting employee ensure the inmate understands (to the best of his/her ability) the consequences of the continued misconduct? N/A

Did the reporting employee take into consideration the severity of the inmate's disability and the need for adaptive support services when determining the method of discipline? N/A

CIRCUMSTANCES OF VIOLATION

On Wednesday, September 13, 2023, while performing my duties as FAC-C DRP 3 officer. At approximately 0845 hrs., Inmate HAAG, JAMES B., CDCR#T75535, FAC-C-A-210L, arrived for his assigned mandatory CBI-life skills (Cognitive Behavior Intervention) class and stated to both Amity Counselor Mr. Moore and me "I have already explained to you that am going to refuse these classes. I don't want or need these classes. I don't care if you have to write me up. I just don't want to be here!" I counseled and spoke with Inmate Haag and verbally informed him once again of the consequences for not reporting or programing with his assigned mandatory CBI class. Inmate Haag once again stated in his own words "I know, and I understand that I will get a write up. But, I don't want to be here. I still have a long time to do and frankly don't care about any 115 write up's" Inmate Haag then proceeded exit FAC-C4 housing and returned to his housing unit.

On Friday, August 25, 2023, AMITY Supervisor Mr. Settles and I spoke with Inmate Haag and verbally counseled him on the importance of his full participation in the CBI-life skills program and that it is a mandatory requirement that he fully participate in this class. Inmate Haag was assigned to the CBI-life skills class 08/21/2023 and has failed to make any effort in participating in these class sessions. Motivational interviewing techniques were used to encourage Inmate Haag to attend and participate in his mandatory assigned CBI-life skills class. Inmate Haag is fully aware of the consequences for not reporting to his CBI-life skills class and still choose to refuse to program.

On January 21, 2020, the California Department of Corrections and Rehabilitation (CDCR) and California Correctional Health Care Services (CCHCS) implemented Integrated Substance Use Disorder Treatment (ISUDT). ISUDT is a comprehensive and evidence-based cross-divisional program with pathways to treatment through DRP Cognitive Behavioral interventions (CBI) programs. Participants who are medically referred and determined to be at risk for Substance Use Disorder (SUD) related harms will be placed into either the CBI-Intensive Outpatient or CBI-Outpatient program. Inmate HAAG, J. CDCDR# T75535, is scheduled to attend the 0815 hrs. To 1015 hrs. ISUDT Intensive group on C-facility. Inmate HAAG, J. is aware of this documentation.

Inmate Haag has been issued an RVR for Failure to meet program/work expectations. Refer to RVR #0000000077343541.

Inmate Haag is a participant in the Mental Health Service Delivery System (MHSDS) at the Correctional Clinical Management System (CCCMS) level of care. Inmate Bregman has a T.A.B.E. Score of 00.0, and speaks and understands English.

PRNR#40697

1 of 2 -- 9/13/2023

| REPORTING EMPLOYEE | TITLE | ASSIGNMENT | RDO | DATE: |
|---|---|---|---|---|
| J. Velazquez | C/O | FAC-DRP 3 C/O | S,S,H | 09/13/2023 |

RVR LOG NUMBER: 000000007348366 VIOLATED RULE NUMBER: 3001

SPECIFIC ACT: Failure to meet program/work expectations

CLASSIFICATION

LEVEL: Administrative OFFENSE DIVISION:

REFERRED TO: Hearing Officer FELONY PROSECUTION LIKELY:

| REVIEWING SUPERVISOR | TITLE | DATE |
|---|---|---|
| A. Quezada | SGT | 09/13/2023 |

| CLASSIFIED BY | TITLE | DATE |
|---|---|---|
| J. Grove | Lieutenant | 09/14/2023 |

CDCR SOMS ISST120 - RULES VIOLATION REPORT

2 of 2 -- 9/13/2023

ATTACHMENT 5:

MY JANUARY 16, 2024, RESPONSE [WITH PROOF OF SERVICE]
TO [SACRAMENTO] HEADQUARTERS RE. "LOCAL APPEAL'S"
RESPONSE / DENIAL.

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE**
**CDCR 602 HC (Rev. 10/18)**

DEPARTMENT OF CORRECTIONS AND REHABILITATION

CIM HC Tracking #: 23000710

Page 2 of 2

**SECTION C:** **Health Care Grievance Appeal. If you are dissatisfied with the Institutional Level Grievance Response**, explain the reason below (if more space is needed, use Section C of the CDCR 602 HC A), and submit the entire health care grievance package by mail for Headquarters' (HQ) Level health care grievance appeal review. Mail to: Health Care Correspondence and Appeals Branch, P.O. Box 588500, Elk Grove, CA 95758.

NOTICE: "SOMEBODY" "DREW A "X" ON THE ACTIVE C.D.C.R. H.C. A." I WILL STILL BE UTILIZING THAT DOCUMENT. THE FOLLOWING IS MY RESPONSE TO "THE LOCAL DENIAL..."

CURRENTLY, I HAVE BEEN "CLEAN & SOBER:" 35 YEARS, 1 MONTH, 1 WEEK, AND 3 DAYS (I WOKE UP SOBER IN 'JANUS DETOX. IN SANTA CRUZ,' ON DECEMBER 4, 1988). THE REMAINDER OF PARAGRAPH 1 IS "BASICALLY CORRECT"--I DO NOT WANT OR NEED I.S.U.D.T..

YES!! THE H.C.A.R.N. INFORMED ME OF "THE OTHER TOPICS" COVERED 'OTHER THAN ALCOHOL AND DRUGS.' I "THOROUGHLY EXPLAINED IN DETAIL" EXACTLY WHY I HAD NOTHING IN COMMON WITH "THAT SUBJECT MATTER." FURTHERMORE, I DID INDEED MAKE MULTIPLE REFERENCES TO MY "OVER 3 DECADES OF SOBRIETY. YES!!! I DEFINITELY STATED THAT THE ONLY REASON THAT I AM ATTENDING "THAT GROUP" WAS TO AVOID "A SERIOUS "115."" /// YES!!! THE "H.C.A.R.N." "PASSED THE BUCK" BY STATING THAT MY GRIEVANCE "IS A CUSTODY ISSUE." THAT IS A FLAGRANT LIE. ON 08/30/2023, I RECEIVED A "COUNSELING CHRONO" FOR ORIGINALLY REFUSING TO ATTEND "THAT GROUP." CUSTODY

**Grievant Signature:** | **Date Submitted:**

**SECTION D:** **HEALTH CARE GRIEVANCE APPEAL REVIEW HQ LEVEL: Staff Use Only** Is a CDCR 602 HC A attached? ☒ Yes ☐ No

This grievance has been:

☐ Rejected (See attached letter for instruction): Date: Date:

☐ Withdrawn (see section E) ☒ Accepted

☐ Amendment Date:

Interview Conducted? ☐ Yes ☒ No Date of Interview: Interview Location:

Interviewer Name and Title (print): Signature: Date:

**Disposition:** See attached letter ☐ Intervention ☒ No Intervention

***This decision exhausts your administrative remedies.***

**HQ Use Only:** Date closed and mailed/delivered to grievant: MAR 22 2024

**SECTION E:** **Grievant requests to WITHDRAW health care grievance:** I request that this health care grievance be withdrawn from further review. Reason:

**Grievant Signature:** | **Date Submitted:**

**Staff Name and Title (Print):** | **Signature:** | **Date:**

**STAFF USE ONLY**

Distribution: **Original** - Returned to grievant after completed; **Scanned Copy** - Health Care Appeals and Risk Tracking System 2.0 (Do not place in central file or health record)

*Unauthorized collection, creation, use, disclosure, modification or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.*

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE ATTACHMENT**
**CDCR 602 HC A (10/18)**

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 2 of 2

CIM HC Tracking #: 23000710

**SECTION C:** Continuation of CDCR 602 HC, Health Care Grievance Appeal, Section C only (Dissatisfied with Health Care Grievance Response): I AM USING THIS PAGE BECAUSE "THE PEN "X"" IS IMPROPER.

OFFICER VELASQUEZ AND "GROUP FACILITATOR, HUMPHREY MOORE," BOTH CONCISELY INFORMED ME THAT "I.S.U.D.T. AND ITS SPIN-OFFS" WERE CREATED BY C.D.C.R. MEDICAL PERSONNEL AT "THE MAIN HEADQUARTERS IN 2020." CUSTODY WAS NOT ORIGINALLY FACTORED IN BECAUSE "I.S.U.D.T. AND ITS SPIN-OFFS" WERE VOLUNTARY. BECAUSE "VOLUNTEERS" WERE "NOT ABUNDANT," MEDICAL'S "MAIN HEADQUARTERS" CONVINCED C.D.C.R'S. "HIERARCHY" IN SACRAMENTO TO MAKE ATTENDANCE MANDATORY, STATEWIDE. ON 08/25/2023, AMITY SUPERVISOR: SETTLES AND I CONFERRED. WE DISCUSSED "THE MANDATORY ATTENDANCE REQUIREMENT." MR. SETTLES ALSO INFORMED ME OF "MEDICAL'S "INVOLVEMENT AND INFLUENCE" PERTAINING TO "I.S.U.D.T. AND ITS SPIN-OFFS." "GOING INTO SEPTEMBER, 2023," I CONTINUED TO REFUSE TO ATTEND "THE GROUP." SUBSEQUENTLY, I RECEIVED "AN ADMINISTRATIVE "115" ON 09/13/2023. TO AVOID "ONGOING DISCIPLINARY PROCEDURES," I BEGAN ATTENDING "THE GROUP." ON 09/14/2023, I SUBMITTED A "C.D.C.R. GA-0022 TO C.C.III. STROBELT -- REQUESTING AN INTERVIEW. I WOULD NOT GET A RESPONSE UNTIL 10/19/2023. I HAVE "VERBALLY ASKED" ON DOZENS OF OCCASIONS. ALL EFFORTS WERE EXERCISES IN FUTILITY.

WITHIN THE 09/13/2023, ADMINISTRATIVE "115," OFFICER VELASQUEZ STATED: "PARTICIPANTS WHO ARE MEDICALLY REFERRED AND DETERMINED TO BE AT RISK FOR SUBSTANCE USE DISORDER (SUD) RELATED HARMS WILL BE PLACED INTO THE CBI-INTENSIVE OUTPATIENT OR CBI OUTPATIENT PROGRAM." A SUBSEQUENT "OLSON REVIEW" REVEALED THE MEDICALLY "PRODUCED" FALSE INFORMATION THAT OFFICER VELASQUEZ RELIED UPON. PERMANENTLY REMOVE ME FROM "THAT GROUP," OR "I'LL SEE YOU

**Grievant Signature:** James Haag  **Date Submitted:** JANUARY 16, 2024 //IN COURT."

**SECTION D:** Staff Use Only: Grievants do not write in this area. Grievance Appeal Interview Clarification. Document issue(s) clarified during interview (If necessary at HQ Level).

**Name and Title:** ______ **Signature:** ______ **Date:** ______

**STAFF USE ONLY**

**Distribution: Original** - Returned to grievant after completed, **Scanned Copy** - Health Care Appeals and Risk Tracking System 2.0 (Do not place in central file or health record)

*Unauthorized collection, creation, use, disclosure, modification or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.*

DEPARTMENT OF CORRECTIONS AND REHABILITATION
HEALTH CARE SERVICES DIVISION
IN AND FOR THE STATE OF CALIFORNIA

| | | |
|---|---|---|
| James Bradley Haag, | C.D.C.R. #: | Case #: |
| Appellant. | T-75535 | C.I.M. H.C.-23000710 |

**PROOF OF SERVICE**

**I Hereby Certify** Under Penalty Of Perjury Under C.C.P. §§1086; 1103; 2015.5; And 28 U.S.C. §1746 -- That On January 16, 2024, I Served A Requisite Copy Of:

"RESPONSE TO INSTITUTIONAL DENIAL OF GRIEVANCE PERTAINING TO "FORCED ATTENDANCE" OF "I.S.U.D.T." GROUP AND ENTERING FALSE INFORMATION INTO MY MEDICAL FILE..."

By Placing Said Document Within A Postage-Paid, Secure Vessel -- Addressed To The Party Hereinafter Listed -- And By Submitting Said Vessel To Prison Staff FOR PLACEMENT IN THE UNITED STATES MAIL AT:

[The] California Institution For Men--Facility "B" -- "Sycamore" 201-L -- P.O. Box 3100 -- Chino, California -- 91708-3100.

THE PARTY SERVED IS:

HEALTH CARE CORRESPONDENCE AND APPEALS DEPARTMENT
P.O. BOX 588500
ELK GROVE, CALIFORNIA
95758

---

I Declare Under Penalty Of Perjury Under C.C.P. §§1086; 1103; 2015.5; And 28 U.S.C. §1746 -- That The Foregoing Is True And Correct.

Dated: January 16, 2024

James Haag
(Signature Of Person Completing Service)

ATTACHMENT 5-A:

"MAIN HEADQUARTERS'" RESPONSE

["OF" MARCH 22, 2024]

CALIFORNIA CORRECTIONAL
HEALTH CARE SERVICES

**Headquarters' Level Response**

**Closing Date:** MAR 2 2 2024

**To:** HAAG, JAMES (T75535)
California Institution for Men
P.O. Box 128
Chino, CA 91710

**From:** California Correctional Health Care Services
Health Care Correspondence and Appeals Branch
P.O. Box 588500
Elk Grove, CA 95758

**Tracking #:** CIM HC 23000710

**RULES AND REGULATIONS**

The rules governing these issues are: California Code of Regulations, Title 15; Health Care Department Operations Manual; Mental Health Services Delivery System Program Guide; California Department of Corrections and Rehabilitation Department Operations Manual.

**HEALTH CARE GRIEVANCE APPEAL SUMMARY**

In your CDCR 602 HC, Health Care Grievance, you explained the decision, action, condition, omission, policy, or regulation that has had a material adverse effect upon your health or welfare for which you seek administrative remedy.

| **Issue** | | **Description** |
|---|---|---|
| Issue: | ISUDT (Program Exclusion) | You alleged you are being forced to attend the Integrated Substance Use Disorder Treatment (ISUDT) Program group that you do not need. |
| Issue: | Health Records (Amend Health Records) | You alleged false, negative information was entered into your health record in order to place you in the ISUDT group. |

**HEADQUARTERS' LEVEL DISPOSITION**

☒ No intervention. ☐ Intervention.

**BASIS FOR HEADQUARTERS' LEVEL DISPOSITION**

Your health care grievance was reviewed by the Centralized Screening Team at the institutional level per California Code of Regulations, Title 15, Section 3486.1, and was deemed not to meet the definition of staff misconduct against health care staff.

Note 1: The headquarters' level review is based on records available as of the date the Headquarters' Level Response is signed by the reviewing authority.
Note 2: The closing date reflects the closed, mailed/delivered date of the health care grievance.

Your health care grievance package and health record, and all pertinent departmental policies and procedures were reviewed. These records indicate on August 8, 2023, a Substance Use Disorder National Institute on Drug Abuse Screening was completed by a mental health clinician; documentation shows you refused to participate in the American Society of Addiction Medicine (ASAM) assessment. You were advised that the screening and assessment could result in referral to a Medication Assisted Treatment provider and/or mandatory groups offered by ISUDT. Based on this ASAM identifier change, a referral to the ISUDT group was generated.

While mental health staff completed the ASAM screening, ISUDT group assignments are a custody function. As such, it is recommended you address your concerns with your correctional counselor, other appropriate custody staff, or through the Institutional Classification Committee process.

Your health record is considered legal documentation. As such, all documents entered into your health record are permanent and may not be removed. Per the Health Care Department Operations Manual, Section 2.2.7, Patient Privacy Rights, patients have the right to request that California Correctional Health Care Services amend their Personally Identifiable Information/Protected Health Information in their health record. All requests for amendments shall be made in writing and submitted to Health Information Management staff. California Correctional Health Care Services is not obligated to agree to an amendment and may deny requests or only partially accept amendments. Health Information Management staff shall follow procedures in the Health Care Department Operations Manual, Section 2.3, Health Information Management, related to patients' requests to amend their health record.

You will continue to be monitored with care provided as determined medically or clinically indicated. If you have additional needs, you may access health care services by utilizing the approved processes in accordance with California Correctional Health Care Services policy.

While the health care grievance process is a means of setting forth your health care concerns, it is not a substitute for direct communication about your health with your health care providers. You are encouraged to continue your care with your assigned health care providers and share with them new or additional clinical information about your conditions that you believe may affect your care. However, California law directs your health care providers to offer and provide only the care they determine to be currently medically or clinically necessary for you, in accordance with appropriate policies and procedures. Previous orders from other health care facilities or staff, input from health care consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current health care providers.

Concerns regarding custody actions, decisions, or application of policies or procedures are not health care services issues over which California Correctional Health Care Services has jurisdiction. As such, any concerns related to custody staff or functions will not be addressed in this health care grievance response. This does not preclude the Centralized Screening Team from identifying allegations of staff misconduct against custody staff during the review of this health care grievance and processing such in accordance with California Code of Regulations, Title 15, Section 3486.2.

This decision exhausts your administrative remedies.

al for Digitally signed by HCCAB Date: 2024.03.21 15:48:01 -07'00'

S. Gates, Chief
Health Care Correspondence and Appeals Branch
Policy and Risk Management Services
California Correctional Health Care Services

March 21, 2024
Reviewed and Signed Date

Note 1: The headquarters' level review is based on records available as of the date the Headquarters' Level Response is signed by the reviewing authority.
Note 2: The closing date reflects the closed, mailed/delivered date of the health care grievance.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

**PROOF OF SERVICE**

| | | |
|---|---|---|
| James Bradley Haag, Plaintiff. | C.D.C.R. #: T-75535 | Case #: ______ |

I **Hereby Certify** Under Penalty Of Perjury Under 28 U.S.C. §1746 -- That On June 4, 2024, I Served The Following:

-- ["FORM"] 28 U.S.C. §1343(a) / 42 U.S.C. §1983 - CIVIL RIGHTS COMPLAINT BY A PRISONER;

-- [SEPARATE] MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CIVIL RIGHTS COMPLAINT BY A PRISONER UNDER 42 U.S.C. §1983;

-- [ACCOMPANYING] REQUEST FOR LEAVE OF COURT TO FILE DOCUMENT IN EXCESS OF 25 PAGES;

[AND]

-- ATTACHMENTS THAT ARE EVIDENCE TO -- AND SUPPORT FOR THIS ACTION..........

...By Placing Said Documents Within A Postage-Paid, Secure Vessel -- Addressed To The Party Hereinafter Listed -- And By Submitting Said Vessel To Prison Staff For **Placement In The UNITED STATES MAIL At:**

[The] California Institution For Men -- Facility "B" -- Sycamore West - 201-L[ow] -- P.O. Box 3100 -- Chino, California -- 91708-3100.

**THE PARTY SERVED IS:**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION
501 "I" STREET - #4-200
SACRAMENTO, CALIFORNIA
95814

---

I Declare Under Penalty Of Perjury Under 28 U.S.C. §1746 -- That The Foregoing Is True And Correct.

Dated: June 4, 2024 [By] James Haag
(Signature Of Person Completing Service)

# SEPARATE MEMORANDUM OF POINTS AND AUTHORITIES

James Bradley Haag -- In Propria Persona
California Institution For Men
T-75535 Sycamore West 201-L
P.O. Box 3100
Chino, California
91708-3100

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA [SACRAMENTO DIVISION]

| | |
|---|---|
| JAMES BRADLEY HAAG, PLAINTIFF, V JEFF MACOMBER, SECRETARY -- CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, RON BROOMFIELD, DIRECTOR OF ADULT DIVISION -- CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, JOSEPH POICK, DIRECTOR -- CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES, BRANDON STROBELT, CASE COUNSELOR III -- "DIRECTOR" OF INTEGRATED SUBSTANCE USE DISORDER TREATMENT PROGRAM --- CALIFORNIA INSTITUTION FOR MEN, "NUMEROUS OTHERS," ET. AL., ** DEFENDANTS. | CASE #: ______________ **[SEPARATE] MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CIVIL RIGHTS COMPLAINT BY A PRISONER UNDER 42 U.S.C. §1983** **TABLES: CONTENTS; AUTHORITIES; ATTACHMENTS** ** [FOR DEFENDANT "#'S: 5 - 9'S" NAMES AND EMPLOYMENT, SEE "THE FORM'S" PG.1-A.] |

///

///

///

///

## TABLE OF CONTENTS


| ITEM #: | "ITEM" TITLE | PAGE AND LINE #: |
|---|---|---|
| --- | TABLE OF AUTHORITIES -- FEDERAL ........................... | iv.;v. |
| --- | TABLE OF AUTHORITIES -- STATE ............................ | v. |
| --- | TABLE OF ATTACHMENTS ..................................... | vi. |
| --- | **MEMORANDUM OF POINTS AND AUTHORITIES' CONTENTS ...** | [1] - [50] |
| [A] | JUDICIAL NOTICE RE. FORMATTING ........................... | [1] |
| [B] | INTRODUCTION ............................................. | [2],L.1-17 |
| [C] | OPENING STATEMENT ........................................ | [2],L.18 - [3], L.26½ |
| --- | DECLARATION RE. "EXTENSIVE LONG-TERM SOBRIETY" BY JAMES B HAAG | [4] - [13] |
| [D] | STATEMENT OF FACTS ....................................... | [14] - [24] |
| [i.] | CLAIM I --- [14],L.3 - [24],L.4 .......................... | <<< SEE LEFT |
| (a) | JANUARY 24, 2023, '[C.I.M.] FACILITY "D" TELECONFERENCE WITH [C.C.H.C.S.'] L.C.S.W., ALICE GRUTMAN' ..................... | [14],L.4 - [16] |
| (b) | AUGUST 8, 2023, '[C.I.M.] FACILITY "C" "IN-PERSON" INTERVIEW WITH [C.C.H.C.S.'] L.C.S.W., GRACIELA ROMERO.' ............. | [17] - [19],L.17 |
| (c) | "MISCELLANEOUS" FACTS --- [19],L.18 - [24],L.4 ............. | <<< SEE LEFT |
| [i] | (UNTITLED) RELEVANT ATTACHMENTS IDENTIFIED ........... | [19],L.19 - [20],L.3 |
| [ii] | (UNTITLED) EFFORTS TO BE REMOVED FROM I.S.U.D.T. .......... | [20],L.4-12 |
| [iii] | (UNTITLED) APRIL 8, 2024, TELECONFERENCE WITH G.ROMERO | [20],L.13 - [23],L.9 |
| [iv] | (UNTITLED) APRIL 8, 2024, TELECONFERENCE "RECITAL" ........ | [21] - [22] |
| [v] | (UNTITLED) "REGULAR" MEDICAL REPORTS CONTAINING RELEVANT "ITEMS" CONNECTED TO THIS ACTION ........................ | [23],L.10-16 |
| [vi] | (UNTITLED) FEBRUARY 10, 2023, FACILITY "C" "APPOINTMENT WITH R.N. OUSMAN CEESAY .................................. | [23],L.17 - [24],L.3 |
| --- | CLAIM I'S FACTS ARE CONCLUDED ............................ | [24],L.4 |
| --- | (TITLE) STATEMENT OF FACTS ............................... | [24],L.5 |
| [ii] | CLAIM II ---- [24],L.6-21½ ............................... | <<< SEE LEFT |
| 1) | NOTICE ................................................... | [24],L.7-15 |
| 2) | (UNTITLED) ISSUES THAT CONSTITUTE SLANDER, LIBEL, AND CHARACTER ASSASSINATION .................................. | [24],L.16-21½ |
| 3) | CLAIM II'S FACTS ARE CONCLUDED ........................... | [24],L.23 |
| **[E]** | **ARGUMENT / POINTS & AUTHORITIES** ......................... | **[25] - [49]** |
| 1. | JURISDICTION ............................................. | [25],L.1-24 |
| 2. | "STATE LEVEL" EXHAUSTION ................................. | [25],L.25 - [26],L.4 |

# TABLE OF CONTENTS


| ITEM #: | "ITEM" TITLE | PAGE AND LINE #: |
|---|---|---|
| 3. | CLAIM I DISCUSSION ................................ | [26],L.5 - [34],L.22 |
| [a] | (UNTITLED) ENACTMENT OF MANDATORY ATTENDANCE "RULES" | [26],L.6-12 |
| [b] | (UNTITLED) RIGHT TO REFUSE TREATMENT/TREATMENT DEFINED | [26],L.13 - [27],L.13 |
| [c] | TURNER V SAFELY 'STANDARDS / CRITERIA'............... | [27],L.14 - [30],L.16 |
| [d] | "ADMINISTRATIVE EFFORTS" .......................... | [30],L.17 - [33],L.14 |
| 3. [e] | CLAIM I: CLOSING STATEMENT ........................ | [33],L.15 - [34],L.21 |
| 3. [f] | CLAIM I: ARGUMENT IS CONCLUDED .................... | [34],L.22 |
| 4. | CLAIM II DISCUSSION ............................... | [35],L.1 - [49],L.23 |
| (A) | OPENING STATEMENT ................................. | [35],L.2 - [37],L.11 |
| (B) | THE PREJUDICIAL MEDICAL FILE ENTRIES ............... | [37],L.12 - [45],L.28 |
| --- | (UNTITLED) ATTACHMENT 2'S "OBJECTED TO ENTRIES" .... | [37],L.13-28 |
| [1] | DOCTOR ELMAN'S - "FORMER HEAVY TOBACCO SMOKER" ENTRY | [38],L.1-28 |
| [2] | (GRACIELA ROMERO'S): "HISTORY SUDT 2.0" ENTRY ...... | [39],L.1-18 |
| [3] | (GRACIELA ROMERO'S):"SOCIAL HISTORY" / "TOBACCO" ENTRY | [39],L.19 - [40],L.5 |
| [4] | (GRACIELA ROMERO'S):"SOCIAL HISTORY" / "ALCOHOL" ENTRY | [40],L.6-22 |
| [5] | (GRACIELA ROMERO'S):"SOCIAL HISTORY" / "SUBSTANCE ABUSE" ENTRY ................................ | [40],L.23 - [41],L.4 |
| [6] | (GRACIELA ROMERO'S):"LAST USE: DECEMBER 4, 1988" ENTRY | [41],L.5-28 |
| [7] | (GRACIELA ROMERO'S):"EDUCATION PROVIDED" ENTRY ..... | [42],L.1-16 |
| [8] | (ALICE GRUTMAN'S): "TOBACCO" ENTRY ................ | [42],L.17-24 |
| [9] | (ALICE GRUTMAN'S): "I WENT TO A PROGRAM" ENTRY ..... | [42],L.25 - [43],L.28 |
| [10] | (ALICE GRUTMAN'S): "PROVIDED PSYCHOEDUCATION" ENTRY. | [44],L.1-9 |
| [11] | (OUSMAN CEESAY'S): "SUD PRE-RELEASE SCREENING PLAN" ENTRY ............................................ | [44],L.10 - [45],L.28 |
| (C) | FINAL POINTS AND APPLICABLE AUTHORITIES ............ | [46],L.1 - [47],L.28 |
| (D) | [MY REQUESTED] PUNITIVE DAMAGES AWARD IS JUST AND PROPER ........................................... | [48],L.1-18 |
| 4. (E) | CLAIM II: CLOSING STATEMENT ....................... | [48],L.19 - [49],L.23 |
| 4. (F) | CLAIM II: ARGUMENT IS CONCLUDED ................... | [49],L.24 |
| 5. | DECLARATION OF PLAINTIFF .......................... | [50],L.1-16 |
| --- | PROOF OF SERVICE .................................. | BACK PAGE |

## TABLE OF AUTHORITIES -- FEDERAL

### UNITED STATES SUPREME COURT CASES


| CASE | PAGE[S] USED |
|---|---|
| Baker v McCollan, 443 U.S. 137 (1979) .......................... | [25],**[32]** * |
| District Of Columbia v Carter, 409 U.S. 418 (1973) ............ | [25],[32] * |
| Cruzan By Cruzan v Director, Missouri Department Of Health, 497 U.S. 261 (1990) ............................................ | [26] |
| Damico v California, 389 U.S. 416 (1967) ...................... | [25],[32] * |
| Greenwood v Peacock, 384 U.S. 808 (1966) ...................... | [25],[32] * |
| Ashcroft v Iqbal, 556 U.S. 662 (2009) .......................... | [46] |
| Lake County Estates Incorporated v Tahoe Regional Planning Agency, 440 U.S. 391 (1979) .................................. | [25],[32] * |
| Mitchum v Foster, 407 U.S. 225 (1972) .......................... | [25],[32] * |
| Monroe v Pape, 365 U.S. 167 (1961) ............................. | [25],[32] * |
| O'Lone v Estate Of Shabazz, 482 U.S. 342 (1987) ............... | [27] |
| Papasin v Alain, 478 U.S. 265 (1986) ........................... | [46] |
| Richardson v McKnight, 521 U.S. 399 (1997) .................... | [25],[32] * |
| Scheuer v Rhodes, 416 U.S. 232 (1974) .......................... | [25],[32] * |
| Smith v Wade, 461 U.S. 30 (1983) ............................... | [48] |
| Turner v Safely, 482 U.S. 78 (1987) ............................ | [27],[28],[29],[30] |
| Bell Atlantic Corporation v Twombly, 550 U.S. 544 (2007) ...... | [46] |
| Vitek v Jones, 445 U.S. 180 (1980) ............................. | [27] |
| Washington v Harper, 497 U.S. 210 (1989) ....................... | [27] |
| Wolff v McDonnell, 418 U.S. 539 (1974) ......................... | [27] |
| * PAGE [32] "REFERENCES BACK" TO THE CASES USED ON PAGE [25] -- | ///// |


---

### "OTHER" FEDERAL COURT CASES


| | |
|---|---|
| Gregory v United States, U.S. District - Lexis 225750 (2021) .. | [46] |
| Mitchell v Plasma Care Incorporated, U.S. District Lexis 59160 (2011) ........................................................ | [46] |
| Taylor v Crone, U.S. District Lexis 167944 (2023) ............. | [46] |


---

### UNITED STATES CONSTITUTION


| | |
|---|---|
| EIGHTH AMENDMENT ............................................ | [34],[49] / "FORM" - PG.3-C. |
| FOURTEENTH AMENDMENT ........................................ | [25],[26],[32]*,[33]* "FORM:" PGS.3-B.,3-C., 6 |
| * PAGES [32]/[33] ARE "REFERENCES BACK" TO CITES ON PG.[25], [26] ---------------------------------------------------- | ///// |

## TABLE OF AUTHORITIES -- FEDERAL

### UNITED STATES CODE


| 28 UNITED STATES CODE | PAGE[S] USED |
|---|---|
| SECTION 1343(a) ........ | "FORM" - PG.1 |
| SECTION 1746 ........ | [13],[50], / "FORM" - PG.6-A., "ALL PROOFS OF SERVICE" |
| SECTION 2679 ........ | [46] |
| SECTION 2680(h) ........ | [46] |
| SECTION 4101 ........ | [46] |
| 42 UNITED STATES CODE | ///// |
| SECTION 1981 ........ | [25],[32] * |
| SECTION 1983 ........ | [25],[32] * / "FORM" - PG.1 |
| SECTION 1996-b. ........ | [25],[32] * |
| SECTION 2000-h. ........ | [25],[32] * |
| * PAGE [32] "REFERENCES BACK" TO "THE CODES" USED ON PAGE [25]. | ///// |


### "MISCELLANEOUS"


| | |
|---|---|
| PROSSER AND KEETON ON THE LAW OF TORTS: §9 @ 39-42 (5th. Ed. 1984) | [26] |
| WILLIAM C. BURTON LEGAL THESAURUS ........ | [27],[46] |
| MERRIAM WEBSTER DICTIONARY ........ | [27] |
| FEDERAL RULES OF CIVIL PROCEDURE 8(a)(2) ........ | [46] |


## TABLE OF AUTHORITIES -- STATE


| | |
|---|---|
| CALIFORNIA CODE OF CIVIL PROCEDURE | ///// |
| SECTION 1086 ........ | [13] |
| SECTION 1103 ........ | [13] |
| SECTION 2015.5 ........ | [13] |
| CALIFORNIA PENAL CODE | ///// |
| SECTIONS: 2600; 2602; 3200; 5054; 5058; 7570 ........ | [29] |
| CALIFORNIA PROBATE CODE | ///// |
| SECTIONS: 4600; 4781.2 ........ | [29] |
| Thor v Superior Court (Andrews), 21 Cal. Rptr. 2d 357 (1993) ... | [29] |
| CALIFORNIA CODE OF REGULATIONS: TITLE 15 (2023) | ///// |
| SECTION: 3999.210 ........ | [29] |
| SECTION: 3486-(a)(1) & (c)(1) ........ | [31] |

## TABLE OF ATTACHMENTS


| TITLE OF ATTACHMENT: | PAGE[S] USED |
|---|---|
| 1: INSTITUTIONAL LEVEL GRIEVANCE ................................ [19];[22]("--"#5);[25];[30]; / "FORM" - PG.3-B. | SEE LEFT |
| 1-A: "INSTITUTIONAL LEVEL RESPONSE" .............................. [19];[22]("--"#5):[25];[30]; / "FORM" - PG.3-B. | SEE LEFT |
| 2: "PRINT-OUTS" OF MEDICAL DOCUMENTS CONTAINING: FALSE STATEMENTS; IMPROPERLY / INCORRECTLY ALTERED "ITEMS;" "PARTIAL ONLY ENTRIES" DUE TO THE OMISSION OF RELEVANT, KNOWN, INFORMATION; EXTREMELY PREJUDICIAL "COMMENTS AND SPEECHES" THAT WERE UNNECESSARY. [3];[5];[6];[7];[12];[13]:[14];[15];[16];[17];[18];[19]; [21]("--"#2);[21]("--"#3);[22]("--"#2);[23];[24];[31];[32]; [35];[36];[37];[38];[39];[40];[41];[42];[43];[44];[45];[47]; [49]; / "FORM" - PGS.3-B.;4. | /// /// /// SEE LEFT |
| 3: REQUESTS FOR INTERVIEW WITH CASE COUNSELOR III, STROBELT ..... | [19] |
| 4: "COUNSELING CHRONO AND ADMINISTRATIVE "115"" ................. [19];[21]("--"#4 - "CARRIES TO THE TOP OF"[22]);[22]("--"#1) | SEE LEFT |
| 5: MY JANUARY 16, 2024, RESPONSE [WITH PROOF OF SERVICE] TO TO [SACRAMENTO] HEADQUARTERS RE. "LOCAL APPEAL'S" RESPONSE / DENIAL ........................................................ [20];[22]("--"#5);[25];[26];[30]; / "FORM" - PG.3-B. | SEE LEFT |
| 5-A: "MAIN HEADQUARTERS'" RESPONSE ["OF" MARCH 22, 2024] ........ [20];[22]("--"#5);[26];[30]; / "FORM" - PG.3-B. | SEE LEFT |


---

"("--"#)" : "--" PRECEDES PARAGRAPHS WITHIN THE MEMORANDUM'S PAGES [21] AND [22]. E.G.: [21]("--"#2) MEANS PAGE [21], PARAGRAPH #2.

James Bradley Haag -- In Propria Persona
California Institution For Men
T-75535 Sycamore West 201-L
P.O. Box 3100
Chino, California
91708-3100

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA [SACRAMENTO DIVISION]

| | |
|---|---|
| JAMES BRADLEY HAAG, PLAINTIFF, V | CASE #: ______ |
| JEFF MACOMBER, SECRETARY -- CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, | [SEPARATE] MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CIVIL RIGHTS COMPLAINT BY A PRISONER UNDER 42 U.S.C. §1983 |
| RON BROOMFIELD, DIRECTOR OF ADULT DIVISION -- CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, | FACTS / ARGUMENT / POINTS AND AUTHORITIES |
| JOSEPH POICK, DIRECTOR -- CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES, | JUDICIAL NOTICE RE. FORMATTING |
| BRANDON STROBELT, CASE COUNSELOR III -- "DIRECTOR" OF INTEGRATED SUBSTANCE USE DISORDER TREATMENT PROGRAM --- CALIFORNIA INSTITUTION FOR MEN, | |
| "NUMEROUS OTHERS," ET. AL., ** DEFENDANTS. | ** [FOR DEFENDANT "#'S: 5 - 9'S" NAMES AND EMPLOYMENT, SEE "THE FORM'S" PG.1-A.]. |

[A] **JUDICIAL NOTICE RE. FORMATTING**

[1] THIS DOCUMENT WILL BE "MOSTLY TYPED" IN CAPS -- #12 FONT.

[2] I WILL BE DIRECTLY ADDRESSING THIS HONORABLE COURT. I WILL NOT BE REFERRING TO MYSELF "IN ABSTRACT, THIRD PARTY VERBIAGE" SUCH AS "PLAINTIFF," ETCETERA.

# MEMORANDUM OF POINTS AND AUTHORITIES

## [B] INTRODUCTION

THIS MEMORANDUM OF POINTS AND AUTHORITIES (HEREAFTER: "MEM. OF P'S & A'S" OR "MEM.") IS BEING FORMATTED TO:

[A] "FULLY CLARIFY FACTS" THAT WERE "SUMMARILY MENTIONED WITHIN "THE FORM;""

[B] PROVIDE ADDITIONAL FACTS THAT ARE ESSENTIAL AND NECESSARY TOWARD SUCCESSFULLY PROSECUTING THIS ACTION;

[C] IDENTIFY AND INTRODUCE **EVIDENCE** THAT SUBSTANTIATES MY CLAIMS -- ESPECIALLY MY CLAIMS "REVOLVING AROUND MEDICAL RECORDS" THAT HAVE BEEN FALSIFIED, IMPROPERLY / INCORRECTLY ALTERED, HAD IMPORTANT INFORMATION OMITTED / UNENTERED, [AND/OR] HAD EXTREMELY PREJUDICIAL, UNNECESSARY STATEMENTS ENTERED. SUCH "ENTRIES" HAVE -- OR "CARRY THE POTENTIAL TO FURTHER HAVE" HARM TO ME "ON SEVERAL FRONTS." FURTHERMORE, "SUCH ENTRIES" CONSTITUTE: SLANDER; LIBEL; AND CHARACTER ASSASSINATION;

[D] ENGAGE IN NECESSARY "DISCUSSION AND ARGUMENT;" [AND],

[E] CITE 'CONSTITUTIONAL AUTHORITIES' AND "OTHER APPLICABLE LAW" THAT APPLIES TO THIS ACTION.

## [C] OPENING STATEMENT

"THIS ENTIRE ACTION" 'REVOLVES AROUND MY BEING FORCED TO ATTEND "SUBSTANCE [AB]USE CLASSES" WHEN I DO NOT HAVE **ANY** "SUBSTANCE ISSUES, WHATSOEVER" [EMPHASIS ADDED]. I.S.U.D.T. AND ITS "OFFSHOOT GROUPS" (DIVISIONAL REHABILITATIVE PROGRAMMING AND COGNITIVE BEHAVIORAL INTERVENTION) ARE "SELF-HELP GROUPS" THAT WERE "LAUNCHED" BY C.C.H.C.S. ON JANUARY 21, 2020 -- WHICH AT FIRST WERE VOLUNTARY. "WHEN SCADS OF VOLUNTEERS" DIDN'T MATERIALIZE, C.C.H.C.S. "CONVINCED" THE SECRETARY OF C.D.C.R. AND ASSOCIATED STAFF -- TO MAKE "THE I.S.U.D.T. PROGRAM" MANDATORY FOR ALL INMATES, STATEWIDE. THAT IS UNJUST -- AS WELL AS UNCONSTITUTIONAL AND ILLEGAL. SINCE THIS ACTION IS ABOUT "LIVING SOBER," I AM "OPENING THIS MEM." WITH: **[MY] DECLARATION RE. EXTENSIVE LONG-TERM SOBRIETY.**

I 'COMPOSED MY "DECLARATION" IN MARCH/APRIL, 2024.'

DUE TO "REGULAR, NON-RECOGNITION" OF MY 3½+ DECADES OF PERFECT SOBRIETY -- AS WELL AS 'OVER 33 YEARS AND 6 MONTHS BEING TOBACCO FREE,' "I FELT A NEED" TO DOCUMENT "IN DETAIL:" MY POSITIVE ACCOMPLISHMENTS; MY **ACTUAL** PAST DRUGS / TOBACCO / ALCOHOL "HISTORY; AND A PERSONAL ACCOUNT OF THE HARASSMENT, BULLYING, INTIMIDATION, AND MENTAL DURESS THAT "I.S.U.D.T. CONNECTED PERSONNEL" HAVE SUBJECTED ME TO FOR OVER A YEAR [EMPHASIS ADDED]. 1

WITHIN MY "DECLARATION" ARE 'DETAILED REFERENCES' TO MEDICAL RECORDS THAT HAVE BEEN: FALSIFIED; IMPROPERLY / INCORRECTLY ALTERED; "PARTIAL" DUE TO THE OMISSION OF RELEVANT, ESSENTIAL, KNOWN, INFORMATION; EXTREMELY PREJUDICIAL DUE TO ENTRIES THAT WERE BIASED AGAINST ME, IN TOTAL DISREGARD OF ALL "LONG-TERM" SOBRIETY AND "LONG-TERM" "FREEDOM FROM TOBACCO" THAT I HAD "PROVIDED IN DETAIL," WHICH WERE TOTALLY UNNECESSARY.

'AS I PROCEED WITH THIS MEM. OF P'S & A'S,' I WILL BE REFERRING TO SUCH "DECLARATION" DISCUSSIONS BY PAGE ("PG.") NUMBER AND LINE ("L.") NUMBER. 2

---

**Fn.: 1** I "requested an "OLSON REVIEW" of my MEDICAL FILE -- "covering the period of time" spanning 'January through August, 2023.'" Such is "the time frame" 'covering I.S.U.D.T. "contacts" and related events.' Twenty Eight (28) pages were "printed out" on 09/21/2023, which were subsequently issued to me "the following week." EVERYTHING pertaining to MEDICAL / MENTAL HEALTH "ENCOUNTERS" within "that 8-month time frame" are contained within those Documents. ANY PAGE THAT IS NOT SOMEHOW RELEVANT TO THIS ACTION IS NOT BEING SUBMITTED AT THIS TIME. ADDITIONALLY, PLEASE NOTE THAT I HAVE "NUMBERED THE AFFECTED PAGES ON THE BOTTOM LEFT CORNER, "BY HAND," ENCIRCLED. **THOSE** ARE THE PAGE NUMBERS THAT I WILL BE CITING "WHEN DISCUSSING "EVENTS."" Some of those "Reports" are "multi-page" Documents. On the "BOTTOM RIGHT AREA" of such Documents, I have entered the "Report's page number and the number of pages of said Report" (E.G."1. (of 8.") -- "followed by THE DATE THAT THE REPORT WAS COMPOSED" (E.G. "8/8/2023"). When I drafted my **"DECLARATION,"** I cited Report page numbers and "publication dates," NOT 'the encircled page numbers.'

**Fn.: 2** I "had numbered" my **"DECLARATION'S"** pages -- "bottom, centered" -- when I originally typed it in March / April, 2024. My DECLARATION is not exclusive to THIS ACTION -- I need it for other, "independent uses." Accordingly, I "am not doing away with the original page numeration." HOWEVER, FOR THE SAKE OF UNIFORMITY, I WILL BE NUMBERING ALL PAGES COMPRISING THIS MEM. OF P'S & A'S IN BRACKETS ([ ]) -- E.G. ([1]).

///

///

-- **DECLARATION RE. "EXTENSIVE LONG-TERM SOBRIETY" BY JAMES B. HAAG**

**ON DECEMBER 3, 1988, AT 6:45 P.M.,** I CHECKED MYSELF INTO JANUS DETOX[IFICATION] [CENTER] IN SANTA CRUZ, CALIFORNIA. I WAS EXTREMELY DRUNK. WITHIN A TWELVE (12) HOUR AND FORTY-FIVE (45) MINUTE 'PERIOD OF TIME (6:00 A.M. - 6:45 P.M.), I HAD CONSUMED FORTY-SEVEN (47) BEERS.

I AWOKE SOBER **ON DECEMBER 4, 1988**, IN JANUS DETOX. I'M STARTING WORK ON THIS "DECLARATION" **ON MARCH 21, 2024.** ACCORDINGLY, I HAVE: **THIRTY-FIVE (35) YEARS; THREE (3) MONTHS; TWO (2) WEEKS; [AND] THREE (3) DAYS OF CONTINUOUS SOBRIETY.** I HAVE **NEVER** "SLIPPED." MY 3½ "DECADES +" OF SOBRIETY **ARE PERFECT** IN EVERY ASPECT.

I AM CURRENTLY INCARCERATED WITHIN [THE] CALIFORNIA DEPARTMENT [OF] CORRECTIONS [AND] REHABILITATION'S CALIFORNIA INSTITUTION [FOR] MEN -- LOCATED IN CHINO, CALIFORNIA. BEGINNING 'IN JANUARY OF 2023,' PERSONNEL "CONNECTED TO C.D.C.R'S. MEDICAL "SERVICES"" BEGAN HARASSING ME -- EXERTING EFFORTS TO "SIGN ME UP" FOR INTEGRATED SUBSTANCE USE DISORDER TREATMENT CLASSES. FIRST, I WAS SUMMONED TO C.I.M'S. FACILITY "D" (T[REATMENT] & R[ELEASE]) CLINIC 'IN JANUARY OF 2023' FOR AN ELECTRONIC INTERVIEW.("AT THAT TIME," I HAD "OVER 34 YEARS AND 1 MONTH, SOBER"). I TOLD "THE INTERVIEWER" THAT I HAVE **GOD-GIVEN STRENGTH** RE. MAINTAINING MY SOBRIETY -- AND THAT I HAD NO INTEREST WHATSOEVER "IN I.S.U.D.T..." FOLLOWING THE INTERVIEW'S CONCLUSION, I SIGNED A **REFUSAL.** APPROXIMATELY "4½ TO 5 MONTHS LATER," I WAS CALLED TO C.I.M'S. FACILITY "C" CLINIC -- WHERE I WAS INTERVIEWED BY A NURSE -- AGAIN EXERTING EFFORTS TO "SIGN ME UP FOR I.S.U.D.T." -- WHICH I AGAIN REFUSED. "IN AUGUST OF 2023," I WAS FORCED TO ATTEND I.S.U.D.T. CLASSES ON MONDAY, WEDNESDAY, AND FRIDAY MORNINGS FROM 8:15 A.M. - 10:15 A.M.. "AT FIRST," I REFUSED. SUBSEQUENTLY, I RECEIVED TWO (2) DISCIPLINARY "WRITE-UPS" -- "A 128 INFORMATIONAL / COUNSELING CHRONO" -- FOLLOWED BY "AN ADMINISTRATIVE 115." THUS, TO AVOID ADDITIONAL, "MORE SERIOUS WRITE-UPS," I "SAT IN THE CLASSES FOR THOSE 3 DAYS A WEEK" UNTIL I WAS TRANSFERRED OUT OF FACILITY "C" TO FACILITY "B" ON JANUARY 9, 2024. ON MARCH 11, 2024, I WAS AGAIN TOLD TO ATTEND I.S.U.D.T. CLASSES ON MONDAY, WEDNESDAY, AND FRIDAY NIGHTS FROM 5:30 P.M. - 7:30 P.M.. ON MARCH 11, 2024, I WENT -- "CHECKED IN" -- INFORMED "THEM" OF MY LONG-TERM SOBRIETY "IN DETAIL" -- THAT I DO NOT HAVE ANY "SUBSTANCE PROBLEMS" -- AND LEFT.

ON WEDNESDAY, I WAS AGAIN SUMMONED TO I.S.U.D.T.. A "SUPERVISOR" INFORMED ME THAT -- IF I DO NOT ATTEND THE CLASSES, I'LL BE SUBJECTED "TO ONGOING, PROGRESSIVE, C.D.C.R. DISCIPLINARY PROCEEDINGS BECAUSE "SACRAMENTO HAS ORDERED I.S.U.D.T. TO BE MANDATORY FOR ALL INMATES, STATEWIDE.""

FORTHCOMING IS A "DETAILED ACCOUNT" OF MY "ALCOHOL / DRUG HISTORY." HOWEVER,

I WANT A RECORD OF THE [FALSE] "JUSTIFIERS" THAT WERE 'MADE BY MEDICAL PERSONNEL CONNECTED TO I.S.U.D.T. IN ORDER TO FORCE ME INTO "THAT GROUP:""

ON AUGUST 8, 2023, I HAD AN EXTENSIVE CONVERSATION WITH: 'L.C.S.W.' GRACIELA ROMERO. ON PAGE 2 OF HER REPORT UNDER THE TOPIC - "SOCIAL HISTORY," SHE STATES (PARTIAL QUOTE): "FORMER, CIGARETTES, USE TYPE: PACKS. 2 PER DAY. 15 YEAR(S). TOTAL PACK YEARS: 30. STARTED AGE 9 YEARS. STOPPED AGE 39 YEARS. **1990 LAST USE** QUIT IN 1990 AT AGE 39 YO." (END QUOTE). "15 YEARS" IS A LIE. I NEVER TOLD HER THAT. I HAD "GOTTEN UP" TO 2 PACKS OF CIGARETTES PER DAY BETWEEN 1984 INTO 1989. **THAT** IS A TOTAL OF 6 YEARS -- NOT 15 [YEARS]. I TOLD HER 'THOSE YEARS.' "IN 1990," I BEGAN A "SELF-IMPLEMENTED CUTBACK PROGRAM BY TIMING HOW LONG I WOULD WAIT FROM WHEN I PUT ONE OUT UNTIL I "LIT THE NEXT ONE."" WHEN "THAT WAIT TIME" BECAME EASY, I ADDED MORE "WAIT TIME." AFTER APPROXIMATELY 3 MONTHS, "2 PACKS A DAY HAD DWINDLED TO 5 CIGARETTES -- ONE WHEN I WOKE UP / ONE AFTER BREAKFAST / ONE AFTER LUNCH / ONE AFTER DINNER / AND ONE BEFORE GOING TO BED. **ON JUNE 1, 1990,** I DECIDED TO ATTEMPT TO GO THE ENTIRE DAY WITHOUT A CIGARETTE. **I SUCCEEDED.** I HAVE **NEVER AGAIN** SMOKED TOBACCO [OR ANYTHING ELSE]. **THAT** IS WHAT I TOLD MS. ROMERO.

"SOCIAL HISTORY" "ALCOHOL:" (PARTIAL QUOTE) "FORMER, BEER, DAILY. WITHDRAWAL SYMPTOMS PRESENT YES" (END QUOTE). THIS IS PREPOSTEROUS!!! I ADMIT THAT FROM DECEMBER 4 - 9, 1988, WHILE IN JANUS DETOX, I HAD SEVERE DELIRIUM TREMENS. ON DECEMBER 9, 1988, THEY STOPPED -- "THE SHAKES WENT AWAY." THOSE DELIRIUM TREMENS WERE THE ONLY "WITHDRAWAL SYMPTOMS" THAT **I EVER** UNDERWENT. I HAVE NEVER HAD "CRAVINGS" -- I HAVE NEVER HAD "TEMPTATIONS" -- I HAVE NEVER HAD "SO MUCH AS A PASSING THOUGHT TO TAKE SO MUCH AS A SIP OF ANY ALCOHOLIC BEVERAGE." AS A MATTER OF FACT, I HAVE GROWN TO **HATE** THE VERY EXISTENCE OF ALCOHOLIC BEVERAGES. **GOD PLACED ME IN JANUS DETOX -- GOD BLESSED ME WITH THE STRENGTH TO MAINTAIN MY SOBRIETY -- AND GOD RELIEVED ME FROM THE DELIRIUM TREMENS 'IN JANUS, IN 1988.' MY FAITH IS 100% ABSOLUTE.** I ASK: JUST WHAT "WITHDRAWALS" DID MS. ROMERO WITNESS? THAT COMMENT IS MERITLESS, DEGRADING, AND EXTREMELY PREJUDICIAL. /// (PARTIAL QUOTE) "DUONG, HAN P&S. HAD BEEN DRINKING 23 YEARS. STOPPED ON 12/4/1998" (END QUOTE). "STOPPED ON 12/4/1998" IS A LIE. **I "CHECKED INTO" JANUS DETOX ON DECEMBER 3, 1988, AT 6:45 P.M.** HAN DUONG LIED AND GRACIELA ROMERO CONTINUED THAT LIE BY FAILING TO REPORT THE TRUE AND CORRECT INFORMATION. MS. ROMERO KNEW BETTER.

ON PAGE 6 OF HER REPORT WITHIN THE "COMMENTS PORTION," MS. ROMERO STATES: (PARTIAL QUOTE) "THE FOLLOWING INFORMATION WAS OBTAINED DURING TODAY'S SCREENING PER PATIENT'S SELF REPORT. DRUG OF CHOICE: MARIJUANA CIGARETTES. LAST USE:

DECEMBER 4, 1988." (END QUOTE). ONCE AGAIN, MS. ROMERO HAS 'MADE A PERFIDIOUS STATEMENT...' **DECEMBER 4, 1988, IS THE DAY THAT I WOKE UP SOBER IN JANUS DETOX.** YES! I TOLD HER THAT "I HAD SMOKED A JOINT IN 1988." HOWEVER, I FURTHER TOLD HER THAT "I SMOKED THAT JOINT **IN EARLY APRIL OF 1988**" -- AND THAT -- "FROM THAT POINT" UNTIL I ENTERED JANUS AT **6:45 P.M. ON DECEMBER 3, 1988**, 'I EXCLUSIVELY DRANK BEER.' MS. ROMERO'S "ENTRY" IS NOT ONLY PERFIDIOUS -- ITS PREPOSTEROUS.

SEE PAGE 2,L[INES] 3-16, SUPRA -- ADDRESSING MY FORMER CIGARETTE "CONSUMPTION." MULTIPLE "MENTIONS" ARE MADE OF SUCH -- (QUOTE) "NAME OF PROBLEM: FORMER HEAVY TOBACCO SMOKER." (END QUOTE). DOCTOR ARNOLFO ELMAN ORIGINALLY ENTERED "THAT STATEMENT" FOLLOWING "A ROUTINE MEDICAL APPOINTMENT." YES! HE ASKED ME "IF I EVER SMOKED -- AND IF SO -- HOW MUCH, AND HOW LONG." I TOLD HIM YES. I THEN TOLD HIM **EVERYTHING** THAT I PUT FORTH ON PG.2,L.6-16, SUPRA. NONE OF THAT INFORMATION WAS **EVER** ENTERED INTO "MY FILE." DOCTOR ELMAN'S "ENTRY" WAS QUOTED BY MARIA FAUSTINO WITHIN PG.3 OF A 9 PAGE REPORT -- 'AUTHORED BY HER ON JUNE 22, 2023;' GRACIELA ROMERO WITHIN PG.3 OF HER 7 PAGE REPORT -- 'AUTHORED BY HER ON AUGUST 8, 2023;' AND, KIMBERLY GARCIA WITHIN PG.2 OF HER 5 PAGE REPORT -- 'AUTHORED BY HER ON AUGUST 25, 2023.' "6/22/2023, 8/8/2023, [AND] 8/25/2023 HAVE "2 THINGS" IN COMMON: **[1] ALL ARE BEYOND JUNE 1, 1990 -- "MARKING" OVER THIRTY THREE YEARS OF MY BEING TOBACCO FREE**; [AND] **[2]** I HAD HAD "INTERVIEWS" 'WITH ALL 3 OF THOSE ABOVE-NAMED EMPLOYEES' IN WHICH I PROVIDED SUCH INFORMATION TO THEM. "ANYTHING POSITIVE" WAS OMITTED.

ON PG.1 OF HER 8/8/2023, REPORT, GRACIELA ROMERO STATES: (QUOTE) "THIS PATIENT DOES NOT HAVE ANY CURRENT ADDICTION MEDICINE ORDERS." (END QUOTE). I'M NOT "ADDICTED" **TO ANYTHING** -- MY "FINAL ADDICTION" WAS BEER -- NOTHING ELSE. **THANKS BEING TO GOD**, I HAVE MAINTAINED PERFECT SOBRIETY "FOR OVER 3½ DECADES." I COME NOWHERE CLOSE TO "NEEDING ANY MEDICINES."

ON PG.2 OF HER 8/8/2023, REPORT, GRACIELA ROMERO STATES: (QUOTE) "SUBSTANCE ABUSE: FORMER, MARIJUANA." (END QUOTE). SEE PG.2,L.34 - PG.3,L.6 (ABOVE), SUPRA -- DISCUSSING PAST, "SPORADIC," MARIJUANA USE. [CURRENTLY, I HAVE BEEN "MARIJUANA FREE:" **35 YEARS, 11 MONTHS, AND 10 DAYS**]. AS OF MS. ROMERO'S DRAFTING OF HER 8/8/2023, "REPORT," I HAD BEEN "MARIJUANA FREE" FOR 35 YEARS AND APPROXIMATELY 4 MONTHS. MS. ROMERO KNEW SUCH -- YET OMITTED SUCH FROM HER "REPORT."

ON JANUARY 24, 2023, I WAS TRANSPORTED TO C.I.M'S. FACILITY "D'S" T[REATMENT] & R[ELEASE] [CLINIC] FOR AN ELECTRONIC INTERVIEW WITH L.C.S.W.: ALICE GRUTMAN -- ATTEMPTING TO CONVINCE ME TO "VOLUNTARILY SIGN UP" FOR I.S.U.D.T. CLASSES. "WHEN ALL WAS SAID AND DONE," THE "ELECTRONIC INTERVIEW ENDED," AND I SIGNED A REFUSAL.

SUBSEQUENTLY, MS. GRUTMAN DRAFTED A 4-PAGE REPORT PERTAINING TO THAT 1/24/2023, "ELECTRONIC INTERVIEW." SEE PG.4 OF HER 1/24/2023, "REPORT:" (PARTIAL QUOTE) -- "STATING "I WENT TO A PROGRAM IN 1998 DRUNK AS 5 MEN AND LEFT SOBER AS CAN BE." (END QUOTE). "THAT PRESENTATION" IS PERFIDIOUS IN 3 RESPECTS: [1] "1998" IS FALSE. I **NEVER** SAID "THAT YEAR;" [2] I WOULD NEVER -- UNDER ANY CIRCUMSTANCE -- REFER TO MYSELF "AS A MAN" (I AM TRANSGENDER); [3] I **NEVER** SAID -- "AND LEFT SOBER AS CAN BE." I STATED THE FOLLOWING TO MS. GRUTMAN:

"ON THE EVENING OF DECEMBER 3, **1988**, AT 6:45 P.M., I STAGGERED INTO JANUS DETOX IN SANTA CRUZ -- "DRUNK ENOUGH FOR 5 PEOPLE."" MS. GRUTMAN'S "ACCOUNT" IS PERFIDIOUS.

FURTHERMORE, I TOLD MS. GRUTMAN THAT I REMAINED AT JANUS FOR ONE (1) WEEK -- WAS DISCHARGED -- LEFT "FULLY SOBER" -- AND ALMOST IMMEDIATELY LOCATED AND BEGAN ATTENDING ALCOHOLICS ANONYMOUS MEETINGS AT THE SANTA CRUZ FELLOWSHIP. "HER VERSION" IS TOTALLY FALSE.

AT THE ONSET "OF THE INTERVIEW," I CLEARLY IDENTIFIED MYSELF AS BEING A TRANSGENDER PERSON. MY PANTS, SHIRT, AND SHOES WERE ALL "FEMALE ATTIRE." MS. GRUTMAN SAW SUCH. WHY WOULD I "CALL MYSELF "A MAN?"" MS. GRUTMAN LIED -- PURE AND SIMPLE.

MS. GRUTMAN WAS CORRECT "PERTAINING TO MY DISPLEASURE ABOUT BEING INTERVIEWED RE. SUBSTANCE USE DISORDER[S]." I WAS EXTREMELY IRRITATED, AND I FULLY EXPRESSED MY IRRITATION. I "MADE IT CRYSTAL CLEAR" THAT I DO NOT HAVE **ANY** "SUBSTANCE PROBLEMS" OF ANY TYPE, WHATSOEVER, AND THAT I WAS NOT INTERESTED IN --- NOR WANTED ANYTHING TO DO WITH "I.S.U.D.T.."

I HAVE ADDRESSED FALSE INFORMATION THAT HAS BEEN PUBLISHED ABOUT ME. WHEN IT COMES TO "THOSE REPORTS," THERE 'ARE STILL A FEW MATTERS THAT NEED TO BE ADDRESSED.' HOWEVER, "AT THIS TIME," I AM PROVIDING MY "SUBSTANCE HISTORY."

## MY "SUBSTANCE HISTORY"

[THIS "SUBSTANCE HISTORY" **IS NOT** GOING TO DETAIL REASONS FOR WHAT I USED -- ONLY WHAT I DID -- OR DID NOT USE -- WHEN I STARTED (THE YEAR) -- AND WHEN I STOPPED].

-- SMOKED MY FIRST CIGARETTE "IN 1960." [I WAS 9 YEARS OLD].
-- "GOT HIGH" FOR THE FIRST TIME "IN 1960" [TOOK 2 OF MY MOM'S PILLS THAT WERE IN THE MEDICINE CABINET. THEY WERE "LIME GREEN/DARK GREEN CAPSULES -- WHICH WERE TRANQUILIZER/MUSCLE RELAXER "COMBOS." [I WAS 9 YEARS OLD].
-- SMOKED MARIJUANA FOR THE FIRST TIME "IN 1960." [I WAS 9 YEARS OLD]. ("THE PILL HIGH" WAS FIRST. "FIRST MARIJUANA" WAS APPROXIMATELY 3 MONTHS LATER).

-- I ONLY TOOK MY MOM'S TRANQUILIZER/MUSCLE RELAXERS A TOTAL OF 5 TIMES. [FIRST OF ALL, THEY MADE ME SLEEPY. SECONDLY, MY MOM'S DOCTOR DISCONTINUED THE PRESCRIPTION "IN LATE SUMMER OF 1960"].

-- FROM "SUMMER OF 1960" THROUGH "EARLY SUMMER OF 1965," I SMOKED CIGARETTES AT LEAST "3 DAYS A WEEK" -- AT LEAST "2 CIGARETTES PER DAY. ALSO, I WOULD "GET HIGH ON MARIJUANA" AT LEAST 3 TIMES PER MONTH "DURING THOSE YEARS" [WHICH SPAN AGES '9 TO 14'].

-- "SHORTLY AFTER THE START OF SUMMER VACATION IN 1965," 'I GOT DRUNK ON "CHEAP WINE" FOR THE FIRST USE OF ALCOHOL.' [I WAS 14]. **<u>THAT</u>** WOULD BE THE "FIRST AND LAST TIME" THAT I DRANK ANY WINE. "THAT NIGHT," I WAS PHYSICALLY SICK. I ALSO "GOT A HANGOVER THAT TOOK 3 DAYS TO RECOVER FROM." HOWEVER, I WAS "STILL OPENMINDED" RE. TRYING "OTHER TYPES" OF ALCOHOLIC BEVERAGES. LATER ON DURING SUMMER VACATION "OF 1965," 'I WOULD DRINK MY FIRST BEER.' I GOT "MODERATELY INTOXICATED," BUT NOT "RAGING DRUNK." THAT NIGHT, I ATE DINNER, WENT TO BED LATER, AND GOT UP IN THE MORNING FEELING GOOD. ACCORDINGLY, BEER BECAME "MY PREFERRED DRINK." "FROM THAT POINT, ONWARD," I DRANK BEER AS OFTEN AS POSSIBLE. BEER "WOULD BE MY EXCLUSIVE DRINK" **UP TO DECEMBER 3, 1988.**

-- [AS IS WELL KNOWN, "THE MID-'60'S' ONWARD" "SAW A LOT OF "REVOLUTIONARY LIFESTYLES"" -- ONE SUCH "LIFESTYLE" BEING THE "HIPPIE MOVEMENT." I INSTANTLY "FELL IN LOVE" WITH EVERYTHING THAT HIPPIES BELIEVED AND PRACTICED]. FROM 1965 THROUGH 1971, MY LIFESTYLE "FOCUSED ON:" PEACE; LOVE; ROCK MUSIC, **AND DRUGS**.....[1965 - AGE 14] -- I TOOK L.S.D. FOR THE FIRST TIME; "MAGIC MUSHROOMS" FOR THE FIRST TIME; MESCALINE FOR THE FIRST TIME; PEYOTE FOR THE FIRST TIME; AND SMOKED HASHISH FOR THE FIRST TIME -- THROUGHOUT JUNE - SEPTEMBER OF 1965. I STARTED 'GOING TO ROCK CONCERTS DURING SUMMER OF 1965.' I ALWAYS "TOOK AT LEAST "2 JOINTS" OF MARIJUANA" TO EACH CONCERT.

-- "PSYCHEDELIC DRUG USE" WAS "DISTANT AND SPORADIC." I TOOK L.S.D. 4 MORE TIMES AFTER THE "FIRST TRIP" IN 1965: 'ONCE IN 1966; ONCE IN 1968; ONCE IN 1970; AND ONCE IN 1971.' I ONLY TOOK PEYOTE ONE MORE TIME -- IN 1970. I TOOK MESCALINE TWO MORE TIMES: ONCE IN 1968; AND ONCE IN 1970. IN 1971, I USED "MAGIC MUSHROOMS" APPROXIMATELY "A DOZEN TIMES" (THERE WERE SOME "GOLD LIBERTY CAP MUSHROOMS" GROWING WILD, CLOSE TO WHERE I WAS LIVING. I WOULD 'HARVEST SOME, CLEAN THEM, AND MIX THEM WITH FOOD THAT I WAS COOKING'). "FROM 1972 (THE YEAR THAT 'I TURNED 21') ONWARD, I **NEVER** USED ANOTHER PSYCHEDELIC DRUG -- I JUST WASN'T INTERESTED "IN TRIPPING" ANYMORE. I NEVER EVEN "GAVE PSYCHEDELICS A PASSING THOUGHT" "AT ANY POINT, THEREAFTER."

-- "BETWEEN THE AGES OF 12 THROUGH 17, I WAS IN AND OUT OF TROUBLE WITH THE LAW." HOWEVER, NONE OF MY JUVENILE ARRESTS ENCOMPASSED VIOLATION[S] OF ANY 'DRUG OR MINOR INVOLVEMENT WITH ALCOHOL LAWS.' MY "TROUBLES" WERE FOR "OTHER MATTERS." SINCE I AM FORMATTING THIS DOCUMENT TO FOCUS ON MY LONG-TERM SOBRIETY AND 'MY PAST ALCOHOL / DRUG HISTORY,' NO FURTHER DISCUSSION RE. THOSE "OTHER MATTERS" WILL TRANSPIRE WITHIN THIS DOCUMENT. BETWEEN "EARLY MARCH" OF 1964 THROUGH (IF MEMORY SERVES ME CORRECTLY) "JANUARY OF 1970," I SPENT A TOTAL OF 2+ YEARS "IN AND OUT" OF JUVENILE FACILITIES. [I WOULD BE HONORABLY DISCHARGED FROM CALIFORNIA YOUTH AUTHORITY PAROLE ON MY BIRTHDAY "IN 1972," 'WHEN I TURNED 21'].

-- "IN 1967 -- INTO 1968" -- WHEN I WAS 16 YEARS OLD, "I DISCOVERED AMPHETAMINES." MAINLY, MY AMPHETAMINE USE WAS LIMITED TO PILLS, SUCH AS: BENZEDRINE ("BENNIES / "CROSS-TOPS"" -- DEXEDRINE ("DEXIES / "PINK HEARTS"") -- [AND] "BLACK BEAUTIES" (BLACK CAPSULES WHOSE 'PHARMACEUTICAL NAME' I DO NOT REMEMBER). "AT THAT TIME," I REALLY LIKED "THOSE UPPERS." I CANNOT "GIVE A COUNT OF HOW MANY TIMES THAT I TOOK UPPERS." NOR CAN I "PROVIDE A COUNT" OF HOW MANY I TOOK. IT WAS A LOT. I DO REMEMBER "A TIME FRAME." I REGULARLY TOOK "UPPERS" FOR <u>6 MONTHS</u>. "IN 1968," I 'WEIGHED MYSELF ON THE BATHROOM SCALE.' <u>I HAD "DROPPED DOWN" **TO 99 POUNDS**.</u> FROM "THAT POINT, ONWARD," I STOPPED <u>**ALL**</u> AMPHETAMINE USE. I HAVE **NEVER** USED ANY TYPE OF AMPHETAMINE SINCE "EARLY 1968."

-- "IN 1967," I TRIED METHAMPHETAMINE. "BACK THEN," METHAMPHETAMINE WAS TOTALLY DIFFERENT. FIRST, THE TERM: "METHAMPHETAMINE" -- WAS NOT IN USE. "THE DRUG" WAS CALLED "METHEDRINE," "METH.," "CRYSTAL," "BLUEROCK," OR "ROCK." THIS IS SO BECAUSE "THE PRODUCT" WAS AN AQUA BLUE, HARD, CRYSTALLINE SUBSTANCE. I WAS AT A PARTY. A FRIEND "LAID OUT AN APPROXIMATE 3+ INCH LONG LINE OF BLUEROCK" -- "WHICH I "SNORTED."" "THE BLUEROCK LITERALLY TOOK OVER." "I WAS UP" FOR NEARLY 3 DAYS -- I HAD NO APPETITE -- ANY SLEEP AT ALL WAS NOT TO BE HAD. I DID NOT LIKE "METH'S INTENSITY." "THAT ONE SNORT" WAS THE ONLY METH. THAT I EVER USED. /// FOR THE RECORD, "ON A BUNCH OF OCCASIONS," 'I'VE TOLD OTHERS' "THAT I USED TO REGULARLY SHOOT METH" (INJECT IT INTRAVENOUSLY) / THAT I "GOT STRUNG OUT FOR 6 MONTHS" / AND THAT I "STOPPED COLD TURKEY" WHEN I SAW "THAT MY WEIGHT HAD FELL TO 99 POUNDS." THE TRUTH IS -- I HAVE NEVER USED "I.V. DRUGS." [SHORTLY AFTER I STOPPED TAKING AMPHETAMINE PILLS, I WOUND UP IN JUVENILE HALL. IF I HAD JUST STOPPED USING "I.V. DRUGS," I WOULD HAVE HAD "A BUNCH OF INJECTION MARKS" ("TRACKS"). THE "AUTHORITIES" SUBJECTED ME TO A VERY THOROUGH MEDICAL EXAMINATION. THERE WERE NO "TRACKS" BECAUSE I DIDN'T HAVE ANY].

THE TRUTH IS, MY AMPHETAMINE USE CONSISTED OF "THE PILLS" THAT I IDENTIFIED AND DISCUSSED WITHIN PG.6,L.11 - 20, SUPRA.

-- "IN 1971," WHILE I WAS AT A PARTY IN SANTA CRUZ, 'I "SNORTED" AN APPROXIMATE 3" "LINE OF" COCAINE.' I DIDN'T LIKE IT. I **NEVER** USED COCAINE AGAIN.

-- IN 1967 -- WHEN I WAS 16 YEARS OLD, I 'TRIED SOME BARBITURATES.' ON ONE OCCASION, I TOOK ONE (1) SECONOL CAPSULE ("RED").ON ANOTHER OCCASION, I TOOK A "YELLOW JACKET" ('A YELLOW CAPSULE WHOSE PHARMACEUTICAL NAME I DO NOT REMEMBER'). ON ONE OTHER OCCASION, I TOOK A "RAINBOW" ('A DARK RED/DARK BLUE CAPSULE WHOSE PHARMACEUTICAL NAME I DO NOT REMEMBER'). [THESE PILLS WERE COMMONLY CALLED: "DOWNERS"]. "THOSE PILLS" 'CAUSED ME TO BE DEPRESSED AND MADE ME VERY SLEEPY.' "THOSE 3 TRIES" WERE IT. I DID NOT LIKE THE WAY "DOWNERS" AFFECTED ME. I **NEVER** ENGAGED IN ANY FURTHER USE OF DOWNERS.

**"SUBSTANCE HISTORY" -- CONCLUSION**

THIS "SUBSTANCE HISTORY" AS PUT FORTH ON PG.4,L.27 - PG.7,L.12(ABOVE), SUPRA, IS THE COMPLETE HISTORY OF MY DRUG USE AND DRINKING. [ONE FINAL "DRINKING DISCLOSURE:" 'WHEN I WAS 21, I GOT DRUNK ON TEQUILA.' I WOULD LATER GET PHYSICALLY SICK -- AS WELL AS A HANGOVER THAT LASTED FOR 2 DAYS. 'WHEN I WAS 24, I GOT DRUNK ON WHISKEY.' I WOULD LATER GET PHYSICALLY SICK -- AS WELL AS A HANGOVER THAT LASTED FOR 2 DAYS. "DUE TO THOSE EXPERIENCES," I **NEVER** DRANK "HARD LIQUOR" AGAIN. I "SPENT A LOT OF TIME IN BARS." I WOULD ALWAYS DRINK PITCHERS OF "DRAFT BEER" -- NEVER "MIXED DRINKS" OR HARD LIQUOR].

**I HAVE NEVER EVEN EXPERIMENTED WITH OPIOIDS SUCH AS: OPIUM; HEROIN; MORPHINE; OR ANY OTHER UNNAMED "MEMBER OF THE OPIOID FAMILY" "BY ANY METHOD" -- "EATING," "SMOKING," "SNIFFING," OR "INJECTING."**

**FENTANYL "CAME OUT LONG AFTER I HAD "SOBERED UP." THE SAME HOLDS TRUE FOR "LATTER COCAINE DERATIVES" SUCH AS: "CRACK;" "ICE;" ETCETERA. I NEVER HAD "SO MUCH AS A PASSING THOUGHT" ABOUT TRYING OR USING 'THAT CRAP' AT ANY POINT THROUGHOUT MY LIFE.**

[**FROM "DECEMBER OF 1988, ONWARD,"** MANY NEW "DESIGNER NARCOTICS" AND HARD DRUGS HAVE "CAME OUT" THAT I HAVE NOT NAMED OR DISCUSSED. (TODAY IS MARCH 26, 2024. I HAVE NOW BEEN PERFECTLY SOBER: 35 YEARS; 3 MONTHS; 3 WEEKS; AND 1 DAY). "SINCE THEY WERE NOT AROUND TO PLAY A ROLE IN MY LIFE," 'I FEEL NO NEED TO IDENTIFY OR DISCUSS **EVERY** SUBSTANCE THAT A PERSON COULD UTILIZE TO GET HIGH OR DRUNK'].

[THIS] **"SUBSTANCE HISTORY" -- CONCLUSION** -- IS FINISHED. FORTHCOMING WILL BE A "BASIC LIST" OF "CLEAN TIME[S]" PERTAINING TO ALL OF THE SUBSTANCES THAT I HAVE PUT FORTH WITHIN THIS DOCUMENT -- "ITEM NAMES" AND "CLEAN TIME," PERIOD.

## CLEAN TIMES

| PG. | LINE[S] | "SUBSTANCE' NAME" | STARTED | STOPPED | TIME CLEAN * / ** |
|---|---|---|---|---|---|
| 2<br>3<br>4<br>5 | 3 - 16<br>7-21<br>31<br>4,5 | CIGARETTES | 1960 | 6/1/1990 | 33 YEARS, 10 MONTHS |
| 4<br>5 | 32 -34<br>1 - 3 | TRANQUILIZER/MUSCLE RELAXERS | 1960 | 1960 | 64 YEARS [5] |
| 2<br>3<br>4<br>5 | 34-36<br>1-6 / 27-32<br>35,36<br>5,6 / 25,26 | MARIJUANA | 1960 | 1988 | 36 YEARS |
| 5 | 8 - 11 | WINE | 1965 | 1965 | 59 YEARS [1] |
| 5 | 11 - 17 | **BEER** | 1965 | 1988 | **35 YEARS, 4 MONTHS** ***** |
| 5 | 22 / 27-29 | L.S.D. | 1965 | 1971 | 53 YEARS |
| 5 | 22 / 30-33 | "MAGIC MUSHROOMS" | 1965 | 1971 | 53 YEARS |
| 5 | 23,29,30 | MESCALINE | 1965 | 1970 | 54 YEARS |
| 5 | 23,29 | PEYOTE | 1965 | 1970 | 54 YEARS |
| 5 | 24 | HASHISH | 1965 | 1973 | 51 YEARS |
| 6 | 12,13 | "[CROSS-TOP] BENNIES" | 1967 | 1968 | 56 YEARS |
| 6 | 13 | "DEXIES" | 1967 | 1968 | 56 YEARS |
| 6 | 13,14 | "BLACK BEAUTIES" | 1967 | 1968 | 56 YEARS |
| 6 | 21 - 36 | METHEDRINE (METHAMPHETAMINE) | 1967 | 1967 | 57 YEARS [1] |
| 7 | 3 - 4 | COCAINE | 1971 | 1971 | 53 YEARS [1] |
| 7 | 6 | "RED" | 1967 | 1967 | 57 YEARS [1] |
| 7 | 7 | "YELLOW JACKET" | 1967 | 1967 | 57 YEARS [1] |
| 7 | 8,9 | "RAINBOW" | 1967 | 1967 | 57 YEARS [1] |
| 7 | 16,17 | TEQUILA | 1972 | 1972 | 52 YEARS [1] |
| 7 | 17,18,19 | WHISKEY | 1975 | 1975 | 49 YEARS [1] |
| 7 | 21 | "MIXED DRINKS" | NEVER | ////////// | "ENTIRE LIFE" |
| 7 | 22 - 24 | "OPIUM / OPIOID FAMILY" | NEVER | ////////// | "ENTIRE LIFE" |
| 7 | 25 | FENTANYL | NEVER | ////////// | "ENTIRE LIFE" |
| 7 | 25 - 28 | "COCAINE DERIVATIVES" | NEVER | ////////// | "ENTIRE LIFE" |
| 7 | 29 - 33 | "NEW / UNNAMED NARCOTICS/DRUGS" | NEVER | ////////// | "ENTIRE LIFE" |

* THERE ARE ONLY THREE (3) "EXACT MONTHS" THAT I REMEMBER: DECEMBER 3, 1988 -- WHEN I ENTERED JANUS DETOX; "EARLY APRIL," 1988 -- WHEN I 'SMOKED MY FINAL MARIJUANA;' AND JUNE 1, 1990 -- MY FIRST DAY OF NOT SMOKING CIGARETTES.

** "BOLD, BRACKET NUMBERS" = NUMBER OF TIMES I 'TRIED THOSE PARTICULAR ITEMS.'

***** APRIL 4, 2024, SIGNIFIES 35 YEARS AND 4 MONTHS SINCE I 'WOKE UP SOBER.'**

## FURTHER 'DISPARAGING VERBIAGE' AUTHORED BY:

## CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES PERSONNEL

WITHIN HER AUGUST 8, 2023, "ASSESSMENT REPORT," GRACIELA ROMERO STATES:

[SEE PG.7]--(QUOTE): "EDUCATION PROVIDED: LCSW EDUCATED PATIENT ON THE RISKS OF OVERDOSE AND CONTINUED USE OF SUBSTANCES, IN ADDITION TO EDUCATION REGARDING WAYS TO APPROPRIATELY ASK FOR HELP/SUPPORT VIA 7362 PROCESS. PT WAS ALSO ADVISED OF THE POTENTIAL FOR SUBSTANCES TO BE KNOWINGLY/UNKNOWINGLY LACED WITH FENTANYL WHICH FURTHER ELEVATES THE RISK OF ACCIDENTAL OVERDOSE AND/OR DEATH." (END QUOTE).

MS. ROMERO HAS "EXERTED GREAT EFFORT TO INVENT SUBSTANCE ISSUES" THAT I **NEVER HAD**. I "HEAVILY EMPHASIZED" THE FACT THAT I **NEVER** EVEN EXPERIMENTED "WITH ANY OPIUM / "DERIVATIVES"" AT ANY POINT IN MY LIFE. [PLEASE SEE THIS DOCUMENT'S PG.7, L.22-33, SUPRA]. FURTHERMORE, I ALSO HEAVILY EMPHASIZED THE FACT THAT I **NEVER** "GOT INTO THE USE OF "HARD DRUGS"" SUCH AS COCAINE, "COCAINE DERIVATIVES," ETCETERA. [PLEASE SEE THIS DOCUMENT'S PG.7,L.25-33, SUPRA]. ADDITIONALLY, I GAVE MS. ROMERO 'A ONE-PAGE DOCUMENT PERTAINING TO MY LONG-TERM SOBRIETY AND MY "NON USE" OF NARCOTICS AND HARD DRUGS -- TITLED: "TO I.S.U.D.T. STAFF."' NOWHERE WITHIN HER 7-PAGE "REPORT" DOES MS. ROMERO **EVEN MENTION** MY LONG-TERM SOBRIETY, WHICH, ON AUGUST 8, 2023, CAME TO: 34 YEARS, 8 MONTHS, AND 4 DAYS. 'AT LEAST TWICE DURING "THE INTERVIEW," I MENTIONED "THOSE AMOUNTS OF TIME" TO HER. DURING "THAT INTERVIEW," THERE WAS NO POSITIVE RECOGNITION PROFFERED. I INFORMED HER THAT I CONSIDERED "I.S.U.D.T'S. OVERTURES UNNECESSARY -- AS WELL AS HARASSMENT." HOWEVER, "THEY" WERE BOUND AND DETERMINED TO 'PLACE ME IN THAT GROUP BY WHATEVER MEANS NECESSARY -- THE TRUTH BE DAMNED.

"THAT INTERVIEW" AT THE 'FACILITY "C" CLINIC, WAS THE SECOND.' THE "FIRST INTERVIEW" OCCURRED ON JANUARY 24, 2023, AT C.I.M'S. FACILITY "D" "T&R" CLINIC VIS A VIS TELECONFERENCE. I HAVE ADDRESSED THIS "INTERVIEW" WITHIN THIS DOCUMENT'S PG.3,L.33 - PG.4,L.23, SUPRA. HOWEVER, THERE REMAINS "ONE ITEM:"

[SEE PG.4]--(QUOTE): "LCSW PROVIDED PSYCHOEDUCATION ABOUT FENTANYL BEING CUT INTO VARIOUS SUBSTANCES AND THE RISK OF OVERDOSE. PATIENT STATED THAT HE UNDERSTOOD." (END QUOTE).

EVERYTHING THAT I JUST SAID PERTAINING TO MS. ROMERO'S 8/8/2023, "INTERVIEW" EQUALLY APPLIES HERE. MS. GRUTMAN'S SOLE PURPOSE WAS TO TRY TO "TALK ME INTO SIGNING UP FOR I.S.U.D.T.." NO COMPLIMENTS OR ANYTHING POSITIVE WAS PROFFED BY HER IN REGARD TO MY (AT "THAT TIME") 34+ YEARS OF SOBRIETY. "HER AGENDA" WAS ALL THAT MATTERED. SHE ALSO LIED PERTAINING TO "MY RESPONSE RE. HER FENTANYL LECTURE." I NEVER STATED "THAT I UNDERSTOOD." I DID STATE: I JUST FINISHED

TELLING YOU OF '3 DECADES PLUS OF PERFECT SOBRIETY.' YOU SHOULD KEEP IN MIND THE FOLLOWING: [1] I NEVER EXPERIMENTED WITH "ANY OPIOID OR SYNTHETIC NARCOTIC;" [2] I WENT INTO DETOX AS AN EXCLUSIVE RESULT OF DRINKING; AND [3] IN ANY EVENT, FENTANYL -- AS WELL AS A "HOST OF OTHER NEW DESIGNER DRUGS" -- CAME OUT LONG AFTER I HAD BEEN SOBER FOR MANY, MANY, MANY YEARS. MY KNOWLEDGE OF THEM IS WHAT I HEAR ON THE NEWS. **THAT** IS WHAT I TOLD MS. GRUTMAN.

THROUGHOUT THIS DOCUMENT, I HAVE SHOWN HOW C.C.H.C.S. PERSONNEL "HAVE SMUTTED ME UP" BY MAKING IT APPEAR THAT 'NON-EXISTENT PROBLEMS MAY EXIST.' FOR WELL OVER A YEAR, THESE LYING, INDIFFERENT C.C.H.C.S. EMPLOYEES "HAVE TURNED MY LIFE UPSIDE DOWN" THROUGH THE "TACTICS" THAT THEY HAVE EMPLOYED. ANYONE READING "THE ITEMS" THAT I HAVE IDENTIFIED AND DISCUSSED THROUGHOUT THIS DOCUMENT IS 'BOUND TO THINK AND/OR BELIEVE THAT I HAD SERIOUS NARCOTIC AND DRUG PROBLEMS.' THESE 'COMMENTS AND REPORTS' ARE FALSE AND OUTRAGEOUS.

## "CLOSING COMMENTS"

THIS FOREGOING, 'DETAILED ACCOUNT PERTAINING TO MY LONG-TIME, **3½+ DECADES OF SOBRIETY** IS LONG OVERDUE.'

**MY SOBRIETY IS AN AWESOME BLESSING!!! PRAISE GOD!!!!!**

HOWEVER, "ENTITIES" SUCH AS C.C.H.C.S.' I.S.U.D.T. PERSONNEL HAVE NO RESPECT FOR -- NOR PROFFER ANY POSITIVE RECOGNITION OF "MY DECADES LONG SOBRIETY." ""THEY" WANT TO FILL A GROUP SEAT" -- NOTHING ELSE MATTERS. I DO NOT HAVE **ANY** "SUBSTANCE ISSUES." **GOD HAS SEEN TO THAT -- AND WILL CONTINUE TO DO SO.**

I HAVE IDENTIFIED 'I.S.U.D.T. HARASSMENT THROUGHOUT THIS DOCUMENT.' SEE: PG.1, L.10 - PG.4,L.26 ["IDENTIFYING AND DISCUSSING" FALSE INFORMATION, EXTREMELY PREJUDICIAL, UNNECESSARY "COMMENTS," EVENTS / DATES / TIMES THAT SAID FALSE INFORMATION AND PREJUDICIAL, UNNECESSARY "COMMENTS" TRANSPIRED]. I HAVE ATTAINED THE DOCUMENTS THAT CONTAIN SUCH FALSE INFORMATION AND PREJUDICIAL, UNNECESSARY "COMMENTS."

I HAVE 'TRUTHFULLY DETAILED MY ACTUAL SUBSTANCE HISTORY' WITHIN THIS DOCUMENT'S PG.4,L.27 - PG.7,L.34, SUPRA.

I HAVE "DETAILED MY CLEAN TIME FROM EVERYTHING" WITHIN THIS DOCUMENT'S PG.8,L.1 - 36.

I DO NOT HAVE "SUBSTANCE ISSUES." I DO NOT NEED I.S.U.D.T. OR ANY OTHER GROUP.

## DECLARATION UNDER PENALTY OF PERJURY

I, JAMES BRADLEY HAAG, DO HEREBY DECLARE UNDER PENALTY OF PERJURY UNDER C.C.P. §§1086; 1103; 2015.5; AND 28 U.S.C. §1746 -- THAT I AM THE "AUTHOR" OF THIS: **"DECLARATION RE. "EXTENSIVE LONG TERM SOBRIETY BY JAMES B. HAAG"** AND THAT ALL IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

[COMPLETED ON] DATE: APRIL 4, 2024 BY: ____________________

[[SEE] **INTRODUCTION** --[A][B][C] -- PG.[2],L.5-14, **SUPRA**]

[D] **STATEMENT OF FACTS**

[i.] **CLAIM I**

(a) **JANUARY 24, 2023, '[C.I.M.] FACILITY "D" TELECONFERENCE WITH [C.C.H.C.S.'] L.C.S.W., ALICE GRUTMAN.'**

I HAVE "SOMEWHAT ALLUDED TO THIS TELECONFERENCE (HEREAFTER: "INTERVIEW") WITHIN:

"THE FORM" -- PG.3,L.7-12;

MY "DECLARATION" -- PG.[4],L.14 (begin with: "FIRST") - 19 (end with: "REFUSAL");

" " " -- PG.[6],L.33 - PG.7,L.23; AND PG.12,L.24 (begin with: "THE") - PG.[13],L.6.

**"REFERENCED MEDICAL DOCUMENTS COMPRISE ATTACHMENT 2."**

["IN EARLY 2020," I HAD AN UNREQUESTED MEDICAL APPOINTMENT AT C.I.M'S. FACILITY "C" CLINIC (HEREAFTER:""C"-YARD CLINIC"). DURING THAT APPOINTMENT, DOCTOR ARNOLFO ELMAN ASKED ME 'IF I EVER SMOKED.' I WAS FULLY HONEST WITH HIM AND DIVULGED A DETAILED HISTORY OF SUCH. THAT "HISTORY" ALSO INCLUDED A "DETAILED RENDITION" RE. MY "CUT BACK REGIMEN" THAT COMMENCED 'IN 1989' -- LEADING UP TO MY FIRST DAY OF NOT SMOKING -- WHICH WAS JUNE 1, 1990. PLEASE SEE MY "DECLARATION" @ PG.[5],L.10 - 16, AND PG.[6],L.7-13. ("AT THIS TIME," I DO NOT KNOW 'THE EXACT MONTH AND DAY IN 2020' WHEN DOCTOR ELMAN ENTERED: (QUOTE) "NAME OF PROBLEM: FORMER HEAVY TOBACCO SMOKER" (END QUOTE) INTO MY MEDICAL RECORDS). NOTHING POSITIVE -- ESPECIALLY THE FACT THAT I HAD BEEN NEARLY **30 YEARS** TOBACCO FREE -- WAS ENTERED BY HIM].

[DOCTOR ELMAN'S "2020 ENTRY" WOULD BE MERELY QUOTED BY NUMEROUS PARTIES]. ONE SUCH QUOTE 'WAS MADE' BY MS. GRUTMAN WITHIN HER 1/24/2023, "REPORT." PLEASE SEE PG.25 (QUOTE) (SEPARATE COLUMN) "PROBLEMS (ACTIVE) FORMER HEAVY TOBACCO SMOKER." (END QUOTE). MS. GRUTMAN THEN QUOTES DOCTOR ELMAN'S "2020 ENTRY."

DURING THE INTERVIEW, I EXPLICITLY TOLD MS. GRUTMAN THAT I HAVE BEEN TOBACCO FREE SINCE JUNE 1, 1990, ["AT THAT TIME"] 32 YEARS, 7 MONTHS, 3 WEEKS, AND 3 DAYS.

["APPROXIMATELY MARCH OF 2020," I CONSENTED TO A 'BLOOD DRAW' ("LABS"), WHICH TOOK PLACE AT "C"-YARD'S CLINIC. "AT THAT TIME," I WAS "HOUSED" IN COLUSA. "IN MAY OF 2020," COLUSA WAS ON [COVID-19] QUARANTINE "STATUS." DOCTOR ELMAN 'CAME TO COLUSA TO "INFORM" ME OF MY LABS "RESULTS."' "AT THAT TIME," HE "INFORMED ME" 'THAT I TESTED POSITIVE FOR HEPATITIS C.' I TOLD HIM THAT THAT WAS WRONG. I ALSO TOLD HIM THAT I WANTED 'FURTHER TESTING CONDUCTED BY "AN ENTITY" OTHER THAN C.I.M. / C.D.C.R. MEDICAL STAFF ("THEY" REGULARLY UTILIZE THE SERVICES OF "OUTSIDE HOSPITALS" AND THOSE HOSPITALS' PERSONNEL). DOCTOR ELMAN IGNORED "WHAT I SAID." INSTEAD, HE 'TRIED TO TALK ME INTO TAKING MEDICATION,' WHICH I REFUSED. I WAS THEN -- AND STILL AM NOW -- IN GOOD HEALTH. I HAVE NOT EXPERIENCED **ANY** OF 'THE LIVER AND "OTHER DISEASES" THAT HEPATITIS C PRODUCES. I HAVE STEADFASTLY DENIED HAVING HEPATITIS C. HOWEVER, DOCTOR ELMAN ENTERED SUCH INTO MY MEDICAL FILE].

[(PARTIAL QUOTE) "NAME OF PROBLEM: CHRONIC HEPATITIS C; RECORDER: ELMAN, ARNOLFO P&S" (END QUOTE)].

WITHIN PG.25 OF HER "REPORT," MS. GRUTMAN HAS 'COMPOSED A "PROBLEMS (ACTIVE)" COLUMN.' "WITHIN THAT COLUMN," SHE STATES: "CHRONIC HEPATITIS C." SHE THEN MERELY QUOTES DOCTOR ELMAN'S "ORIGINAL ENTRY." DURING "THE INTERVIEW," <u>HEPATITIS C WAS NOT DISCUSSED AT ALL</u>.

[THERE IS YET ANOTHER ENTRY BY DOCTOR ELMAN PERTAINING TO <u>HEPATITIS B</u>. 'I HAVE ABSOLUTELY **NO IDEA** WHEN "THAT ENTRY" WAS PLACED INTO MY MEDICAL FILE. **NO** MEDICAL PERSONNEL AT C.I.M. -- NO DOCTOR / NO NURSE / NOBODY -- SAID "ONE WORD ABOUT BEING HEPATITIS B POSITIVE." SUCH WAS "QUIETLY ENTERED" INTO MY MEDICAL FILE. I WOULD FIRST 'LEARN OF SAID ENTRY "IN SEPTEMBER OF 2023" -- WHEN I RECEIVED THE 28 PAGES OF MEDICAL FILES'].

[(PARTIAL QUOTE) "NAME OF PROBLEM: HEPATITIS B CORE ANTIBODY POSITIVE; RECORDER: ELMAN, ARNOLFO P&S" (END QUOTE)].

ONCE AGAIN, WITHIN HER "REPORT'S" "PROBLEMS (ACTIVE)" COLUMN ON PG.25, MS. GRUTMAN STATES: "HEPATITIS B CORE ANTIBODY POSITIVE." SHE THEN AGAIN MERELY

QUOTES DOCTOR ELMAN'S "ORIGINAL ENTRY." DURING "THE INTERVIEW," HEPATITIS B WAS NOT DISCUSSED AT ALL.

PLEASE SEE PG.27 OF MS. GRUTMAN'S REPORT. SHE HAS MADE A FLAGRANT, PERFIDIOUS STATEMENT: (QUOTE) "[STATING] I WENT TO A PROGRAM **IN 1998** DRUNK AS 5 MEN AND LEFT SOBER AS CAN BE" (END QUOTE). DURING "THE INTERVIEW," I NEVER SAID **ANYTHING** 'CLOSE TO THAT:'

[1] I CONCISELY TOLD HER THAT I ENTERED JANUS DETOX IN SANTA CRUZ AT 6:45 P.M., ON THE EVENING OF **DECEMBER 3, 1988**. ["PROGRAM" "NEVER CAME OUT OF MY MOUTH" / "NEITHER DID **1998**"].

[2] I CONCISELY TOLD HER: "DRUNK AS 5 PEOPLE." I NEVER SAID "MEN." I DO NOT REFER TO MYSELF AS "A MAN OR "OTHER MALE TERMS" BECAUSE I AM TRANSGENDER. MS. GRUTMAN WAS FULLY AWARE OF SUCH. [MY MEDICAL RECORDS 'LIST ME AS HAVING "GENDER DYSPHORIA" AND I HAD ALSO INFORMED HER OF SUCH'].

[3] I CONCISELY TOLD HER THAT I REMAINED IN JANUS FOR 1 WEEK, WAS DISCHARGED FULLY SOBER, AND THAT I "SOUGHT AN A.A. LOCATION," FOUND THE SANTA CRUZ FELLOWSHIP, AND ATTENDED A.A. MEETINGS THERE." ["LEFT SOBER AS CAN BE" "NEVER CAME OUT OF MY MOUTH"].

I HAVE 'DISCUSSED THESE ISSUES' WITHIN MY **"DECLARATION."** PLEASE SEE PG.[7],L.1 -18, SUPRA.

FINALLY, MS. GRUTMAN "MADE A TOTALLY UNNECESSARY "SPEECH" TO ME" AS "THE INTERVIEW" WAS CONCLUDING -- (QUOTE) "LCSW PROVIDED PSYCHOEDUCATION ABOUT FENTANYL BEING CUT INTO VARIOUS SUBSTANCES AND THE RISK OF OVERDOSE. PATIENT STATED THAT HE UNDERSTOOD." (END QUOTE). ENTERING "THAT VERBIAGE" INTO MY MEDICAL FILE IS EXTREMELY AND UNJUSTLY PREJUDICIAL. PLEASE SEE THE FOLLOWING WITHIN MY **"DECLARATION:"** PG.[10],L.22 - 33; PG.[12],L.28 - PG.[13],L.6, SUPRA, FOR "COMPLETE DETAILS." [EMPHASIS ADDED]. "PATIENT STATED THAT HE UNDERSTOOD" IS A BLATANT LIE. "WHAT I ACTUALLY SAID TO MS. GRUTMAN IS WITHIN MY DECLARATION'S ABOVE-IDENTIFIED PAGES [12] AND [13]." // FURTHER DISCUSSION RE. MS. GRUTMAN WILL BE: **ARGUMENT**.

**(b) AUGUST 8, 2023, '[C.I.M.] FACILITY "C" "IN-PERSON" INTERVIEW WITH [C.C.H.C.S.'] L.C.S.W., GRACIELA ROMERO.'**

I HAVE SOMEWHAT ALLUDED TO THIS "INTERVIEW" WITHIN:

"THE FORM" -- PG.3,L.13 - PG.3-A.,L.9;

MY "DECLARATION" -- PG.[5],L.8 - PG.[6],L.6 (and) L.22 - 32; PG.[12],L.3 - 23.

"IN MOST RESPECTS," THE CONSTRUCTIVE FACTS AS PRESENTED WITHIN "THE FORM," MY "DECLARATION," AND PGS. [14] - [16], SUPRA, APPLY TO THIS 8/8/2023, "INTERVIEW" AS WELL...

I CONCISELY INFORMED MS. ROMERO THAT I HAD BEEN TOBACCO FREE THUS FAR: 33 YEARS, 2 MONTHS, AND 1 WEEK. [MS. ROMERO 'COMPOSED A 7-PAGE "REPORT"']. PG.20 STATES: [PROBLEMS (ACTIVE)] (QUOTE) "FORMER HEAVY TOBACCO SMOKER" (UNQUOTE) "THEN MOVES TO THE RIGHT" AND QUOTES DOCTOR ELMAN'S "2020 ENTRY." HOWEVER, "MS. ROMERO GOES SUBSTANTIALLY FURTHER -- WITHIN PG.19 OF HER REPORT SHE STATES: (PARTIAL QUOTE) "SOCIAL HISTORY -- TOBACCO: -- FORMER, CIGARETTES, USE TYPE: PACKS. 2 PER DAY. 15 YEAR(S)." (UNQUOTE). MS. ROMERO HAS BLATANTLY LIED ABOUT THE NUMBER OF YEARS THAT I 'SMOKED 2 PACKS OF CIGARETTES PER DAY.' MY CIGARETTE SMOKING "PEAKED AT 2 PACKS" 'FROM 1984 INTO 1989' -- WHICH IS 6 YEARS -- NOT 15. DURING "THAT SEGMENT" OF THE "INTERVIEW," I DID NOT MENTION THE NUMBER: "15" AT ALL. [FOR A "FULL ACCOUNT" OF THIS ISSUE, SEE MY DECLARATION AT PG.[5],L.3-16].

'ON 2 OCCASIONS WITHIN PGS. 18 & 22 OF HER "REPORT," MS. ROMERO HAS QUOTED DOCTOR ELMAN'S "HEPATITIS C ENTRY" AS PRESENTED WITHIN PG.[15],L.1-14, SUPRA.' ON BOTH OCCASIONS, SHE LISTED HEPATITIS C AS "PROBLEMS (ACTIVE)." [WITHIN HER "COMMENTS SECTION" WITHIN PG.23 OF HER REPORT, MS. ROMERO MADE "A BRIEF REMARK" RE. "A PAST HEP. C DIAGNOSIS THAT SHE COULD NOT CONFIRM." HOWEVER, SHE **NEVER** 'BROACHED THE SUBJECT OF HEPATITIS C AT ANY POINT DURING "THE INTERVIEW"'].

WITHIN PG.20 OF HER "REPORT," MS. ROMERO HAS QUOTED DOCTOR ELMAN'S "HEPATITIS B ENTRY AS PRESENTED WITHIN PG.[15],L.19 - PG.[16],L.2, SUPRA. SHE LISTED HEPATITIS B AS "PROBLEMS (ACTIVE)" WITHIN [HER "REPORT'S"] PG.20.

MS. ROMERO'S "REPORT" AT PG.19 STATES: (PARTIAL QUOTE) ("LEFT COLUMN") "SOCIAL HISTORY ALCOHOL ("RIGHT COLUMN") BEER, DAILY, WITHDRAWAL SYMPTOMS PRESENT YES." [ALSO SEE LINES 4 AND 5 "OF THAT COLUMN:"] -- "DUONG, HAN P&S: HAD BEEN DRINKING 23 YRS, STOPPED ON 12/4/1998." (END QUOTE). THERE ARE 2 FLAGRANT LIES HERE: FIRST -- I WAS NOT HAVING **ANY** "WITHDRAWAL SYMPTOMS; SECOND -- MS. ROMERO HAS KNOWINGLY AND IMPROPERLY QUOTED HAN DUONG -- **1998** IS INCORRECT. I STOPPED ON [THE EVENING OF] **12/03/1988**. FURTHERMORE, I CONCISELY TOLD MS. ROMERO AT 'THE ONSET OF "THE INTERVIEW" THAT I HAD ("AT THAT TIME") 34 YEARS, 8 MONTHS, AND 4 DAYS OF PERFECT SOBRIETY. PLEASE SEE ESPECIALLY: MY "DECLARATION" PG.[5],L.17-33, SUPRA. [EMPHASIS ADDED].

MS. ROMERO'S "REPORT" AT PG.19 STATES: (PARTIAL QUOTE) ("LEFT COLUMN") "SOCIAL HISTORY SUBSTANCE ABUSE ("RIGHT COLUMN") "FORMER, MARIJUANA." (END QUOTE). MS. ROMERO OMITTED 'THE TIME THAT HAS ACCUMULATED SINCE I LAST SMOKED MARIJUANA' WHICH ("AT THAT TIME") CAME TO: 35 YEARS AND 8 MONTHS (I 'SMOKED MY LAST MARIJUANA' "IN EARLY APRIL OF 1988 -- EIGHT MONTHS BEFORE I "CHECKED INTO JANUS DETOX"). THIS ISSUE IS ALSO MENTIONED WITHIN MY "DECLARATION'S" PG.[6],L.27-32.

MS. ROMERO'S "REPORT" AT PG.23 STATES: (PARTIAL QUOTE) ("COMMENTS SECTION") --

"DRUG OF CHOICE: MARIJUANA CIGARETTES

LAST USE: DECEMBER 4TH. 1988

ROUTE OF ADMINISTRATION: PT DID NOT DISCLOSE." (END QUOTE).

FIRST OF ALL, 'I WOKE UP TO MY FIRST DAY OF SOBRIETY IN JANUS DETOX ON **DECEMBER 4TH., 1988**. I CONCISELY TOLD MS. ROMERO "THAT I **SMOKED** MY LAST MARIJUANA "IN EARLY APRIL" OF 1988."

SECONDLY, MS. ROMERO 'LISTS "MARIJUANA CIGARETTES."' I EXPLICITLY TOLD HER THAT I SMOKED MARIJUANA. HOW DID I NOT DISCLOSE "ADMINISTRATION?" PLEASE SEE ALSO: MY "DECLARATION'S" PG.[5],L.34 - PG.[6],L.6, SUPRA.

/////

/////

FINALLY, PLEASE SEE THE "CONCLUSION" OF GRACIELLA ROMERO'S "REPORT" -- PG.24.

(QUOTE)

"EDUCATION PROVIDED: LCSW EDUCATED PATIENT ON THE RISKS OF OVERDOSE AND CONTINUED USE OF SUBSTANCES, IN ADDITION TO EDUCATION REGARDING WAYS TO APPROPRIATELY ASK FOR HELP/SUPPORT VIA 7362 PROCESS. PT WAS ALSO ADVISED OF THE POTENTIAL FOR SUBSTANCES TO BE KNOWINGLY/UNKNOWINGLY LACED WITH FENTANYL WHICH FURTHER ELEVATES THE RISK OF ACCIDENTAL OVERDOSE AND/OR DEATH."

(END QUOTE)

"THAT SPEECH" CLEARLY INDICATES THAT **NOTHING** THAT I SAID TO MS. ROMERO PERTAINING TO 34 YEARS, 8 MONTHS, AND 4 DAYS OF PERFECT SOBRIETY 'MATTERED TO HER, IN ANY WAY, SHAPE, OR FORM.' I EXPLICITLY TOLD HER THAT I NEVER SO MUCH AS EXPERIMENTED WITH "OPIOIDS / SYNTHETICS" OF ANY NATURE AT ANY POINT IN MY LIFE. THAT "LECTURE" WAS TOTALLY UNCALLED FOR. "PUBLISHING IT" IS EXTREMELY PREJUDICIAL AND DISPARAGING. [EMPHASIS ADDED]. I HAVE ADDRESSED THIS MATTER WITHIN MY "DECLARATION:" PG.[12],L.3-23, SUPRA.

ONE THING THAT MS. ROMERO SAID IS INDEED TRUE -- [SEE PG.23, PARAGRAPH 3, OF HER "COMMENTS"] -- I WAS EXTREMELY IRRITATED, AND I INDEED TOLD HER THAT I.S.U.D. T'S. "CONTINUED SUMMONSES" CONSTITUTE HARASSMENT. I FURTHER INFORMED HER THAT "I WOULD FILE "REQUISITE LITIGATION" IF "THEY" DID NOT LEAVE ME ALONE."

(c) **"MISCELLANEOUS" FACTS**

[1] PLEASE SEE "THE FORM'S PGS.3-A.,L.10 - 3-B.,L.20." SAID TEXT IS INCORPORATED BY REFERENCE AS IF FULLY AND CURRENTLY REDRAFTED, FORTHWITH.THE SAME APPLIES TO MY "DECLARATION," PG.[4],L.10-35, SUPRA. IN ADDITION TO **ATTACHMENT 2**, THE FOLLOWING **ATTACHMENTS** ARE ALSO RELEVANT:

ATTACHMENT 1: INSTITUTIONAL LEVEL GRIEVANCE -- FILED: OCTOBER 23, 2023;

ATTACHMENT 1-A: INSTITUTIONAL LEVEL RESPONSE -- "CLOSED" ON DECEMBER 28, 2023; 3

ATTACHMENT 3: REQUESTS FOR INTERVIEW WITH CASE COUNSELOR III - STROBELT;

ATTACHMENT 4: 08/30/2023, "COUNSELING CHRONO" AND 09/13/2023, "ADMINISTRATIVE 115;"

---

**Fn.:** 3 ALL "ADMINISTRATIVE MATERIALS" WILL BE ADDRESSED IN THE **ARGUMENT SECTION.**

ATTACHMENT 5: MY RESPONSE TO "C.C.H.C.S.' MAIN HEADQUARTERS" PERTAINING TO THE INSTITUTIONAL LEVEL'S RESPONSE / DENIAL -- FILED: JANUARY 16, 2024;

ATTACHMENT 5-A: "MAIN HEADQUARTER'S" RESPONSE -- "CLOSED" ON MARCH 22, 2024.

[ii] IN SUM, I HAVE "ASKED DOZENS OF TIMES" TO BE REMOVED FROM I.S.U.D.T., AND TO BE LEFT ALONE. RESPONSES ARE ALMOST ALWAYS IDENTICAL: "WE DIDN'T PUT YOU THERE, SACRAMENTO DID" (THAT IS A BLATANT LIE. INSTITUTIONAL MEDICAL STAFF "CONSTRUCT "THE LISTS""); "I DON'T HAVE THE AUTHORITY TO REMOVE YOU;" "TALK TO YOUR COUNSELOR;" "TALK TO MENTAL HEALTH STAFF;" "C.C.III STROBELT IS IN CHARGE OF CHINO'S I.S.U.D.T. PROGRAM. PUT IN A WRITTEN REQUEST FOR INTERVIEW TO CONFER WITH HIM" (I HAVE BEEN "MAKING SUCH EFFORTS" SINCE SEPTEMBER OF 2023. SEE ATTACHMENT 3). "FOR OVER 8 MONTHS," C.C.III STROBELT HAS SNUBBED ALL OF MY "INTERVIEW EFFORTS."

[iii] **ON APRIL 5, 2024,** I HAD A MEETING WITH A MENTAL HEALTH SOCIAL WORKER, WHO INFORMED ME THAT I 'AM SCHEDULED FOR A "TELECONFERENCE WITH SACRAMENTO" PERTAINING TO MY DESIRE TO BE REMOVED FROM I.S.U.D.T..'

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
OTRR314 **INMATE PRIORITY PASS**

| | | | |
|---|---|---|---|
| **INMATE'S NAME** Haag, James Bradley | | **CDC#** T75535 | **HOUSING AREA/BED** B SH 2 - 201001L |
| **ISSUED BY** U. UNKNOWN | **ISSUE DATE** 04/04/2024 | **APPT. DATE** 04/05/2024 | **APPT. TIME** 08:15 |
| **APPT. LOCATION** BLDG MH | **TYPE / REASON** Mental Health/ I.S.U.D.T. / Notice | | |
| **ARRIVAL TIME:** | **RECORDED BY:** Re. Teleconference | | |
| **DEPART TO:** | **DEPART TIME:** | **RECORDED BY:** | |

THAT TELECONFERENCE OCCURRED ON APRIL 8, 2024. "THE SACRAMENTO EMPLOYEE" WAS: **GRACIELA ROMERO.**

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
OTRR314 **INMATE PRIORITY PASS**

| | | | |
|---|---|---|---|
| **INMATE'S NAME** Haag, James Bradley | | **CDC#** T75535 | **HOUSING AREA/BED** B SH 2 - 201001L |
| **ISSUED BY** U. UNKNOWN | **ISSUE DATE** 04/04/2024 | **APPT. DATE** 04/08/2024 | **APPT. TIME** 10:30 |
| **APPT. LOCATION** D ISUDT | **TYPE / REASON** Specialty Services/ Teleconference | | |
| **ARRIVAL TIME:** | **RECORDED BY:** | | |
| **DEPART TO:** | **DEPART TIME:** | **RECORDED BY:** | |

"I WENT PREPARED." I READ THE FOLLOWING TO HER "OVER THE EQUIPMENT....."

--- **POINTS FOR 04/08/2024 "I.S.U.D.T. MEETING"**

TO BEGIN: AS OF TODAY, APRIL 8, 2024, I HAVE BEEN PERFECTLY SOBER: 35 YEARS, 4 MONTHS, AND 4 DAYS. FURTHERMORE, FOR THE RECORD — JUNE 1, 2024, WILL BE MY "34-YEAR ANNIVERSARY" RE. BEING CIGARETTES / TOBACCO FREE. I DO NOT HAVE "SUBSTANCE ISSUES." I NOT ONLY HAVE AN INCREDIBLE GOD-GIVEN STRENGTH TO MAINTAIN MY SOBRIETY, I HAVE ACTUALLY GROWN TO HATE THE VERY EXISTENCE OF: ALCOHOLIC BEVERAGES; NARCOTICS; DRUGS; AND TOBACCO PRODUCTS. I DO NOT WANT ANY OF THAT CRAP -- NOR THOSE DEALING, MANUFACTURING, USING, OR UNDER THE INFLUENCE OF ANY SUCH SUBSTANCES ANYWHERE AROUND ME.

—FOR WHAT IS NOW APPROXIMATELY ONE YEAR AND FOUR MONTHS, "I.S.U.D.T. REPRESENTATIVES" HAVE BEEN RELENTLESSLY "HOUNDING ME" TO JOIN AND PARTICIPATE IN THEIR "GROUPS." I KNOW THAT "I.S.U.D.T." IS THE ABBREVIATION FOR: INTEGRATED SUBSTANCE USE DISORDER TREATMENT.

—SAID "HOUNDING" ORIGINATED ON JANUARY 24, 2023. I WAS TRANSPORTED TO C.I.M'S. FACILITY "D" FOR AN ELECTRONIC INTERVIEW WITH [MEDICAL] L.C.S.W.: ALICE GRUTMAN. AFTER SHE INTRODUCED HERSELF, I IMMEDIATELY INFORMED HER THAT -- "AT THAT TIME" — I HAD 34 YEARS, 7 WEEKS, AND 3 DAYS OF PERFECT SOBRIETY — AND THAT I DID NOT HAVE ANY SUBSTANCE ISSUES. MS. GRUTMAN THEN WENT "ON A TANGE" ABOUT "OTHER THINGS" THAT I.S.U.D.T. "TAUGHT." THE WAY THAT SHE "WENT ON AND ON AND ON," IT APPEARED TO ME THAT MY LONG-TERM SOBRIETY MEANT NOTHING TO HER — THAT HER EXPLICIT GOAL WAS TO "SIGN ME UP." SEVERAL TIMES, I TOLD HER THAT I WAS NOT INTERESTED. FINALLY, THE "INTERVIEW" ENDED. I SIGNED A REFUSAL. IT SHOULD BE NOTED THAT I HAVE A "PRINT-OUT" OF THAT MEETING. MS. GRUTMAN LIED ON THE RECORD: [1] SHE STATED THAT I SAID -- "I WENT TO A PROGRAM IN 1998 DRUNK AS 5 MEN....." [THOSE WORDS CONSTITUTE 2 LIES — [A] I CONCISELY TOLD HER THAT "I STAGGERED INTO JANUS DETOX IN SANTA CRUZ ON DECEMBER 3, 1988, AT 6:45 P.M." [B] "DRUNK ENOUGH FOR 5 PEOPLE" — I NEVER DID AND NEVER WOULD 'CALL MYSELF A MAN.' I AM TRANSGENDER — WHICH MS. GRUTMAN WAS FULLY AWARE OF. SHE WENT ON TO ENTER EXTREMELY PREJUDICIAL INFORMATION INTO HER "REPORT" BY STATING: "LCSW PROVIDED PSYCHOEDUCATION ABOUT FENTANYL BEING CUT INTO VARIOUS SUBSTANCES AND THE RISK OF OVERDOSE." THERE WAS NO NEED FOR HER TO SAY THAT. DURING THE INTERVIEW, I HAD EXPLICITLY TOLD HER THAT I NEVER EVEN EXPERIMENTED WITH ANY NARCOTICS / "MEMBER OF THE OPIOID FAMILY" OR SYNTHETICS. I FURTHER TOLD HER THAT I NEVER "WAS A USER OF METHAMPHETAMINE, OTHER "HARD DRUGS," AND THAT I NEVER INJECTED ANYTHING INTO MY BODY MY ENTIRE LIFE. HER STATEMENT -- "PATIENT STATED THAT HE UNDERSTOOD" — IS ALSO A LIE. I TOLD HER THAT "SUCH ADMONITIONS ARE UNNECESSARY SINCE I NEVER EVEN TRIED THAT CRAP." VERBIAGE "SUCH AS THAT" CASTS ME IN AN UNFAIR, NEGATIVE MANNER TO ANYONE READING SUCH -- ESPECIALLY BOARD MEMBERS.

—SAID "HOUNDING" CONTINUED ON AUGUST 8, 2023. I WAS SUMMONED TO C.I.M'S. FACILITY "C" "COTTAGE CLINIC" FOR AN IN-PERSON INTERVIEW WITH [MEDICAL] L.C.S.W.: GRACIELA ROMERO. "AT THE VERY BEGINNING," I INFORMED MS. ROMERO THAT -- "AT THAT TIME" — I HAD 34 YEARS, 8 MONTHS, AND 4 DAYS OF PERFECT SOBRIETY -- AND THAT I DID NOT HAVE ANY "SUBSTANCE ISSUES." MY DECLARATION OF LONG-TERM SOBRIETY WAS TOTALLY DISREGARDED BY MS. ROMERO. SHE WENT ON TO ATTEMPT TO GET ME TO AGREE TO PSYCHOTROPIC MEDICATION -- WHICH I ADAMANTLY REFUSED — VERBALLY CITING STATE AND FEDERAL LAW THAT GUARANTEE MY RIGHT TO REFUSE MEDICATION[S]. SHE THEN EMBARKED UPON A "SPIEL" PERTAINING TO THE "MANDATORY STATUS" OF I.S.U.D.T.. I EXPLICITLY INFORMED HER THAT I CONSIDERER "I.S.U.D.T'S. OVERTURES" TO BE HARASSMENT -- AND THAT IF SUCH CONTINUED — I WOULD UNDERTAKE APPROPRIATE LEGAL ACTION. [I HAVE A "PRINT-OUT" OF HER REPORT AS WELL]. MS. ROMERO ALSO LIED: "DRUG OF CHOICE: MARIJUANA CIGARETTES. LAST USE: DECEMBER 4TH. 1988." "DECEMBER 4TH. 1988," IS A LIE. I TOLD HER THAT "I SMOKED MY LAST JOINT IN EARLY APRIL OF 1988." ON DECEMBER 4, 1988, I WAS WAKING UP TO MY FIRST DAY OF SOBRIETY IN JANUS DETOX IN SANTA CRUZ!!! HER REPORT ALSO CONTAINS UNNECESSARY, PREJUDICIAL VERBIAGE: "EDUCATION PROVIDED: LCSW EDUCATED PATIENT ON THE RISKS OF OVERDOSE AND CONTINUED USE OF SUBSTANCES, IN ADDITION TO EDUCATION REGARDING WAYS TO APPROPRIATELY ASK FOR HELP/SUPPORT VIA THE 7362 PROCESS. PT WAS ALSO ADVISED OF THE POTENTIAL FOR SUBSTANCES TO BE KNOWINGLY/ UNKNOWINGLY LACED WITH FENTANYL WHICH FURTHER ELEVATES THE RISK OF ACCIDENTAL OVERDOSE AND/OR DEATH." ONCE AGAIN, DURING THE "INTERVIEW, I HAD EXPLICITLY TOLD HER THAT I NEVER EVEN EXPERIMENTED WITH ANY NARCOTICS / "MEMBER OF THE OPIOID FAMILY" / SYNTHETICS. I FURTHER TOLD HER THAT I NEVER "WAS A USER OF METHAMPHETAMINE, OTHER "HARD DRUGS"/ AND THAT I NEVER INJECTED ANYTHING INTO MY BODY MY ENTIRE LIFE. THAT SPEECH WAS UNNECESSARY. AGAIN, "VERBIAGE SUCH AS THAT" CASTS ME IN AN UNFAIR, NEGATIVE MANNER TO ANYONE READING SUCH -- ESPECIALLY BOARD MEMBERS.

—IT IS EVIDENT THAT MY LONG-TERM SOBRIETY / THE TRUTH — MEANT NOTHING TO MS. GRUTMAN OR MS. ROMERO. THEIR GOAL WAS TO "ENROLL ME IN I.S.U.D.T. BY WHATEVER MEANS WERE NECESSARY — WHICH SUBSEQUENTLY OCCURRED ON AUGUST 21,

2023. I WAS "VERY UPSET." AT FIRST, I REFUSED TO ATTEND "THE CLASSES." ON AUGUST 30, 2023, 'I WAS ISSUED A COUNSELING WRITE UP BY C.O. J. VELAZQUEZ.' SUBSEQUENTLY, I WOULD GO TO THE "CLASSROOM," SIGN IN, AND LEAVE. SINCE I WAS NOT PHYSICALLY ATTENDING, I WAS "AGAIN WRITTEN UP" ON SEPTEMBER 13, 2023, BY C.O. VELAZQUEZ. THAT "WRITE UP" WAS AN ADMINISTRATIVE "115." SUBSEQUENTLY, I PHYSICALLY ATTENDED THE CLASSES IN ORDER TO AVOID ANY FURTHER "WRITE UPS." HOWEVER, I HAVE STEADFASTLY REFUSED TO "PARTICIPATE IN CLASS ACTIVITIES." "I OCCUPY THE SEAT -- PERIOD."

—IT IS IMPORTANT TO TAKE NOTICE OF A STATEMENT THAT C.O. VELAZQUEZ MADE IN BOTH THE 'COUNSELING CHRONO AND THE ADMINISTRATIVE 115:' (QUOTE) "PARTICIPANTS WHO ARE **MEDICALLY REFERRED** AND DETERMINED TO BE AT RISK FOR SUBSTANCE USE DISORDER (SUD) RELATED HARMS WILL BE PLACED INTO EITHER THE CBI-INTENSIVE OUTPATIENT OR CBI-OUTPATIENT PROGRAM." (END QUOTE).

—THAT STATEMENT INSPIRED ME TO REQUEST AN "OLSON REVIEW" OF MY MEDICAL FILE -- AND TO REQUEST "PRINT-OUTS" OF ANYTHING PERTAINING TO "SUBSTANCES" AND/OR I.S.U.D.T.. I SUBSEQUENTLY RECEIVED '28 PAGES OF "REPORTS"' THAT WERE "RIDDLED" WITH FALSE INFORMATION AND "EXTREMELY PREJUDICIAL REMARKS" BY PERSONNEL "CONNECTED TO MEDICAL." I HAVE ALREADY "TOUCHED ON SOME OF THESE 'DAMAGING REPORT ENTRIES" THAT WERE MADE BY MS. GRUTMAN AND MS. ROMERO. THERE IS MUCH MORE. ANYONE PERUSING "THOSE ITEMS" WOULD BE NATURALLY LED TO ASSUME THAT I HAVE "SERIOUS PROBLEMS." LIES AND PREJUDICIAL "COMMENTS" WERE CREATED -- THEN UTILIZED BY "PERSONNEL CONNECTED TO C.C.H.C.S. (MEDICAL)" TO REFER ME TO "THOSE CLASSES." WHEN READING THOSE "REPORTS," IT BECOMES READILY CLEAR THAT "NEXT TO NO MENTION" IS MADE REGARDING MY "THREE PLUS" DECADES OF SOBRIETY -- NOR AM I GIVEN **ANY** POSITIVE RECOGNITION OF ANY NATURE IN ANY WAY, SHAPE, OR FORM. IT ALMOST SEEMS LIKE "THESE PEOPLE" DO NOT WANT MY "THREE PLUS DECADES OF SOBRIETY" TO EXIST BECAUSE THEIR OWN AGENDA IS ALL THAT MATTERS.

—THIS IS A CIVIL MATTER. ACCORDINGLY, I AM NOT GOING TO DISCUSS MY CRIMINAL CASE IN DETAIL. FOR THE RECORD, I AM "STILL FIGHTING MY CONVICTION." HOWEVER, I.S.U.D.T. STAFF HAVE "INVOLVED MY SENTENCE BY REFERENCE." THEREFORE, I HAVE THE FOLLOWING TO SAY: FACILITY "C" FACILITATOR MOORE TOLD ME IN OCTOBER, 2023, THAT IT IS IN C.D.C.R. RECORDS THAT I WAS "GOING TO RECEIVE A COMPASSIONATE RELEASE IN 2024." "C.C.1." ANDERSON TOLD ME THAT THAT WAS FALSE. MR. ANDERSON TOLD ME THAT I MIGHT 'APPEAR BEFORE THE BOARD IN 2027, BUT THAT WAS NOT DEFINITE.' "IN MARCH OF THIS YEAR," I RECEIVED A NOTICE OF MINIMUM ELIGIBLE PAROLE DATE, UPDATE -- DECEMBER 24, 2079. SEVERAL I.S.U.D.T. STAFF HAVE TOLD ME THAT I.S.U.D.T. CLASSES ARE VALUABLE REGARDING 'PAROLE PREPARATION.' [MY SENTENCE IS 110 YEARS-TO-LIFE. MY ORIGINAL ABSTRACT OF JUDGMENT FROM THE COURT "LISTS MY RELEASE DATE AS: JUNE 24, **2111**." THAT "WOULD MAKE ME 160 YEARS OLD." "THE 2079 DATE WOULD MAKE ME 128 YEARS OLD"]. 'I HAVE NOTHING TO "PREPARE FOR."' I AM CURRENTLY 73 YEARS OLD. THUS, THERE EXISTS NO VALID JUSTIFICATION BY I.S.U.D.T. PERSONNEL THAT "I NEED PAROLE PREPARATION."

ADDITIONALLY, MY C.S.R.A. SCORE IS "ALL ONES" -- THE LOWEST OF LOW. IF I WERE TO BE RELEASED, SOMEHOW, I ALREADY KNOW HOW TO PROPERLY LIVE -- I DON'T NEED I.S.U.D.T. "TO TELL ME HOW TO DO SO." I HAD A GOOD, SOBER LIFE AND A RESPECTABLE BUSINESS -- WHICH WERE WRONGFULLY TAKEN. EVEN AT MY AGE, I KNOW HOW "TO REBUILD."

—FOR THE RECORD, I "HAVE A SUBSTANTIAL AMOUNT OF STRESS, ANXIETY, AND DEPRESSION." I AM A TRANSGENDER PERSON. I HAVE **VOLUNTARILY** ENGAGED "IN A HOST" OF SESSIONS WITH MENTAL HEALTH PERSONNEL. I HAVE A FILE CONTAINING "PRINT-OUTS" OF ALL "BUT THE LAST TWO SESSIONS." "THAT FILE FOLDER IS NEARLY ONE INCH THICK." THUS, I AM ENGAGING IN THERAPY THAT IS VERY BENEFICIAL - "ONE ON ONE." I DON'T NEED GROUPS. FURTHERMORE, "ONE ON ONE" THERAPY ENSURES ME FULL CONFIDENTIALITY REGARDING MY CONCERNS AND ISSUES.

—FINALLY, AS IS KNOWN, I APPEALED MY FORCED PLACEMENT IN I.S.U.D.T. CLASSES. I 'STARTED AT THE INSTITUTIONAL LEVEL ON OCTOBER 23, 2023.' THE APPEAL WAS DENIED ON ("CLOSING DATE") DECEMBER 28, 2023. I 'REFILED TO C.C.H.C.S.' ON JANUARY 16, 2024.' C.C.H.C.S.' MAIN HEADQUARTERS DENIED MY UPDATED APPEAL ON ("CLOSING DATE") MARCH 22, 2024. BOTH "DENIALS" WERE SHEER RHETORIC AND PATRONIZING VERBIAGE. THE ISSUES THAT I PRESENTED WERE "TALKED AROUND" AND UNADDRESSED. THE ALLEGATIONS THAT I PRESENTED [SUPPORTED BY DOCUMENTARY EVIDENCE] PERTAINING TO THE FALSE/EXTREMELY PREJUDICIAL INFORMATION REPEATEDLY ENTERED INTO MY MEDICAL FILE -- WERE NOT DIRECTLY RESPONDED TO -- NO DENIAL[S] WERE PROFFERED -- NOTHING. HOWEVER, "HEADQUARTERS TERMINATED THEIR RESPONSE WITH ONE "POSITIVE SENTENCE:"" "THIS DECISION EXHAUSTS YOUR ADMINISTRATIVE REMEDIES."

—I WANT TO BE REMOVED FROM THE CURRENT I.S.U.D.T. GROUP THAT I WAS FORCED INTO. I CAN'T STAND IT. "MAKING ATTENDANCE MANDATORY UNDER THE THREAT OF BEING SUBJECTED TO ONGOING "C.D.C.R. DISCIPLINARY PROCEDURES" IS UNJUST AND ILLEGAL. THERE IS: U.S. CONSTITUTIONAL; U.S. SUPREME COURT; AND STATE AUTHORITY THAT APPLY. IF NECESSARY, I HAVE PREPARED TO -- AND WILL -- FILE A FEDERAL CIVIL LAWSUIT.

[DATED]: APRIL 8, 2024

[DRAFTED BY]:

James Haag

WHEN I HAD FINISHED READING "THE SUBJECT MATTER WITHIN PGS. [21] AND [22]" TO MS. ROMERO, SHE SIMPLY STATED: (PARAPHRASING) -- I APPRECIATE ALL THAT YOU HAVE SHARED. HOWEVER, I DO NOT HAVE THE AUTHORITY TO REMOVE YOU FROM THE GROUP. THE SELECTION OF PARTICIPANTS AND/OR REMOVAL FROM A GROUP IS "CUSTODY'S RESPONSIBILITY -- NOT MEDICAL'S." C.C.III STROBELT "IS IN CHARGE." PUT IN A WRITTEN REQUEST TO TALK TO HIM. [I HAVE BEEN TRYING TO 'SEE C.C.III STROBELT FOR OVER 8 MONTHS.' SEE PG.[20],L.8 (begin with: "C.C.III") - L.12, SUPRA, AND ATTACHMENT 3]. "WITH THAT," THE "TELECONFERENCE WITH SACRAMENTO" ENDED. I WAS TRANSPORTED 'BACK TO FACILITY "B".'

[iv] WITHIN THE 28 PAGES OF 'MEDICAL DOCUMENTS THAT SPAN JANUARY - AUGUST, 2023,' THERE ARE SOME PAGES THAT ARE STRICTLY MEDICAL REPORTS THAT ARE NOT "CONNECTED TO I.S.U.D.T.." HOWEVER, "SOME OF THE "ITEMS"" THAT WERE PREVIOUSLY DISCUSSED ARE ALSO WITHIN THOSE DOCUMENTS. THEY ARE:

QUOTES RE. DOCTOR ELMAN'S "FORMER HEAVY TOBACCO SMOKER" ENTRY: [ATTACHMENT 2]: PGS.: 4;5;12;13; "HEPATITIS C" -- 4;12; "HEPATITIS B" -- 5;13. ALL MERELY QUOTE "DOCTOR ELMAN'S ORIGINAL ENTRIES."

[v] FINALLY, ON FEBRUARY 10, 2023, I WAS SUMMONED TO THE ""C"-YARD" CLINIC FOR A ""PRE-RELEASE" SUBSTANCE USE DISORDER" APPOINTMENT WITH R.N., OUSMAN CEESAY. I IMMEDIATELY INFORMED HIM THAT -- "AT THAT TIME," I HAD 34 YEARS, 2 MONTHS, AND 6 DAYS OF PERFECT SOBRIETY -- AS WELL AS: 33 YEARS, 8 MONTHS, 1 WEEK, AND 3 DAYS 'OF BEING TOBACCO FREE.' [I TOLD HIM THAT I WAS 'NOWHERE CLOSE TO RELEASE']. I THEN LEFT THE ""C"-YARD" CLINIC. SUBSEQUENTLY R.N. CEESAY 'AUTHORED THE FOLLOWING:'

(QUOTE)"SUD PRE-RELEASE SCREENING PLAN EDUCATION PROVIDED: COMPLIANCE WITH APPOINTMENTS AND PROGRAMMING. COMPLIANCE WITH LABS AND DIAGNOSTICS. ENCOURAGE HCV, HIV, & OTHER SEXUALLY TRANSMITTED DISEASE TESTING, RISK OF CONTINUOUS USE, MEDICATION COMPLIANCE, & AWARENESS, AND MANAGING TRIGGERS AND CRAVINGS, SUBMIT FORM 7362 FOR HEALTH CARE CONCERNS. EDUCATION RESPONSE: PATIENT VERBALIZED UNDERSTANDING OF WRITTEN / VERBAL INSTRICTIONS." (END QUOTE).

**ALL** "OF THE ABOVE" ARE PERFIDIOUS. **I NEVER** WAS TOLD **ANY** OF "THE ABOVE" -- NOR 'WAS I PRESENT "TO VERBALIZE" ANY SUCH UNDERSTANDING.' R.N. CEESAY BLATANTLY LIED.

THE TEXT OF THE 2/10/2023, ["MEDICAL"] "APPOINTMENT" IS WITHIN ATTACHMENT 2'S PG. 27. ALL ELSE PERTAINING TO R.N. CEESAY'S "REPORT" WILL BE WITHIN: **ARGUMENT / POINTS & AUTHORITIES**, INFRA.

**CLAIM I'S FACTS ARE CONCLUDED**

**STATEMENT OF FACTS**

**[ii.]** **CLAIM II**

**1)** **NOTICE**

THE CONSTRUCTIVE FACTS THAT COMPRISE **CLAIM I** -- AS SET FORTH WITHIN **"THE FORM'S"** PGS. 3-3-C. -- AS WELL AS [THIS] **MEM. OF P'S & A'S** PGS. [14],L.2 - [24],L.4 (ABOVE), SUPRA, [INCORPORATING [MY] **"DECLARATION RE. EXTENSIVE LONG-TERM SOBRIETY"** -- **"MEM."** PGS. [4] - [13], SUPRA, **ARE THE SAME CONSTRUCTIVE FACTS THAT EQUALLY APPLY TO CLAIM II.** ALL 'PREVIOUS FACTS' "WHOSE LOCATIONS" HAVE BEEN IDENTIFIED, ABOVE, SUPRA, ARE HEREBY INCORPORATED BY REFERENCE FOR THE PURPOSES OF **CLAIM II** AS IF SUCH WERE REDRAFTED IN THEIR ENTIRETY, FORTHWITH.

**2)** **CLAIM II**

[NAMED] C.C.H.C.S. PERSONNEL 'WHOM HAVE ACCESSED MY MEDICAL FILE' AS REVEALED THROUGHOUT **CLAIM I'S FACTS**, SUPRA, ARE GUILTY OF **LIBEL, SLANDER, AND CHARACTER ASSASSINATION** DUE TO 'NUMEROUS ENTRIES BEING:' 'OUTRIGHT FALSE;' NEGATIVE, OPINIONATED, EXTREMELY PREJUDICIAL, UNNECESSARY "COMMENTS;" [NEGATIVE] 'PARTIAL INFORMATION' / "KEY," KNOWN POSITIVE INFORMATION OMITTED; 'PLACING NONEXISTENT, CURRENTLY UNCONFIRMED, OR RESOLVED "ITEMS" INTO "ACTIVE PROBLEMS COLUMNS."

**3)** **CLAIM II'S FACTS ARE CONCLUDED**

**ALL ELSE" IS RESERVED FOR: ARGUMENT / POINTS & AUTHORITIES**

/////

/////

/////

/////

[E] **ARGUMENT / POINTS & AUTHORITIES**

1. **JURISDICTION**

JURISDICTION OF FEDERAL COURT IS JUST AND PROPER BECAUSE ANY FURTHER ATTEMPT[S] TO AMICABLY RESOLVE THE ISSUES CONTAINED IN THIS **ACTION** "AT STATE LEVEL" WOULD BE AN EXERCISE IN FUTILITY.....

...42 U.S.C. §1983 THE PUBLIC HEALTH AND WELFARE (CIVIL RIGHTS -- §§1981 - 2000h-6 > GENERALLY §§1981 - 1996b).

§1983. CIVIL ACTION FOR DEPRIVATION OF RIGHTS:

EVERY PERSON WHO, UNDER COLOR OF ANY STATUTE, ORDINANCE, REGULATION, CUSTOM, OR USAGE, OF ANY STATE OR TERRITORY OR THE DISTRICT OF COLUMBIA, SUBJECTS, OR CAUSES TO BE SUBJECTED, ANY CITIZEN OF THE UNITED STATES OR OTHER PERSON WITHIN THE JURISDICTION THEREOF, TO THE DEPRIVATION OF ANY RIGHTS, PRIVILEGES, OR IMMUNITIES SECURED BY THE CONSTITUTION AND LAWS, SHALL BE LIABLE TO THE PARTY INJURED IN AN ACTION AT LAW, SUIT IN EQUITY, OR OTHER PROPER PROCEEDING FOR REDRESS.

GREENWOOD V PEACOCK, 384 U.S. 808 (1966); BAKER V McCOLLAN, 443 U.S. 137 (1979).

THROUGH CIVIL RIGHTS STATUTES, CONGRESS INTENDED TO ENFORCE PROVISIONS OF [THE] **FOURTEENTH AMENDMENT** AGAINST THOSE WHO CARRY BADGE OF AUTHORITY OF STATE AND REPRESENT IN SOME CAPACITY, WHETHER THEY ACT IN ACCORDANCE WITH THEIR AUTHORITY **OR MISUSE IT.**

SCHEUER V RHODES, 416 U.S. 232 (1974); RICHARDSON V McKNIGHT, 521 U.S. 399 (1997).

CIVIL RIGHTS ACT (42 U.S.C. §1983), GIVING RIGHT OF ACTION AGAINST PERSON(S) WHO, UNDER COLOR OF STATE LAW, CUSTOM, OR USAGE, SUBJECTS ANOTHER TO DEPRIVATION OF ANY RIGHTS, PRIVILEGES, OR IMMUNITIES **SECURED BY FEDERAL CONSTITUTION** HAS SEVERAL PURPOSES: (1) IT OVERRIDES CERTAIN KINDS OF STATE LAWS; (2) IT PROVIDES REMEDY WHERE STATE LAW IS INADEQUATE; AND (3) IT PROVIDES **FEDERAL REMEDY** WHERE STATE REMEDY, THOUGH ADEQUATE IN THEORY, **IS NOT** AVAILABLE IN PRACTICE.

MONROE V PAPE, 365 U.S. 167 (1961); DAMICO V CALIFORNIA, 389 U.S. 416 (1967); MITCHUM V FOSTER, 407 U.S. 225 (1972); DISTRICT OF COLUMBIA V CARTER, 409 U.S. 418 (1973).

CIVIL RIGHTS ACT OF 1871 (42 U.S.C. §1983) MUST BE GIVEN LIBERAL CONSTRUCTION.

LAKE COUNTY ESTATES INCORPORATED V TAHOE REGIONAL PLANNING AGENCY, 440 U.S. 391 (1979).

2. **"STATE LEVEL" EXHAUSTION**

I APPEALED THE ISSUES CONTAINED WITHIN THIS ACTION "THROUGH THE HIGHEST LEVEL" SEE: "THE FORM:" PG.3, [ITEM]5 / PG.3-B.,L.27-31; ATTACHMENT 1 ("INSTITUTIONAL LEVEL FILING"); ATTACHMENT 1-A ("INSTITUTIONAL LEVEL RESPONSE"); ATTACHMENT 5 (MY

REPLY TO [THE] "INSTITUTIONAL LEVEL RESPONSE); AND, ATTACHMENT 5-A (C.C.H.C.S.' "MAIN HEADQUARTERS'" "RESPONSE"). [PLEASE NOTE ESPECIALLY: "THEIR RESPONSE'S" 'CLOSING SENTENCE' -- (PG.2,L.[36]) "THIS DECISION EXHAUSTS YOUR ADMINISTRATIVE REMEDIES"]. 'SIMPLY PUT:' I FOLLOWED THE RULES AND GAVE THE STATE THEIR CHANCE.

3. **CLAIM I DISCUSSION**

[a] FROM "THE MOMENT OF INCEPTION," C.D.C.R'S. 'MAIN HEADQUARTERS' -- AT THE BEHEST OF / IN COLLUSION WITH -- C.C.H.C.S.' 'MAIN HEADQUARTERS' -- ENACTING **MANDATORY** ATTENDANCE OF INTEGRATED SUBSTANCE USE DISORDER **TREATMENT** GROUPS -- ENCOMPASSING ("SPLINTER GROUPS") DIVISIONAL REHABILITATIVE PROGRAMMING AND COGNITIVE BEHAVIORAL INTERVENTION - CLEARLY VIOLATED THE U.S. CONSTITUTION'S FOURTEENTH AMENDMENT, [CONTROLLING] LAW AS DETERMINED BY THE U.S. SUPREME COURT, AS WELL AS "CALIFORNIA AUTHORITY."'

[b] IN AND OF THEMSELVES, THESE GROUPS ARE NOT UNCONSTITUTIONAL OR ILLEGAL. THEIR MISSION IS TO PROVIDE 'THERAPY IN A GROUP ATMOSPHERE.' I.S.U.D.T. AND ITS "SPLINTER GROUPS" WERE CREATED BY C.C.H.C.S. -- AND "OFFICIALLY LAUNCHED" BY C.C.H.C.S. ON JANUARY 21, 2020. HOWEVER, "I.S.U.D.T'S. MEDICAL CREATORS" ELECTED TO ESTABLISH THESE 'SELF-HELP GROUPS **AS TREATMENT PROGRAMS**.' SINCE **TREATMENT** IS THE EMPHASIS OF I.S.U.D.**T.**; D.R.P.; AND C.B.I. GROUPS (E.G.: THOSE THAT ARE 'PLACED IN THESE GROUPS ARE ASKED TO PROVIDE **WRITTEN TREATMENT PLANS**'). ACCORDINGLY, **"TREATMENT"** IS SUBJECT TO THE RULE OF "LAW OF THE LAND" (THE U.S. CONSTITUTION); LAW AS DETERMINED BY THE UNITED STATES SUPREME COURT; AND CALIFORNIA'S 'STATUTES AND RULES.'

> "A MENTALLY COMPETENT ADULT HAS A **RIGHT** UNDER BOTH THE COMMON LAW AND THE **FOURTEENTH AMENDMENT** TO **REFUSE** MEDICAL TREATMENT."
> CRUZAN BY CRUZAN V DIRECTOR, MISSOURI DEPARTMENT OF HEALTH, 497 U.S. 261, 277-278 (1990).
> TREATMENT TO WHICH THE PATIENT HAS NOT CONSENTED MAY CONSTITUTE AN ASSAULT AND/OR BATTERY. **CRUZAN**, 497 U.S. AT 269,270 (CITING W. PAGE KEETON ET. AL., PROSSER AND KEETON ON THE LAW OF TORTS, §9, AT 39-42 (5TH. EDITION, 1984).

THE SUPREME COURT, IN HOLDING THAT **THERE IS A RIGHT TO REFUSE TREATMENT** IN THE CRUZAN CASE, [497 U.S., AT 277], RELIED ON TWO PRISON CASES: >>>>>>>>>>>>>>>>

WASHINGTON V HARPER, 497 U.S. 210,221 (1989) -- [HOLDING THAT PRISONERS HAVE A "SIGNIFICANT LIBERTY INTEREST IN AVOIDING THE ADMINISTRATION OF ANTIPSYCHOTIC DRUGS"]; AND,

VITEK V JONES, 445 U.S. 480,494 (1980) -- [HOLDING THAT TRANSFER TO A MENTAL HOSPITAL, COUPLED WITH **MANDATORY** BEHAVIOR MODIFICATION **TREATMENT** IMPLICATED A CONSTITUTIONAL LIBERTY INTEREST.

**[TREATMENT (noun)**

ADJUSTMENT, ANALYSIS, ARRANGEMENT, CONSIDERATION, CURE, DESIGN, EXAMINATION, EXECUTION, HANDLING, INVESTIGATION, MANAGEMENT, MODIFICATION, PROCESS, PROCESSING, STUDY, TECHNIQUE, THERAPY, TRANSACTION, WAY.
ASSOCIATED CONCEPTS: INHUMAN TREATMENT; **MEDICAL TREATMENT**.
WILLIAM C. BURTON LEGAL THESAURUS].

**[TREATMENT (noun)**

THE ACT OR MANNER OR AN INSTANCE OF TREATING SOMEONE OR SOMETHING; ALSO: A SUBSTANCE **OR MANNER** USED IN TREATING. MERRIAM-WEBSTER DICTIONARY.

[THERE CAN BE NO CLAIM RENDERED THAT **TREATMENT** IS LIMITED TO MEDICAL AND / OR PHYSICAL ONLY APPLICATIONS].

[c] CLAIMS OF **COMPELLED TREATMENT** ARE USUALLY ASSESSED UNDER THE:

TURNER V SAFELY, 482 U.S. 78, 107 S. CT. 2254 (1987) -- STANDARD / "REASONABLE RELATIONSHIP." [THE SUPREME COURT PREVIOUSLY SAID: "[T]HERE IS NO IRON CURTAIN DRAWN BETWEEN THE CONSTITUTION AND THE PRISONS OF THIS COUNTRY" -- WOLFF V McDONNELL, 418 U.S. 539,555-556 (1974).

IN TURNER V SAFELY, THE SUPREME COURT HELD THAT "WHEN A PRISON REGULATION IMPINGES ON INMATES' CONSTITUTIONAL RIGHTS, THE REGULATION IS VALID IF IT IS **REASONABLY RELATED** TO LEGITIMATE PENOLOGICAL INTERESTS...." TURNER, AT 89. (ACCORD) O'LONE V ESTATE OF SHABAZZ, 482 U.S. 342,349 (1987).

THERE ARE SEVERAL FACTORS THAT DETERMINE WHETHER A REGULATION IS REASONABLE:

1) [WHETHER THERE IS] A "VALID RATIONAL CONNECTION" BETWEEN THE PRISON REGULATION AND THE LEGITIMATE GOVERNMENTAL INTEREST PUT FORWARD TO JUSTIFY IT... [A] REGULATION CANNOT BE SUSTAINED WHERE THE LOGICAL CONNECTION BETWEEN THE REGULATION AND THE ASSERTED GOAL IS SO REMOTE AS TO RENDER THE POLICY **ARBITRARY OR IRRATIONAL**. MOREOVER THE GOVERNMENTAL OBJECTIVE MUST BE A LEGITIMATE AND NEUTRAL ONE...

2) ...[W]HETHER THERE ARE ALTERNATIVE MEANS OF EXERCISING THE RIGHT THAT REMAIN OPEN TO PRISON INMATES...

3)...[T]HE IMPACT ACCOMODATION OF THE ASSERTED CONSTITUTIONAL RIGHT WILL HAVE ON GUARDS AND OTHER INMATES, AND ON THE ALLOCATION OF PRISON RESOURCES GENERALLY ....WHEN ACCOMODATION OF AN ASSERTED RIGHT WILL HAVE A SIGNIFICANT "RIPPLE EFFECT" ON FELLOW INMATES OR ON PRISON STAFF, COURTS SHOULD BE PARTICULARLY DEFERENTIAL TO THE INFORMED DISCRETION OF PRISON OFFICIALS...

4)...[T]HE ABSENCE OF READY ALTERNATIVES IS EVIDENCE OF THE REASONABLENESS OF A PRISON REGULATION...BUT IF AN INMATE CLAIMANT CAN POINT TO AN ALTERNATIVE THAT FULLY ACCOMODATES THE PRISONER'S RIGHTS AT *de minimis* [MINIMAL] COST TO VALID PENOLOGICAL INTERESTS, A COURT MAY CONSIDER THAT AS INTEREST THAT THE REGULATION **DOES NOT SATISFY** THE REASONABLE RELATIONSHIP STANDARD. TURNER, @ 89-91

---"REASONABLY RELATED TO LEGITIMATE PENOLOGICAL INTERESTS..." FORCING EVERY INMATE IN EVERY STATE FACILITY TO UNDERGO "MONTH AND MONTHS" OF **MANDATORY** "SUBSTANCE USE DISORDER" 'GROUP THERAPY' **IS NOT** A LEGITIMATE PENOLOGICAL INTEREST. FIRST OF ALL, EVERY INMATE STATEWIDE **IS NOT** A "SUBSTANCE [AB]USER." "LUMPING" THE ENTIRE STATE'S INMATE POPULATION INTO ONE CATEGORY -- THEN FORCING ALL -- UNDER THREAT OF PROGRESSIVE C.D.C.R. DISCIPLINE FOR REFUSING SUCH "GROUP THERAPY" -- IS UNJUST AND UNFAIR. I 'SUBSTANTIALLY RESENT BEING FORCED INTO I.S.U.D.T..' I'M ANGRY. I'M FRUSTRATED. I AM FAR FROM BEING ALONE. I PERSONALLY KNOW "OF DOZENS" OF INMATES THROUGHOUT FACILITY "B" "THAT HAVE THE SAME ATTITUDES." CORRECTIONAL OFFICERS HAVE "TO DEAL WITH A LOT OF UNHAPPY INMATES" WHOM ARE EXTREMELY IRRITATED RE. BEING FORCED INTO I.S.U.D.T. OR ONE OF ITS "SPLINTER GROUPS." 'SELF-HELP GROUPS' SHOULD BE **VOLUNTARY**. THE PURPOSE OF I.S.U.D.T. AND ITS "SPLINTER GROUPS" IS COMMENDABLE -- TEACHING THOSE WHOM DO HAVE "SUBSTANCE AND INTERRELATED PROBLEMS" HOW TO LIVE A CLEAN, SOBER, MEANINGFUL, AND PRODUCTIVE LIFE. HOWEVER, EVERY INMATE DOES NOT NEED "THOSE TEACHINGS," AND SUCH SHOULD NOT BE FORCED. TO A DEGREE, "SUCH FORCING" ACTUALLY CREATES A HOSTILE ENVIRONMENT AND IS FAR FROM "BEING REASONABLY RELATED TO LEGITIMATE PENOLOGICAL INTERESTS."

---[1)-PG.[27],L.24-26½]---- THERE CAN BE NO CLAIM OF THERE BEING "A VALID RATIONAL CONNECTION BETWEEN THE PRISON REGULATION AND THE LEGITIMATE GOVERNMENT INTEREST PUT FORWARD TO JUSTIFY IT" FOR ONE **CONTROLLING REASON:** THE [SACRAMENTO] **REGULATION** MAKING THE ATTENDANCE OF I.S.U.D.T. AND ITS "SPLINTER GROUPS" **MANDATORY** STATEWIDE WAS UNCONSTITUTIONAL AND ILLEGAL "THE VERY SECOND THAT SAID

"REGULATION" 'WAS ENTERED INTO COMPUTERS AND PUT ON PAPER.' PLEASE SEE "RELATED LEGAL DISCUSSION" WITHIN PG.[26],L.5 - PG.[27],L.13, SUPRA. ADDITIONALLY C.D.C.R. AND C.C.H.C.S. FLAGRANTLY SNUBBED **CONTROLLING** STATE AUTHORITY -- CALIFORNIA CODE [OF] REGULATIONS - TITLE 15 - STATES: "MEDICAL **TREATMENT**, AND OR MEDICATION, **SHALL NOT** BE FORCED OVER THE OBJECTIONS OF A MENTALLY COMPETENT INMATE." C.C.R. TITLE 15 - §3999.210 (2023) (CITING: [CALIFORNIA PENAL CODE[S]] §§-2602, 5058, REFERENCE SECTIONS 2600, 2602, 5054 AND 7570 ET SEQ., P.C. §3200 ET. SEQ., PROBATE CODE; THOR V SUPERIOR COURT (ANDREWS) (1993) 21 CAL. RPTR. 2D 357; AND SECTIONS 4600 AND 4781.2 PROBATE CODE]. ACCORDINGLY, THERE CANNOT BE ANY "**VALID** RATIONAL CONNECTION" -- NOR **LEGITIMATE** "GOVERNMENTAL INTEREST" SINCE "C.D.C.R'S. AND C.C.H.C.S.' "HIERARCHIES IN SACRAMENTO" VIOLATED THE [U.S.] CONSTITUTION, LAW AS DETERMINED BY THE [U.S.] SUPREME COURT, AND CALIFORNIA'S RELATED AUTHORITIES. THE **MANDATORY VERBIAGE** IS BOTH ARBITRARY AND IRRATIONAL. FURTHERMORE, THERE CAN BE NO ASSERTION THAT THE **MANDATORY VERBIAGE** IS "LEGITIMATE AND / OR NEUTRAL."

---[2)-PG.[27],L.27½-28]---- "ALTERNATIVE MEANS" -- RETAIN THE AVAILABILITY OF I.S.U.D.T. AND ITS "SPLINTER GROUPS." SIMPLY REMOVE THE **MANDATORY ATTENDANCE OF ALL INMATES STATEWIDE VERBIAGE**. LET INMATES **VOLUNTEER**. (I 'KNOW FOR A FACT THAT C.I.M'S. FACILITIES "B" AND "C" HAVE **WAITING LISTS** OF INMATES **WANTING** TO ATTEND I.S.U.D.T. AND / OR ITS "SPLINTER GROUPS"). THERE IS NO NEED TO FORCE UNWANTED ATTENDANCE.

---[3)-PG.[28],L.1-3] --- THE **ACCOMODATION** RE. GUARDS AND OTHER INMATES WOULD BE **'100% POSITIVE.'** [EMPHASIS ADDED]. (1) FORCED ATTENDANCE OF I.S.U.D.T. AND ITS "SPLINTER GROUPS" HAS CREATED A HOSTILE ENVIRONMENT DUE TO ANGER, IRRITATION, FRUSTRATION, AND RESENTMENT; (2) GROUP FACILITATORS ARE CONSTANTLY SUBJECTED TO COMPLAINTS, INSULTS, AND "CUSSING OUTS" BY THOSE THAT DO NOT WANT "TO BE THERE;" AND (3) CORRECTIONAL OFFICERS HAVE THE ROLE OF ENFORCING ATTENDANCE AND INSTITUTING DISCIPLINARY PROCEEDINGS AGAINST INMATES WHOM REFUSE TO "ATTEND GROUP[S]" OR ENGAGE IN "ANY OTHER UNRULY, DISRUPTIVE, OR UNACCEPTABLE BEHAVIOR." **ELIMINATING**

**MANDATORY ATTENDANCE WOULD BE WELCOMED** BY ALL CORRECTIONS' [CUSTODY] STAFF, GROUP FACILITATORS, "THE FACILITATOR'S SUPERVISORS," AND INMATES. ANY "SIGNIFICANT RIPPLE EFFECT" **WOULD ONLY BE POSITIVE.** WHY? BECAUSE: THE "HOSTILE ENVIRONMENT" CREATED BY **FORCED** ATTENDANCE WOULD GO AWAY; FACILITATORS OF GROUPS WOULD ONLY HAVE ATTENDEES THAT WANT TO BE THERE -- THUS BAD ATTITUDES, ANGER, RESENTMENT, COMPLAINING, AND "CUSSINGS OUTS" WOULD CEASE TO OCCUR; CORRECTIONS STAFF WOULD NOT HAVE TO "PLAY TRUANT OFFICERS ANYMORE," C.D.C.R. DISCIPLINARY PROCEDURES WOULD BE UNNECESSARY BECAUSE ALL ATTENDING THE GROUPS WOULD **BE VOLUNTEERS**. PRISON RESOURCES WOULD NOT BE AFFECTED. "THE GROUPS" COULD STILL OPERATE **ON A VOLUNTARY BASIS**. THE ONLY FINANCIAL RESOURCE WOULD AFFECT THE COST TO C.D.C.R'S. AND C.C.H.C.S.' "HIERARCHIES" RE. REMOVING THE UNCONSTITUTIONAL AND ILLEGAL **MANDATORY ATTENDANCE REGULATION** "FROM **ALL** PUBLISHED SOURCES" IN ITS ENTIRETY. ---[4)-PG.[28],L.4-6] --- I HAVE SHOWN AN **EASY, READY ALTERNATIVE**. ACCORDINGLY, I RESPECTFULLY SUBMIT THAT THIS COURT MAY THEREBY CONSIDER THAT THE ILLEGAL AND UNCONSTITUTIONAL **MANDATORY ATTENDANCE VERBIAGE** DOES NOT SATISFY THE REASONABLE RELATIONSHIP STANDARD OF TURNER.

(d) **"ADMINISTRATIVE EFFORTS"**

I ATTEMPTED TO RESOLVE THESE ISSUES THROUGH THE C.C.H.C.S.' GRIEVANCE SYSTEM, I.S.U.D.T. AND ITS "SPLINTER GROUPS" WERE LAUNCHED **BY C.C.H.C.S. PERSONNEL** ON JANUARY 21, 2020. SEE "THE FORM," PG.3, 'QUESTION 5;'PG.3-B.,L.27-31; PG.4, 'QUESTION 5;' MEM. OF P'S & A'S, PG.[19],L.23,24,28; PG.[20],L.1-3; PG.[22], "--"PARAGRAPH 5; AND, PG.[25],L.25 - PG.[26],L.4, SUPRA. THESE "LOCATIONS" MAINLY LIST 'FILING LEVELS, FILING DATES, AND C.C.H.C.S.' "DECISIONS."' ATTACHMENTS 1 & 1-A. ARE MY INSTITUTIONAL LEVEL FILING AND [THE] INSTITUTIONAL LEVEL DECISION. ATTACHMENTS 5 & 5-A ARE MY REPLY TO THE INSTITUTIONAL LEVEL "DECISION," AND C.C.H.C.S.' MAIN HEADQUARTERS "DECISION." FOR PURPOSES OF THIS DISCUSSION, I WILL ONLY BE ADDRESSING "CERTAIN ITEMS" WITHIN THE "HEADQUARTER'S "DECISION.""

(NOTE): I HAVE "NUMBERED THE LINES" OF THE "DECISION" FOR EASIER REVIEW.

---

**"HEADQUARTERS' LEVEL RESPONSE"**

**[ATTACHMENT 5-A]**

"ISSUE: HEALTH RECORDS / DESCRIPTION: YOU ALLEGED FALSE, NEGATIVE INFORMATION WAS (AMEND HEALTH RECORDS)/ ENTERED INTO YOUR HEALTH RECORD IN ORDER TO PLACE YOU IN / THE ISUDT GROUP." [PG.1,L.[22],[23]].

SAID "FALSE, NEGATIVE INFORMATION" IS LOCATED WITHIN **ATTACHMENT 2** AND HAS BEEN "HEAVILY DIVULGED AND IDENTIFIED" WITHIN "THE FORM,"PG.3-B,L.5-20 / L.35-PG.3-C., L.1-14; [AS WELL AS] [THE] MEM. OF P'S & A'S PGS.: [2],L.8-14; [3],L.8-13 / L.16-18½; [5],L.1 - [7],L.26; [12],L.1 - [13],L.13; [14],L.13 - [19],L.17; [21] 'PARAGRAPHS 6 & 7;' [22] 'PARAGRAPH 2;' [AND] [23],L.10 - [24],L.3, SUPRA.

("DECISION")-PG.1,L.28 (C.C.R. CITE) "TITLE 15, SECTION 3486.1," [L.28-29 -- "AND WAS DEEMED NOT TO MEET THE DEFINITION OF STAFF MISCONDUCT AGAINST HEALTH CARE STAFF"].

**TITLE 15 -- §3486**

"3486 ALLEGATIONS OF STAFF MISCONDUCT TOWARD AN INMATE OR PAROLEE.

(a) RIGHT TO SUBMIT COMPLAINT ALLEGING STAFF MISCONDUCT:

(1) ANY PERSON CAN SUBMIT A COMPLAINT OF STAFF MISCONDUCT WHEN THEY BELIEVE DEPARTMENTAL STAFF HAVE ENGAGED IN BEHAVIOR THAT RESULTED IN A VIOLATION OF LAW, POLICY, REGULATION, OR PROCEDURE, **OR AN ETHICAL OR PROFESSIONAL STANDARD.**

(c) DEFINITIONS — FOR PURPOSES OF THIS ARTICLE, THE FOLLOWING DEFINITIONS SHALL APPLY:

(1) "ALLEGATION INQUIRY" REFERS TO THE PROCESS OF GATHERING RELEVANT FACTS AND EVIDENCE BY A LOCAL DESIGNATED INVESTIGATOR (LDI) CONCERNING A COMPLAINT THAT INVOLVES AN ALLEGATION OF STAFF MISCONDUCT."" [TITLE 15, 2023].

SECTION 3486 FULLY SUPPORTS ME. I ATTACHED MEDICAL DOCUMENTS TO BOTH THE INSTITUTIONAL AND HEADQUARTERS' GRIEVANCES. "THEY" ACTUALLY REFUSED TO PROCESS THOSE DOCUMENTS. [SUCH ARE THE SAME DOCUMENTS COMPRISING **ATTACHMENT 2**]. I WAS NEVER FORMALLY INTERVIEWED. I ASK: WHAT "INVESTIGATION?" I RESPECTFULLY CALL TO THIS HONORABLE COURT'S ATTENTION, THE **FACT** THAT NO C.C.H.C.S. PERSONNEL **DIRECTLY DENIED** MY ALLEGATIONS. THE ENTIRE "DECISION" IS RHETORICAL, PATRONIZING, AND TOTALLY FAILS **TO DIRECTLY ADDRESS** ANYTHING, WHATSOEVER.

("DECISION")-PG.2,L.7 -- (QUOTE) "I.S.U.D.T. GROUP ASSIGNMENTS ARE A CUSTODY FUNCTION." (END QUOTE). 'I TOOK "THEIR ADVICE" AS CONTAINED WITHIN L'S.8,9.' I

"SHOWED THE "DECISION" TO MRS. ROBLES -- CASE COUNSELOR 1 FOR SYCAMORE HALL -- MY CURRENT LOCATION. HER RESPONSE WAS IMMEDIATE AND WITHOUT HESITATION -- "THAT'S A BUNCH OF B___S___. THE PLACEMENT LISTS, GROUP TIMES, EVERYTHING -- IS 'DONE BY MEDICAL, NOT CUSTODY.' I HAVE 'TALKED TO A CORRECTIONAL LIEUTENANT, A SERGEANT, AND AT LEAST 7 DIFFERENT CORRECTIONAL OFFICERS WHOM HAVE **ALL** TOLD ME ESSENTIALLY THE SAME THING.' "ASSIGNMENT BEING A CUSTODY FUNCTION" IS BLATANTLY PERFIDIOUS.

("DECISION")-PG.2,L.10-18 -- "THE REFERENCED 'WRITTEN "CORRECT, AMEND, AND REMOVE" PROCESS" THAT IS ALLUDED TO HAS BEEN SUBMITTED "IN FULL FORMAL FORMAT" ON 3 SEPARATE OCCASIONS. **NONE** HAVE BEEN ACKNOWLEDGED OR RESPONDED TO. AS I HAVE CONCISELY IDENTIFIED, SUPRA, INFORMATION THAT IS: BLATANTLY FALSE; INCOMPLETE; BIASED / OPINIONATED / NEGATIVE; UNNECESSARY AND EXTREMELY PREJUDICIAL HAS BEEN BEING ENTERED INTO MY MEDICAL FILE -- "UNCHECKED FOR MANY YEARS." I ONLY 'REQUESTED AND RECEIVED 8 MONTHS WORTH OF RECORDS.' I SHUDDER OVER WHAT MY ENTIRE "FILE OF 2+ DECADES CONTAINS." "IN SO MANY WORDS," C.C.H.C.S. IS TELLING ME THAT THEY WILL "DO OR NOT DO WHATEVER THEY PLEASE." THE INFORMATION THAT I HAVE CONCISELY IDENTIFIED NEEDS TO BE DELETED, CORRECTED, OR FULLY COMPLETED. THAT "FILE" IS ACCESSIBLE TO "OTHERS" -- SUCH AS PAROLE BOARD COMMISSIONERS. THERE ARE NUMEROUS "ENTRIES" THAT ARE UNNECESSARY AND ARE EXTREMELY PREJUDICIAL. IF SUCH "ENTRIES" WERE PERUSED BY PAROLE BOARD COMMISSIONERS, MY CHANCES OF BEING GRANTED A PAROLE WOULD BE 'SEVERELY JEOPARDIZED.' SUCH "ENTRIES" **MUST** BE ELIMINATED. PLEASE SEE THE AUTHORITIES CITED ON PG.[25],L.6-24, SUPRA. SAID AUTHORITIES PERFECTLY APPLY TO THIS "SITUATION," AND ARE HEREBY INCORPORATED BY REFERENCE, AS IF FULLY RECITED IN THEIR ENTIRETY, FORTHWITH.

("DECISION")-PG.2,L.19-29 -- IS "PURE RHETORIC AND PATRONIZATION." NOT ONE WORD APPLIES TO -- OR AFFECTS -- "THE ISSUES AT HAND." SUCH CONSTITUTES A TYPICAL, INDIFFERENT, PRE-PROGRAMMED RESPONSE.

("DECISION")-PG.2,L.30-32 (END WITH: "RESPONSE"). ONCE AGAIN, C.C.H.C.S. "IS WRONGFULLY PASSING THE BUCK UPON C.D.C.R. CUSTODY." CUSTODY'S RESPONSIBILITY

ENCOMPASSES: ATTENDANCE ENFORCEMENT -- I.E., A CORRECTIONAL OFFICER -- SPECIFICAALY ASSIGNED TO THAT "POSITION" -- NOTIFIES "HOUSING UNITS" WHEN IT IS TIME FOR GROUPS TO START -- THEN MAKES SURE THAT ALL ASSIGNED INMATES SHOW UP. THAT OFFICER'S DUTIES ALSO ENCOMPASS PROVISION OF SECURITY WHILE GROUPS ARE OPERATING. IF AN INMATE OR INMATES ENGAGE IN ANY TYPE OF MISCONDUCT OR "NOTABLE MISBEHAVIOR," THAT OFFICER IS RESPONSIBLE FOR 'AUTHORING RULE[S] VIOLATION REPORTS AND UNDERTAKING "ANY OTHER, NECESSARY" DISCIPLINARY PROCEDURE THAT MAY BE CALLED FOR. **THAT** IS THE EXTENT 'OF CUSTODY PERSONNEL'S ROLE.'

"CUSTODY INMATE ASSIGNMENT STAFF" ISSUE WORK AND EDUCATION ASSIGNMENTS. **THEY DO NOT** COMPRISE "ASSIGNMENT LISTS FOR I.S.U.D.T. OR "ITS SPLINTER GROUPS." **THAT** "RESTS EXCLUSIVELY WITH C.C.H.C.S. PERSONNEL." PG.2'S LINES 30 - 32 ARE PERFIDIOUS.

("DECISION")-PG.2,L.36 -- **"THIS DECISION EXHAUSTS YOUR ADMINISTRATIVE REMEDIES"** IS AGREED WITH.

**REBUTTAL TO "HEADQUARTER'S DECISION" IS CONCLUDED.**

**3.[e] CLAIM I: CLOSING STATEMENT**

PLEASE SEE "THE FORM," PG.3-B.,L.19-20; AND PG.3-B.,L.35 - PG.3-C.,L.14, SUPRA. SUCH IS INCORPORATED BY REFERENCE IN THEIR ENTIRETY AS IF FULLY AND CURRENTLY REDRAFTED IN THEIR ENTIRETY, FORTHWITH. I DO NOT HAVE "SUBSTANCE [AB]USE DISORDER ISSUES." [TODAY IS MAY 11, 2024]. I HAVE NOW BEEN PERFECTLY SOBER: 35 YEARS, 5 MONTHS, AND 1 WEEK. AS OF JUNE 1, 2024, I WILL BE 34 YEARS OF BEING "TOBACCO FREE." I RESPECTFULLY SUBMIT THAT I WAS 'BULLIED INTO "SUBSTANCE TREATMENT" THAT I DO NOT NEED OR WANT.' SUCH IS UNJUST, UNCONSTITUTIONAL, AND ILLEGAL.

"AS POINTED OUT WITHIN PG.[26],L.5 - PG.[30],L.16, SUPRA -- SEEING THAT I.S.U.D.T. AND ITS "SPLINTER GROUPS" WERE LAUNCHED BY - AND OBVIOUSLY OPERATED BY C.C.H.C.S. -- "THE 'T' [TREATMENT]" IS SUBJECT TO THE [U.S.] CONSTITUTIONAL; [U.S.] SUPREME COURT; AND CALIFORNIA AUTHORITIES AS CITED THEREIN. I.S.U.D.T. AND ITS "SPLINTER GROUPS" **SHOULD ONLY BE VOLUNTARY**. **"STATEWIDE MANDATORY ATTENDANCE REGULATIONS" SHOULD NEVER HAVE BEEN ENACTED** [EMPHASIS ADDED].

I HAVE 'PREVIOUSLY DISCUSSED THE "PASSING OF THE BUCK" RE. "MEDICAL'S V CUSTODY'S DUTIES" PERTAINING TO THE "OPERATION OF" I.S.U.D.T., D.R.P., AND C.B.I.' WITHIN PGS.: [31],L.27 - [32],L.6; / [32],L.27- [33],L.11, SUPRA. DEFENDANTS WILL INEVITABLY "INSTITUTE SUCH BUCK PASSING" WHEN ANSWERING THIS [CIVIL] ACTION. I RESPECTFULLY URGE THIS HONORABLE COURT 'TO BE WARY OF SUCH STUNTS BY C.C.H.C.S. PERSONNEL' AND TO INDEPENDENTLY ASCERTAIN "EXACTLY WHO DOES WHAT" [EMPHASIS ADDED].

FINALLY, DEFENDANTS WILL INEVITABLY ALLEGE THAT I.S.U.D.T., D.R.P., AND C.B.I., ARE "IMPORTANT STEPS TOWARD REHABILITATION / REDUCTION OF RECIDIVISM / MANDATED BY THE BOARD [OF] PRISON TERMS FOR THE CONSIDERATION OF -- AND "POSSIBLE SETTING" OF A PAROLE [RELEASE] DATE. SUCH A CLAIM WOULD BE PERFIDIOUS. WHILE IT IS TRUE THAT THE B.P.T. **PREFERS** 'COMPLETION OF SELF-HELP GROUPS, AND INDEED "PLACES GREAT WEIGHT" ON SUCH 'AS A SIGNIFICANT FACTOR RE. PAROLE CONSIDERATION[S],' "SUCH WEIGHT" IS **PREFERENCE -- NOT DEMAND.** CURRENTLY, "PAROLE PREPARATION" "IS NOT ON THE TABLE" FOR ME. PLEASE SEE PG.[22],PARAGRAPH 3, SUPRA. MY EARLIEST POSSIBLE PAROLE CONSIDERATION WOULD BE IN **2079.** ("THAT WOULD MAKE ME **128** YEARS OLD"). MY MAXIMUM RELEASE DATE "IS IN **2111.**" ("THAT WOULD MAKE ME **160** YEARS OLD"). THUS, THERE CAN BE NO SERIOUS CLAIM THAT I.S.U.D.T., D.R.P., OR C.B.I. ARE "PAROLE PREPARATION." EVEN IF I WERE "WITHIN RANGE" OF BEING RELEASED, I HAVE SHOWN THAT THE DEFENDANTS HAVE NO CONSTITUTIONAL OR LEGAL RIGHT TO FORCE [THEIR] **"TREATMENT"** 'ON ME.' SUCH "FORCE" VIOLATES THE EIGHTH AMENDMENT'S "CRUEL & UNUSUAL" PROTECTIONS.

**3. [f]** **CLAIM I: ARGUMENT IS CONCLUDED**

///

///

///

///

///

///

4. **CLAIM II DISCUSSION**

(A) **OPENING STATEMENT**

I HAVE BEEN IN C.D.C.R. CUSTODY SINCE DECEMBER 4, 2002. "DURING THAT TIME," I HAVE HAD "DOZENS OF CONFLICTS" WITH C.C.H.C.S. PERSONNEL (HEREAFTER: "MEDICAL STAFF") -- AND -- "IN 2023 / 2024" -- 'SOCIAL WORKERS WHOM ARE EMPLOYED BY C.C.H.C.S..'

"AT THIS POINT," I AM NOT GOING TO ENTER INTO "A BLOW BY BLOW ACCOUNT" PERTAINING TO THOSE CONFLICTS WITH MEDICAL STAFF. IN SUM, I HAVE NO TRUST WHATSOEVER, IN C.D.C.R. MEDICAL STAFF.

A MAJOR ISSUE IS MY ALLEGATION OF BEING MISDIAGNOSED. LABORATORY ("LABS.") WORK -- WHICH TYPICALLY ENTAILS "BLOOD DRAWS" -- IS FREQUENTLY MISANALYZED.

'APPROXIMATELY MARCH OF 2020, I CONSENTED TO LABS..' "IN MAY OF 2020," DOCTOR ARNOLFO ELMAN "INFORMED ME THAT I HAVE HEPATITIS C." PLEASE SEE PG.[15],L.1-14, SUPRA, FOR A "FULL ACCOUNT." I HAVE BEEN IN GOOD HEALTH "ALL THAT TIME," AND AM STILL IN GOOD HEALTH. MY DEMANDS FOR ADDITIONAL TESTING BY "ALTERNATIVE SOURCES" HAVE BEEN SNUBBED REPEATEDLY. I HAVE NOT EXPERIENCED **ANY** OF THE PHYSICAL SYMPTOMS "THAT ATTACH TO HEPATITIS C." I RESPECTFULLY SUBMIT THAT I DO NOT HAVE -- NOR EVER DID HAVE "HEPATITIS C." THE "LABS." WERE MISANALYZED. I WAS MISDIAGNOSED.

THE "HEPATITIS C ENTRY" WITHIN MY MEDICAL FILE HAS REMAINED THE SAME 'FROM 2020, ONWARD.' ALL THAT ANY OTHER MEDICAL STAFF OR C.C.H.C.S. SOCIAL WORKER HAS DONE SINCE 2020 IS COPY DOCTOR ELMAN'S "ORIGINAL ENTRY." PERIOD.

AGAIN, PLEASE SEE PG.[15],L.19-26, SUPRA. WHEN I 'WAS ISSUED' THE 28 PAGES OF MEDICAL FILES "IN SEPTEMBER OF 2023," I WAS SHOCKED TO PERUSE THE HEPATITIS B ENTRY THAT DOCTOR ELMAN HAD MADE. DOCTOR ELMAN -- NOR ANY OTHER MEDICAL STAFF -- EVER SAID A WORD TO ME PERTAINING TO HEPATITIS B [EMPHASIS ADDED]. SUCH WAS QUIETLY ENTERED. "OVER TIME," ALL THAT ANY OTHER MEDICAL STAFF OR C.C.H.C.S. SOCIAL WORKER HAS DONE IS SIMPLY COPY DOCTOR ELMAN'S "ORIGINAL ENTRY." PERIOD.

"FOR YEARS," I WAS MISDIAGNOSED WITHOUT KNOWING 'THAT A DIAGNOSIS HAD TAKEN PLACE.'

'MISANALYSIS OF LABS. WHICH EVOLVES INTO MISDIAGNOSES,' ARE FREQUENT. I HAVE EVIDENCE OF SUCH -- WHICH INCLUDES A "LIVE WITNESS" -- [AN INMATE WAS RELEASED FROM FACILITY "C" "IN 2022" --- AS 'A RESULT OF "LABS.," DOCTOR ELMAN HAD INFORMED HIM THAT HE HAD CIRRHOSIS OF THE LIVER.' LUCKILY, HE WAS RELEASED BEFORE C.D.C.R. MEDICAL TREATMENT BEGAN. HIS DOCTOR HAD TESTING DONE AT A "REGULAR" HOSPITAL. THE RESULTS REVEALED THAT HE DID NOT HAVE CIRRHOSIS OF THE LIVER NOR HAD EVER CAME CLOSE TO ANY TYPE OF LIVER DAMAGE, WHATSOEVER].

WHAT IS EVEN WORSE IS THAT VARIOUS MEDICAL STAFF AND C.C.H.C.S. SOCIAL WORKERS NOT ONLY MERELY COPY 'DOCTOR ELMAN'S HEPATITIS B AND C ENTRIES,' "THEY" LIST SUCH "AS BEING "CURRENT, ACTIVE PROBLEMS."" PLEASE SEE: ATTACHMENT 2, PGS.: 4; 5; 12; 13; 20; 22; AND 25. SINCE I HAVE ALWAYS ADAMANTLY DISAGREED WITH DOCTOR ELMAN'S "2020 DIAGNOSIS," I HAVE ALSO STEADFASTLY REFUSED TO "LET THEM" ADMINISTER ANY MEDICATION, OR PERFORM ANY OTHER TYPE OF TREATMENT -- EVER. SINCE "THEY" HAVE NOT HAD TO ADMINISTER ANY TYPE OF TREATMENT, WHATSOEVER, HEPATITIS B AND C DEFINITELY DO NOT QUALIFY AS "CURRENT, ACTIVE PROBLEMS."

I DON'T REMEMBER EXACTLY WHEN, BUT IN "EARLY 2021," I WAS SUMMONED TO THE FACILITY "C" CLINIC FOR LABS.. [C.D.C.R. HAS A CONTRACT WITH AN INDEPENDENT AGENCY TO PERFORM THE TAKING OF SAMPLES FOR LABS.]. THE TECHNICIAN "MISSED." SHE NICKED THE EXTERIOR OF MY VEIN. IT BEGAN BLEEDING UNDER MY SKIN. I GOT UP, AND REFUSED "ANY FURTHER ATTEMPTS." C.I.M'S. FACILITY "C" MEDICAL STAFF REFUSED TO MAKE ANY EFFORT TO TREAT "THAT MISHAP." THREE (3) MONTHS WOULD PASS BEFORE 'THE INSIDE OF MY LEFT ARM WOULD BECOME NORMAL AGAIN.' I ATTEMPTED TO FILE A GRIEVANCE. IT CONVENIENTLY "DISAPPEARED" AND 'CALIFORNIA ADMINISTRATIVE RULES "TIME-BARRED" ME FROM FURTHER FILINGS.' "EVER SINCE," I HAVE REFUSED ALL "LABS SUMMONSES" AND "OTHER" UNREQUESTED MEDICAL SUMMONSES AND / OR 'PROPOSED PROCEDURES.'

DEFENDANTS -- AS WELL AS "A HOST OF OTHER," C.D.C.R. MEDICAL STAFF -- 'WILL WASTE NO TIME TELLING THIS HONORABLE COURT THAT I HAVE A: SURLY; IRRITATED; RESENTFUL; REFUSIVE; UNCOOPERATIVE; UNHAPPY; UNFRIENDLY ATTITUDE. "THEY" ARE

CORRECT. HOWEVER, ON MANY OCCASIONS, C.D.C.R'S. MEDICAL STAFF HAVE PROVIDED THE **REASONS** THAT BROUGHT OUT SUCH NEGATIVE ATTITUDES [EMPHASIS ADDED]. THE "SUBJECT MATTER" PRESENTED WITHIN PGS.[35] & [36], SUPRA, "ARE MERELY THE TIP OF THE ICEBERG." 'THERE ARE "LINES" THAT C.C.H.C.S.' MEDICAL STAFF AND SOCIAL WORKERS "HAVE CROSSED THAT NEVER SHOULD HAVE BEEN CROSSED."' SUCH "CROSSED LINES" PERTAIN TO "THE COLLECTION" OF FALSE, NEGATIVE, AND PREJUDICIAL ENTRIES THAT HAVE BEEN PLACED WITHIN MY MEDICAL FILE. "EIGHT (8) MONTHS WORTH" OF SUCH FILES COMPRISE **ATTACHMENT 2**. **FACTS** WHICH IDENTIFY AND REFER TO SAID FILES HAVE BEEN SET FORTH WITHIN: "THE FORM" -- PGS.: 3,L.1 - 3-A.,L.9; 3-B.,L.11-20; 3-C.,L.2-14; 4,L.1-6; [THIS] MEM. OF P'S & A'S -- PGS.: [5],L.3 - [7],L.23; [12],L.1 - [13],L.13; [14],L.4 - [16],L.28; [17],L.9 - [19],L.17; [19],L.23 - [20],L.2; [20],L.13 - [24],L.3; SUPRA.

**(B)** **THE PREJUDICIAL MEDICAL FILE ENTRIES**

IN ADDITION TO DOCTOR ELMAN'S "HEPATITIS B & C ENTRIES" AS PRESENTED WITHIN PG.[35],L.12 - [36],L.15, SUPRA, WHICH ARE WITHIN **ATTACHMENT 2'S** PGS.: 4,5,12,13, 20,22, AND 25; THE FOLLOWING ENTRIES ARE ALSO OBJECTED TO WITHIN **ATTACHMENT 2:**

[1] (DOCTOR ELMAN'S) "FORMER HEAVY TOBACCO SMOKER" -- PG.: 4,12,20,25;
[2] (GRACIELA ROMERO'S) "HISTORY SUDT 2.0" ENTRY -- PG.: 18;
[3] (GRACIELA ROMERO'S) "SOCIAL HISTORY / TOBACCO" ENTRY -- PG.: 19;
[4] (GRACIELA ROMERO'S) "SOCIAL HISTORY / ALCOHOL" ENTRY -- PG.: 19;
[5] (GRACIELA ROMERO'S) "SOCIAL HISTORY / SUBSTANCE ABUSE" ENTRY -- PG.: 19;
[6] (GRACIELA ROMERO'S) "LAST USE: DECEMBER 4, 1988" ENTRY -- PG.: 23;
[7] (GRACIELA ROMERO'S) "EDUCATION PROVIDED" ENTRY -- PG.: 24;
[8] (ALICE GRUTMAN'S) "TOBACCO" ENTRY -- PG.: 25;
[9] (ALICE GRUTMAN'S) "I WENT TO A PROGRAM" ENTRY -- PG.: 27;
[10] (ALICE GRUTMAN'S) "PROVIDED PSYCHOEDUCATION" ENTRY -- PG.: 27; [AND]
[11] (OUSMAN CEESAY'S) "SUD PRE-RELEASE SCREENING PLAN" ENTRY -- PG.: 27.

**ALL** OF DOCTOR ELMAN'S HEPATITIS B & C ENTRIES ARE LISTED IN "PROBLEMS ACTIVE" COLUMNS -- AS WELL AS "ITEMS": [1]; [3]; [4]; [5]; [6]; AND [8]; ABOVE, ANTE.

[1] DOCTOR ELMAN'S - "FORMER HEAVY TOBACCO SMOKER" ENTRY

PLEASE SEE THE MEM'S: PG.[6],L.7-21; AND PG.[14],L.13-22, SUPRA. SUCH IS INCORPORATED BY REFERENCE [EMPHASIS ADDED]. WHEN I DISCUSSED MY 'PAST TOBACCO USE' WITH DOCTOR ELMAN "IN EARLY 2020," I FREELY DIVULGED MY 'ENTIRE GAMUT' RE.: MY "YEARS THAT I SMOKED" TO HIM. I ALSO TOLD DOCTOR ELMAN ABOUT "MY SELF-INITIATED "CUT-BACK REGIMEN" PROGRAM" -- EMPHASIZING **THE FACT** THAT **JUNE 1, 1990** WAS MY **FIRST DAY** 'OF GOING WITHOUT A CIGARETTE' [EMPHASIS ADDED]. THUS, WHEN I 'SAW DOCTOR ELMAN,' I HAD BEEN TOBACCO FREE "WELL OVER **29½ YEARS**."

DOCTOR ELMAN'S 'FILE ENTRY' -- "FORMER HEAVY TOBACCO SMOKER" -- IS CORRECT. HOWEVER, HE FAILED TO RECORD MY LONG-TERM ABSTINENCE FROM TOBACCO PRODUCTS. [I HAD ALSO TOLD DOCTOR ELMAN ABOUT A "MULTI-PROCEDURE MEDICAL CHECK-UP" THAT I HAD IN 1998 WHILE I WAS LIVING AND WORKING IN TEXAS. "AT THAT POINT" I HAD BEEN SOBER FOR OVER 9½ YEARS, AND TOBACCO FREE FOR OVER 8 YEARS. I SCHEDULED THIS "CHECK-UP" BECAUSE I WANTED TO KNOW IF I "HAD ANY RESIDUAL PROBLEMS FROM MY DRINKING AND SMOKING DAYS." APPROXIMATELY 1 MONTH AFTER THE EXAMINATION, ALL OF THE TESTS HAD BEEN COMPLETED, AND, I WAS 'GIVEN A PERFECTLY CLEAN' "BILL OF HEALTH"']. I HAVE NOT HAD **ANY TYPE** OF MEDICAL / PHYSICAL "RESIDUAL PROBLEMS, WHATSOEVER."

THE HARM / INJURY / PREJUDICE INCURRED IS WHAT DOCTOR ELMAN **OMITTED**. I HAD 'GIVEN HIM AN HONEST, COMPLETE, EXTENSIVE, HISTORY.' HE ONLY NEEDED TO INCLUDE "A FEW ADDITIONAL WORDS:" [FOLLOWING] "FORMER HEAVY TOBACCO SMOKER" -- "REPORTS HAVING BEEN TOBACCO FREE SINCE JUNE 1, 1990." "NO CURRENT PROBLEMS DIAGNOSED." SINCE NO SUCH 'POSITIVE ENTRY' OCCURRED, THE "FORMER HEAVY TOBACCO SMOKER" ENTRY HAS BEEN QUOTED BY NUMEROUS PARTIES ON NUMEROUS OCCASIONS AND UTILIZED TO PORTRAY ME "IN A NEGATIVE LIGHT" BY LISTING "FORMER HEAVY TOBACCO SMOKER" IN "PROBLEMS (ACTIVE)" COLUMNS OF 'REPORTS THAT THEY COMPOSE.' SUCH "LISTINGS" COULD BE READILY AND EASILY CONSTRUED TO INFER THAT I HAVE A CURRENT TOBACCO PROBLEM. THE PREJUDICE INCURRED IS SUBSTANTIAL. **ALL** OF THOSE ENTRIES NEED TO BE AMENDED TO ENCOMPASS THE 'POSITIVE VERBIAGE' AS STATED ON LINES 20, 21, SUPRA.

[2] (GRACIELA ROMERO'S): "HISTORY SUDT 2.0" ENTRY

PLEASE SEE THE MEM'S: PG.[6],L.22-26, SUPRA. SUCH IS INCORPORATED BY REFERENCE. (QUOTE) "THIS PATIENT DOES NOT HAVE ANY CURRENT ADDICTION MEDICINE ORDERS." (UNQUOTE). THE INFERENCES THAT THAT ENTRY IS CAPABLE OF MAKING ARE VAST. MOST OBVIOUS OF ALL, USE OF THE WORD: "ADDICTION" COULD BE LOOKED UPON AS AN INFERENCE THAT I HAVE 'SOME TYPE OF CURRENT "ADDICTION."' ADDITIONALLY, MS. ROMERO "TRIED VERY HARD TO GET ME TO AGREE TO TAKE 'CIBOXIN' -- A PSYCHOTROPIC MEDICATION -- WHICH I ADAMANTLY REFUSED TO ACCEPT OR AGREE TO. "SHE WENT ON AND ON." FINALLY, I VERBALLY CITED MY 'ABSOLUTE FEDERAL AND STATE LEGAL RIGHTS TO HER, PERTAINING TO MY RIGHT TO REFUSE MEDICATION[S].' I FURTHER WARNED HER THAT I WOULD SEEK "CIVIL AND CRIMINAL PENALTIES" AGAINST HER IF SHE ATTEMPTED TO -- OR ACTUALLY DID -- PRESCRIBE ANY MEDICATIONS ANYWAY.

I RESPECTFULLY SUBMIT THAT THERE WAS ABSOLUTELY **NO NEED** FOR MS. ROMERO TO ENTER ANYTHING ABOUT "MEDICINE[S]" OR USE OF THE TERM: "ADDICTION" INTO MY MEDICAL FILE. DOING SUCH HAS CREATED SUBVERSIVE, SUGGESTIVE INFERENCES THAT ARE EXTREMELY PREJUDICIAL. WITH OVER '3½ DECADES OF PERFECT SOBRIETY AND NEARLY 34 YEARS OF BEING TOBACCO FREE,' I DO NOT HAVE **ANY** ADDICTIONS. THAT **ENTIRE ENTRY** NEEDS TO BE DELETED FROM MY MEDICAL FILES.

[3] (GRACIELA ROMERO'S): ""SOCIAL HISTORY" / "TOBACCO" ENTRY"

PLEASE SEE THE MEM'S: PG.[5],L.4-16; AND PG.[17],L.9-19, SUPRA. SUCH IS INCORPORATED BY REFERENCE. MS. ROMERO STATES (PARTIAL QUOTE): "USE TYPE: PACKS. 2 PER DAY. 15 YEAR(S). TOTAL PACK YEARS: 30." (END PARTIAL QUOTE). [ATTACHMENT 2, PG.19]. THAT INFORMATION IS PERFIDIOUS. I NEVER TOLD MS. ROMERO "15 YEARS." I TOLD HER: 6 YEARS. [PLEASE SEE "THE DETAILS" WITHIN THE MEMS' PG.[5],L.7-9, SUPRA]. NOR DID I TELL HER "THAT I SMOKED PACKS FOR 30 YEARS." THE "15 YEARS" IS INCORRECT, AND [THE] "TOTAL PACK YEARS: 30" "IS MS. ROMERO'S OWN CREATION." THE "15 YEARS" NEEDS TO BE 'CORRECTED TO 6,' "TOTAL PACK YEARS; 30" NEEDS TO BE DELETED, AND MY "LONG, LONG AGO TOBACCO HISTORY REMOVED FROM HER "PROBLEMS (ACTIVE)" COLUMN. THAT

ENTRY INFERS THAT (a) MY SMOKING "WAS FAR HEAVIER" THAN IT ACTUALLY WAS, AND (b) THAT 'I STILL HAVE PROBLEMS WITH TOBACCO PRODUCTS [SINCE MS. ROMERO LISTED MY FORMER TOBACCO USE IN AN "ACTIVE PROBLEMS" COLUMN].' SUCH FALSE INFORMATION IS SUBSTANTIALLY PREJUDICIAL AND NEEDS TO BE CORRECTED AND "SOME" REMOVED FROM MY MEDICAL FILE.

[4] (GRACIELA ROMERO'S): "SOCIAL HISTORY / ALCOHOL" ENTRY

PLEASE SEE THE MEM'S: PG.[5],L.17-33; AND [18],L.1-10, SUPRA. SUCH ARE INCORPORATED BY REFERENCE AS IF FULLY AND CURRENTLY REDRAFTED IN THEIR ENTIRETY, FORTHWITH [EMPHASIS ADDED]. THOSE PREVIOUS "ITEMS" "SAY IT ALL." ALCOHOL IS NOT A "CURRENT / ACTIVE PROBLEM." LINE #5 OF HER PARAGRAPH ON PG.19 CONTAINS A FALSE "YEAR ENTRY" -- "STOPPED ON 12/4/1998" IS FALSE. I "STOPPED" ON DECEMBER 3, **1988** AT 6:45 P.M.. WITHIN HER FIRST LINE "OF THAT PARAGRAPH," MS. ROMERO MADE A TOTALLY FALSE, UNCALLED FOR, EXTREMELY PREJUDICIAL REMARK — "WITHDRAWAL SYMPTOMS PRESENT YES." THAT REMARK IS 'THE PERFECT DEFINITION OF EXTREME PREJUDICE.' BY ITSELF, THAT [WRITTEN] REMARK CONSTITUTES LIBEL AND CHARACTER ASSASSINATION. **WHAT WITHDRAWALS?** I TALKED TO MS. ROMERO ON 08/08/2023. "AT THAT JUNCTURE," I HAD: 34 YEARS, 8 MONTHS, AND 4 DAYS OF PERFECT SOBRIETY. **WHAT WITHDRAWALS?** "ALCOHOL NEEDS TO BE DELETED FROM "CURRENT (ACTIVE)" / "1998" NEEDS TO BE CORRECTED TO 1988 / AND "WITHDRAWAL SYMPTOMS PRESENT YES" NEEDS TO BE DELETED FROM MY FILE. THE PREJUDICE INCURRED HERE IS EXTREME. MS. ROMERO HAS "COMPOSED ENTRIES" THAT INFER THAT I STILL HAVE "ACTIVE PROBLEMS WITH ALCOHOL" AND THAT I AM SUFFERING PHYSICAL WITHDRAWALS. SUCH "MATERIAL" SHOULD NEVER HAVE BEEN ENTERED INTO MY FILE.

[5] (GRACIELA ROMERO'S): "SOCIAL HISTORY / SUBSTANCE ABUSE" ENTRY

PLEASE SEE THE MEM'S: PG.[6],L.27-32; AND [18],L.11-16, SUPRA. SUCH IS INCORPORATED BY REFERENCE. (PG.19) "SUBSTANCE ABUSE --- FORMER MARIJUANA..." THIS ENTRY IS PREJUDICIAL RE. 'WHAT HAS BEEN LEFT OUT.' I SPECIFICALLY TOLD MS. ROMERO 'THAT MY FINAL MARIJUANA USE WAS **8** MONTHS BEFORE I STOPPED DRINKING.' SHE MERELY ENTERS: "FORMER, MARIJUANA." NOTHING POSITIVE FOLLOWS. "SUBSTANCE ABUSE" IS

WITHIN [HER] (CURRENT / "PROBLEMS / ACTIVE") "SOCIAL HISTORY" COLUMN. SUCH IS PREJUDICIAL BECAUSE 'IT CASTS AN INFERENCE' THAT "SUBSTANCE ABUSE" IS STILL A PROBLEM AND THAT MARIJUANA IS THAT "SUBSTANCE." THAT ENTRY NEEDS TO BE DELETED IN ITS ENTIRETY.

[6] (GRACIELA ROMERO'S): "LAST USE: DECEMBER 4, 1988" ENTRY

PLEASE SEE THE MEM'S. PG.[5],L.34 - [6],L.6; AND PG.[18],L.17-26, SUPRA. SUCH ARE INCORPORATED BY REFERENCE.(THE FOLLOWING IS CONTAINED WITHIN MS. ROMERO'S "COMMENTS" PORTION OF HER "REPORT")--"DRUG OF CHOICE: MARIJUANA CIGARETTES / LAST USE: DECEMBER 4, 1988 / ROUTE OF ADMINISTRATION: PT DID NOT DISCLOSE / ONSET OF USE: OT DID NOT DISCLOSE / HISTORY OF OVERDOSES: NONE / WITHDRAWAL SYMPTOMS: NONE PRESENT." (END QUOTE). (a) "MARIJUANA CIGARETTES" IS CORRECT / (b) "LAST USE" IS INCORRECT. I SPECIFICALLY TOLD MS. ROMERO THAT "MY LAST MARIJUANA WAS "EARLY APRIL, 1988."" ON DECEMBER 4, 1988, I WOKE UP SOBER IN JANUS DETOX. / (c) I TOLD MS. ROMERO THAT I SMOKED MARIJUANA. ISN'T THAT "A ROUTE OF ADMINISTRATION?" / (d) ONSET OF USE: I TOLD MS. ROMERO THAT I SMOKED MARIJUANA FOR THE FIRST TIME WHEN I WAS 9 YEARS OLD. ISN'T THAT "ONSET?" / (e) "HISTORY OF OVERDOSES" VERBIAGE WAS TOTALLY UNNECESSARY / (f) "WITHDRAWAL SYMPTOMS" VERBIAGE WAS TOTALLY UNNECESSARY. [THERE ARE 2 ADDITIONAL ITEMS: "TRIGGERS FOR USE: PT DID NOT DISCLOSE" -- THERE ARE NO "TRIGGERS." AS OF 8/8/2023, I HAD NOT SMOKED MARIJUANA FOR 35 YEARS AND 4 MONTHS. THEN SHE ENTERED: "COPING SKILLS: PT DID NOT DISCLOSE." I TOLD MS. ROMERO THAT I ONLY "SPORADICALLY" SMOKED MARIJUANA -- SUCH WASN'T "A DAILY EVENT." THERE WAS NOTHING TO "COPE WITH"]. THERE WAS ABSOLUTELY NO NEED FOR THAT "MARIJUANA ENTRY TO BE PLACED IN MY MEDICAL FILE "DUE TO MY 3½ DECADES OF NOT USING IT. SUCH IS PREJUDICIAL IN THAT SUCH INFERS "THAT MARIJUANA MIGHT BE A CURRENT PROBLEM -- WHICH IS UNTRUE." THAT ENTIRE ENTRY NEEDS TO BE REMOVED FROM MY MEDICAL FILE. AT "A BARE MINIMUM," "LAST USE: DECEMBER 4, 1988; NEEDS TO BE CORRECTED TO STATE: "EARLY APRIL OF 1988." "HISTORY OF OVERDOSES" AND "WITHDRAWAL SYMPTOMS MENTIONS" ARE COMPLETELY UNNECESSARY AND ALSO NEED TO BE DELETED.

[7] (GRACIELA ROMERO'S): "EDUCATION PROVIDED" ENTRY

PLEASE SEE THE MEM'S. PG.[12],L.3-23; AND PG.[19],L.1-17, SUPRA. SUCH ARE INCORPORATED BY REFERENCE AS IF FULLY AND CURRENTLY REDRAFTED IN THEIR ENTIRETY, FORTHWITH [EMPHASIS ADDED]. MS. ROMERO'S "SPEECH" WAS TOTALLY UNNECESSARY. IT IS CRYSTAL CLEAR **THAT EVERYTHING** THAT I HAD SHARED WITH HER PERTAINING TO MY LONG-TERM SOBRIETY -- AS WELL AS MY "LONG-TERM ABSTINANCE FROM TOBACCO -- WENT UNHEEDED, SNUBBED, AND DISREGARDED. I CONCISELY AND EMPHATICALLY INFORMED HER THAT I HAD **NEVER** SO MUCH AS EXPERIMENTED WITH "HARD NARCOTICS -- AS WELL AS "A HOST" OF HARD DRUGS." PLEASE SEE THE MEM'S PG.[10],L.22-33; AND PG.[11],L.29-32, SUPRA. MS. ROMERO "HAD HER SET AGENDA:" "FILL A GROUP SEAT." NOTHING THAT I SAID MADE ANY DIFFERENCE, WHATSOEVER. THAT "EDUCATION PROVIDED" ENTRY NEEDS TO BE REMOVED IN ITS ENTIRETY. THE PREJUDICE IS OBVIOUS AND VERY, VERY EXTREME -- IT INFERS THAT 'I HAD NARCOTIC AND / OR HARD DRUG PROBLEMS (THAT I NEVER HAD) AND SUGGESTS THAT I COULD CURRENTLY BE USING IN PRISON (WHICH I NEVER HAVE DONE -- NOR EVER WILL DO) [EMPHASIS ADDED].' "THAT ENTRY" QUALIFIES AS CHARACTER ASSASSINATION JUST BY ITSELF.

[8] (ALICE GRUTMAN'S): "TOBACCO" ENTRY

PLEASE SEE THE MEM'S PG.[14],L.23-28, SUPRA. SUCH IS INCORPORATED BY REFERENCE. MS. GRUTMAN HAS MERELY QUOTED DOCTOR ELMAN'S "FORMER HEAVY TOBACCO SMOKER" ENTRY AND PLACED SUCH WITHIN HER "PROBLEMS (ACTIVE)" COLUMN. PLEASE REFER BACK TO [1], PG.[38],L.1-28; AND [3], PG.[39],L.19-[40],L.5, WHICH EQUALLY APPLIES HERE, ALSO. FOLLOWING NEEDS TO BE ADDED: "REPORTS HAVING BEEN TOBACCO FREE SINCE JUNE 1, 1990.""NO CURRENT PROBLEMS DIAGNOSED." ADDITIONALLY, "FORMER HEAVY TOBACCO SMOKER" NEEDS TO BE ENTIRELY DELETED FROM HER "PROBLEMS (ACTIVE)" COLUMN.

[9] (ALICE GRUTMAN'S): "I WENT TO A PROGRAM" ENTRY

PLEASE SEE THE MEM'S PG.[7],L.1-18; AND PG.[16],L.3-17, SUPRA. SUCH ARE INCORPORATED BY REFERENCE, FORTHWITH. ONE SENTENCE WITHIN HER REPORT ON PG.27 CONTAINS 3 PERFIDIOUS ITEMS:

(TOP OF ATTACHMENT 2'S PG.27 - MS. GRUTMAN'S "COMMENTS") (QUOTE) "I WENT TO A PROGRAM IN 1998 DRUNK AS 5 MEN AND LEFT SOBER AS CAN BE." (END QUOTE). 1. I DID NOT SAY: "I WENT TO A PROGRAM. 2. I DID NOT SAY: "1998." 3. I DID NOT SAY: AND LEFT SOBER AS CAN BE." I TOLD MS. GRUTMAN THE FOLLOWING:

> "ON THE EVENING OF DECEMBER **3, 1988**, AT 6:45 P.M., I STAGGERED INTO JANUS DETOX IN SANTA CRUZ -- DRUNK ENOUGH FOR 5 **PEOPLE**. FURTHERMORE, I ALSO TOLD MS. GRUTMAN THAT I REMAINED AT JANUS FOR **1 WEEK** -- WAS DISCHARGED -- "LEFT FULLY SOBER" -- AND ALMOST IMMEDIATELY LOCATED, AND BEGAN ATTENDING ALCOHOLICS ANONYMOUS MEETINGS AT THE SANTA CRUZ FELLOWSHIP."

I DEFINITELY DID NOT CALL MYSELF "A MAN." I AM TRANSGENDER. MS. GRUTMAN DEFINITELY KNEW SUCH. AT THE START OF THE TELECONFERENCE, SHE CALLED ME "SIR." I POINTEDLY TOLD HER TO NOT ADDRESS ME 'AS SIR OR ANY OTHER MALE TERMS' BECAUSE I AM TRANSGENDER. ADDITIONALLY, I WAS WEARING FEMALE ATTIRE -- WHICH SHE COULD SEE. "DRUNK AS 5 MEN" IS AN OUTRIGHT LIE.

ANOTHER SENTENCE IS ALSO PERFIDIOUS BECAUSE MS. GRUTMAN ADDED ONE WORD. (QUOTE) "I HAVEN'T HAD ANY DRUGS OR ALCOHOL SINCE." (END QUOTE). TO CONCLUDE MY ABOVE STATEMENT AS PRESENTED ON LINES 5 - 7½, SUPRA, I SAID: "I HAVE NOT HAD "ONE DROP" OF ALCOHOL SINCE THE EVENING OF DECEMBER 3, 1988." MS. GRUTMAN "TOTALLY CHANGED WHAT I TOLD HER." SHE CANNOT CLAIM "PARAPHRASING," BECAUSE SHE ADDED "DRUGS" INTO A SEGMENT OF THE CONVERSATION THAT WAS CENTERED ON ALCOHOL. DOING SO MAKES THAT STATEMENT FALSE. PREJUDICE IS SUBSTANTIAL. MS. GRUTMAN HAS TOTALLY DETRACTED THE POSITIVENESS PERTAINING TO THE BEGINNING OF MY SOBRIETY THROUGH HER "PRESENTATIONS" AS PUT FORTH ABOVE, SUPRA. SHE "TOOK IT UPON HERSELF TO "SHORTEN" 'MY TIME OF SOBRIETY' BY ENTERING 1998 INSTEAD OF **1988**." SHE INSULTED ME BY STATING "THAT I CALLED MYSELF A MAN" -- WHICH IS A BLATANT LIE. WHAT SHE HAS "COMPOSED" CONSTITUTES LIBEL AND CHARACTER ASSASSINATION. MS. GRUTMAN'S FALSE / INCORRECT / "ENTRIES" NEED TO BE CORRECTED BY ENTERING THE STATEMENT SET FORTH ON LINES 5 - 7½ AND LINE 16 (BEGIN WITH: "I), 17 (END WITH: **1988.**"). [HER INTEREST WAS NOT IN MY ACCOMPLISHMENTS, IT WAS TO "FILL AN I.S.U.D.T. SEAT"].

[10] <u>(ALICE GRUTMAN'S): "PROVIDED PSYCHOEDUCATION" ENTRY</u>

PLEASE SEE THE MEM'S PG.[12],L.24 - [13],L.6; AND PG.[16],L.3-28, SUPRA. SUCH ARE INCORPORATED BY REFERENCE AS IF FULLY AND CURRENTLY REDRAFTED IN THEIR ENTIRETY, FORTHWITH [EMPHASIS ADDED]. MS. GRUTMAN'S "PSYCHOEDUCATION SPEECH" WAS TOTALLY UNNECESSARY FOR THE SAME EXACT REASONS THAT MS. ROMERO'S "EDUCATION PROVIDED" "SPEECH" WAS UNNECESSARY. PLEASE SEE: PG.[42],L.4(BEGIN WITH: "IT") - L.16. MS. GRUTMAN'S "PROVIDED PSYCHOEDUCATION SPEECH" NEEDS TO BE DELETED FROM MY MEDICAL FILE IN ITS ENTIRETY. MS. GRUTMAN'S "PSYCHOEDUCATION SPEECH" CONSTITUTES CHARACTER ASSASSINATION OF A MOST EGREGIOUS NATURE.

[11] <u>(OUSMAN CEESAY'S): "SUD PRE-RELEASE SCREENING PLAN" ENTRY</u>

PLEASE SEE THE MEM'S PG.[23],L.17 - [24],L.3, SUPRA. SUCH IS INCORPORATED BY REFERENCE, FORTHWITH. "ON THE BOTTOM PORTION OF <u>ATTACHMENT 2'S</u> PAGE 27, MR. CEESAY AUTHORED THE "SUD PRE-RELEASE SCREENING PLAN -- EDUCATION PROVIDED" PARAGRAPH" THAT I QUOTED WITHIN THIS MEM'S PG.[23],L.23-26, SUPRA. THAT "MATERIAL" IS MR. CEESAY'S "EXCLUSIVE CREATION." UPON MY ARRIVAL AT THE "C"-YARD CLINIC "FOR THAT" APPOINTMENT, MR. CEESAY IMMEDIATELY "STARTED CARRYING ON ABOUT "SUBSTANCE ABUSE."" I IMMEDIATELY INFORMED HIM THAT -- "AT THAT TIME" -- I HAD <u>34 YEARS, 2 MONTHS, AND 6 DAYS OF PERFECT SOBRIETY</u> AND <u>32 YEARS, 8 MONTHS, AND 9 DAYS OF BEING TOBACCO FREE</u>. I FURTHER INFORMED MR. CEESAY THAT I DON'T NEED OR WANT ANY 'GROUP THERAPY' DUE TO MY 'INCREDIBLE STRENGTH RE. MAINTAINING MY SOBRIETY AND NO LONGER SMOKING.' FINALLY, I TOLD MR. CEESAY "THAT I WAS TIRED OF BEING CHASED AND HOUNDED BY MEDICAL STAFF -- AND THAT IF SUCH CONTINUED -- I WOULD FILE HARASSMENT AND OTHER APPROPRIATE COMPLAINTS, IF SUCH BECAME NECESSARY. MY FINAL WORDS WERE: "LEAVE ME ALONE." I THEN "GOT UP AND LEFT."

THE "EDUCATION" THAT MR. CEESAY STATED THAT HE PROVIDED TO ME IS A BLATANT LIE. I KNEW NOTHING ABOUT SUCH <u>UNTIL I READ IT FOR THE FIRST TIME AFTER RECEIVING THE DOCUMENTS THAT I RECEIVED IN SEPTEMBER, 2023.</u> THE PREJUDICE THAT ATTACHES DUE TO "SUBJECT MATTER" IS EXTREME." MR. CEESAY'S "SUD PRE-RELEASE

SCREENING PLAN" CONTAINS COMMENTS THAT ARE COMPLETELY UNNECESSARY, AND ARE VERY NEGATIVE AND 'INFERENTIAL:' (QUOTE) "ENCOURAGE HCV, HIV, AND OTHER SEXUALLY TRANSMITTED DISEASE TESTING" (END QUOTE). (I HAVE "BEEN AT C.I.M." SINCE DECEMBER 19, 2016). "IN EARLY 2017," I "ENROLLED" IN C.I.M'S. TRANSGENDER PROGRAM. THUS, THERE ARE "A HOST" OF ENTRIES IN MY MEDICAL FILE PERTAINING TO MY TRANSGENDER ("GENDER DYSPHORIA") STATUS. [FOR THE RECORD, I AM ALSO: "ASEXUAL" -- WHICH MEANS THAT I HAVE NO INTEREST IN "PHYSICAL SEXUAL ACTIVITY" WITH ANYONE -- MALE OR FEMALE. UNFORTUNATELY, THERE ARE FAR TOO MANY PEOPLE THAT ASSUME THAT IF A PERSON IS TRANSGENDER, THAT PERSON IS "SEXUALLY ACTIVE." MR. CEESAY'S: "ENCOURAGE HCV, HIV, AND OTHER SEXUALLY TRANSMITTED DISEASE TESTING" COMMENT CLEARLY INFERS THAT HE HAD READ THE "TRANSGENDER ENTRIES" IN MY MEDICAL FILE AND AUTOMATICALLY ASSUMED THAT I WAS SEXUALLY ACTIVE -- WHICH IS TOTALLY FALSE. THERE WAS ABSOLUTELY NO 'DISCUSSION RE. THIS SUBJECT AT THE 2/10/2023, APPOINTMENT.'

(QUOTE) "RISK OF CONTINUOUS USE." (UNQUOTE). I HAD EXPLICITLY TOLD MR. CEESAY ABOUT MY LONG-TERM SOBRIETY AND LONG-TERM ABSTINANCE FROM TOBACCO PRODUCTS. SEE PG.[44],L.17 (BEGIN WITH: "I") - L.19 (END WITH: "FREE"). [I ASK: WHAT "CONTINUOUS USE" OF WHAT]?

(QUOTE) "IDENTIFYING AND MANAGING TRIGGERS AND CRAVINGS." (UNQUOTE). I DO NOT HAVE -- NOR HAVE EVER HAD -- "TRIGGERS" AND / OR "CRAVINGS." I TOLD MR. CEESAY THAT NOT ONLY DO I NOT MISS ALCOHOL AND TOBACCO, I HAVE CAME TO LITERALLY HATE THE VERY EXISTENCE OF ALCOHOL, DRUGS, AND TOBACCO BECAUSE OF ALL OF THE PROBLEMS THOSE SUBSTANCES CAUSE -- ESPECIALLY IN INSTITUTIONS.

OF ALL OF THE PREJUDICIAL ENTRIES WITHIN MY MEDICAL FILE THAT I HAVE PRESENTED, MR. CEESAY'S IS THE WORST. THE EXTREME PREJUDICE IS GLARINGLY OBVIOUS. AS PUT FORTH, SUPRA, MR. CEESAY'S BIASED AND UNNECESSARY COMMENTS CONSTITUTE LIBEL AND CHARACTER ASSASSINATION. ESPECIALLY EGREGIOUS IS THAT HE LIED AND SAID THAT I WAS PRESENT. HIS "REPORT" NEEDS TO BE DELETED FROM MY FILE.

(C) **FINAL POINTS AND APPLICABLE AUTHORITIES**

**LIBEL (NOUN)**

DEFAMATION; DEFAMATORY WRITING; DEGRADATION; DENIGRATION; DISPARAGEMENT; FALSE PUBLICATION; FALSE STATEMENT; FALSEHOOD; FALSIFICATION; IMPAIRMENT OF REPUTATION; INJURY TO CHARACTER; INJURY TO ONE'S REPUTATION; MALICIOUS PUBLICATION; VILIFICATION; WRITING THAT DISCREDITS; SLUR; SMEAR.

**LIBEL (VERB)**

CENSURE; DEFAME; DEFAME BY WRITING; DEFAME BY A PUBLISHED WRITING; DENIGRATE; DENOUNCE; DISCREDIT; DISCREDIT IN WRITING; DISPARAGE; IMPAIR ONE'S REPUTATION; INJURE ANOTHER'S REPUTATION; INJURE BY A PUBLISHED WRITING; INJURE ONE'S REPUTATION; PUBLISH A FALSEHOOD; SCANDALIZE; SLUR; SMEAR; TRADUCE; VILIFY.
WILLIAM C. BURTON LEGAL THESAURUS.

LIBEL CONSTITUTES WRITTEN SLANDER. 28 U.S.C. §4101.

INJURY TO REPUTATION CAUSED BY COMMUNICATION OF DEFAMATORY STATEMENTS RESOUND IN THE HEARTLAND OF THE TORT OF DEFAMATION. 28 U.S.C. §2680(h).

INJURIOUS FALSEHOOD THROUGH SLANDER -- SEE: 28 U.S.C. §2679.

PLEASE SEE, E.G.: GREGORY V UNITED STATES, U.S. DISTRICT LEXIS 225750 (2021) U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA ---

> "A COMPLAINT MUST CONTAIN A PLAIN STATEMENT OF THE CLAIM, SHOWING THAT THE PLEADER IS ENTITLED TO RELIEF. FED. R. OF CIV. PROC. 8(a)(2). DETAILED FACTUAL ALLEGATIONS ARE NOT REQUIRED, BUT THE STATEMENT OF THE CLAIM UNDER RULE 8(a)(2) MUST BE "MORE THAN AN UNADORNED - THE DEFENDANT UNLAWFULLY HARMED ME ACCUSATION."
> ASHCROFT V IQBAL, 556 U.S. 662, 678 (2009), QUOTING, BELL ATLANTIC CORP. V TWOMBLY, 550 U.S. 544, 555 (2007), CITING PAPASIN V ALLAIN, 478 U.S. 265, 286 (1986). --- A CLAIM HAS FACIAL PLAUSIBILITY WHEN THE PLAINTIFF PLEADS FACTUAL CONTENT THAT ALLOWS THE COURT TO DRAW THE REASONABLE INFERENCE THAT THE DEFENDANT IS LIABLE FOR THE MISCONDUCT ALLEGED. IQBAL, 556 U.S., AT 678, TWOMBLY, 550 U.S., AT 555,556,557,570."
> GREGORY, AT **4**.

PLEASE SEE ALSO:

TAYLOR V CRONE, U.S. DISTRICT LEXIS 167944 (2023) U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION; [AND] MITCHELL V PLASMA CARE INCORPORATED, U.S. DISTRICT LEXIS 59160 (2011) U.S. DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA.

I RESPECTFULLY SUBMIT **THAT ALL** THAT I HAVE PRESENTED, SUPRA, SATISFIES **ALL**

OF THE "LEGAL REQUIREMENTS" AS SET FORTH ON PG. [46],L.2-27, SUPRA. THE 'DEFINITIONS' PERTAINING TO LIBEL AS PRESENTED WITHIN PG. [46],L.2-9, SUPRA, "PERFECTLY FIT THE SUBJECT MATTER" THAT I HAVE CONCISELY IDENTIFIED AND DISCUSSED WITHIN THIS MEM'S PGS. [37],L.12 - [45],L.28, SUPRA. ["WRITTEN"] LIBEL AND CHARACTER ASSASSINATION ARE RAMPANT AND EGREGIOUS.

IN SUM, C.C.H.C.S.' MEDICAL STAFF AND SOCIAL WORKERS: MERELY COPIED "YEARS OLD" HEPATITUS B AND C ENTRIES THAT "DATE BACK" TO 2020 -- THEN LISTING SAID ENTRIES IN AN "ACTIVE PROBLEMS" COLUMN; MERELY QUOTED "(A) FORMER HEAVY TOBACCO SMOKER" ENTRY THAT HAD POSITIVE INFORMATION OMITTED, AND PLACED SUCH IN AN "ACTIVE PROBLEMS" COLUMN; "CREATED A TOBACCO USE HISTORY THAT CONTAINED FALSE INFORMATION" AND PLACED SAID ENTRY IN A "PROBLEMS ACTIVE" COLUMN; ENTERED 'INCORRECT YEARS' PERTAINING TO MY SOBRIETY; MADE AN UTTERLY FALSE STATEMENT PERTAINING TO MY SOBRIETY BY STATING THAT "WITHDRAWAL SYMPTOMS WERE PRESENT" AND ENTERING SUCH IN AN "ACTIVE PROBLEMS" COLUMN; MADE A TOTALLY IMMATERIAL AND UNNECESSARY STATEMENT: "THIS PATIENT DOES NOT HAVE ANY CURRENT <u>ADDICTION</u> MEDICINE ORDERS" AS PART OF A 'S[UBSTANCE] U[SE] D[ISORDER] T[REATMENT] 2.0' ENTRY. THAT <u>ENTIRE ENTRY</u> SHOULD NEVER HAVE BEEN MADE; MADE 2 "EDUCATIONAL SPEECHES" PERTAINING TO "THE RISKS OF USING / CONTINUOUSLY USING NARCOTICS AND HARD DRUGS" THAT NOT ONLY WERE UNNECESSARY -- SUCH SHOULD NEVER HAVE BEEN ENTERED INTO MY MEDICAL FILE; LITERALLY COMPOSED AND PUBLISHED A TOTALLY FALSE REPORT - TITLED: "SUD PRE-RELEASE SCREENING PLAN." THIS "SUMMARY" IS THE 'FOREGOING SUBJECT MATTER THAT HAS BEEN DISCUSSED WITHIN PG.[37],L.12 - PG.[45],L.28, SUPRA.'

COLLECTIVELY, THOSE MEDICAL FILE ENTRIES HAVE: DEGRADED ME; IMPAIRED MY REPUTATION; INJURED MY CHARACTER; DEFAMED ME BY PUBLISHED WRITING[S]; DISCREDITED ME VIV-A-VIS PUBLISHED WRITING[S]; INJURED MY REPUTATION BY PUBLISHED WRITING[S]; [FLAGRANTLY] PUBLISHED FALSEHOODS; AND SMEARED ME. THE PREJUDICE IS EXTREME.

PLEASE SEE THIS MEMS' PG.[13],L.7-13, SUPRA [EMPHASIS ADDED]. "THOSE LINES ARE RELIED UPON IN THEIR ENTIRETY AS IF FULLY AND CURRENTLY REDRAFTED, FORTHWITH."

**(D) [MY REQUESTED] PUNITIVE DAMAGES AWARD IS JUST AND PROPER**

[AS PART OF: "E. REQUEST FOR RELIEF" -- COMPRISING THE FORM'S PG. 6 -- I HAVE LISTED "EIGHT (8) ITEMS." (TOTALLY, I LISTED TEN (10) ITEMS. "ITEMS NINE (9) AND TEN (10)" ARE LISTED ON 'ATTACHMENT PAGE: 6-A.'). MY PUNITIVE DAMAGES REQUEST IS ITEM #: 8. THE REQUESTED 'AMOUNT' IS ONE HUNDRED THOUSAND DOLLARS **[$100,000.00]**.

CONSIDERING ALL THAT I HAVE PRESENTED THROUGHOUT THIS ENTIRE MEMORANDUM OF POINTS AND AUTHORITIES, THE FORM, AND SUPPORTING EVIDENCE [ATTACHMENTS] -- MY REQUESTED AWARD IS JUST AND PROPER. THE DEFENDANTS NEED TO KNOW "THAT THEY DO NOT HAVE A CARTE BLANCHE PASS TO STEAMROLL OVER INMATES AT WILL." THE OUTRAGEOUS ENTRIES THAT WERE PLACED WITHIN MY MEDICAL FILE -- AS WELL AS BULLYING ME INTO SUBSTANCE [AB]USE CLASSES THAT I DO NOT NEED OR WANT, UNDER THE CONSTANT THREAT OF PROGRESSIVE DISCIPLINE FOR 'REFUSING OR RESISTING' SHOULD NEVER HAVE TRANSPIRED.

"PUNITIVE DAMAGES: PUNITIVE OR EXEMPLARY DAMAGES ARE INTENDED TO PUNISH THE DEFENDANTS FOR THEIR CONDUCT AND DETER THEM OR OTHERS FROM COMMITTING SIMILAR ACTS IN THE FUTURE." SMITH V WADE, 461 U.S. 30, 49-51 (1983). I HAVE SHOWN "3 OF 4" REQUIREMENTS: RECKLESS INDIFFERENCE TO MY RIGHTS, ILL WILL, AND MALICE. ACCORDINGLY, I RESPECTFULLY SUBMIT THAT MY REQUESTED PUNITIVE DAMAGES AWARD IS INDEED JUST AND PROPER.

**4.(E) CLAIM II: CLOSING STATEMENT**

FAR TOO OFTEN, CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES PERSONNEL "OPERATE PER THEIR OWN AGENDA[S]." 'DELIBERATE INDIFFERENCE TO LEGITIMATE NEEDS OF INMATES IS COMMON PRACTICE.' WHILE IT IS TRUE THAT IT WOULD BE UNREALISTIC AND RIDICULOUS TO GIVE ALL INMATES EVERYTHING THAT THEY MAY WANT -- MY "WANTS" ARE NOT "OVER THE LINE" -- THEY ARE "IN BOUNDS" AND PROTECTED UNDER CONTROLLING LAW.....

...[I AM TYPING THIS PAGE ON MAY 21, 2024]. I "AM NOW UP TO:" 35 YEARS, 5 MONTHS, 2 WEEKS, AND 3 DAYS OF PERFECT SOBRIETY. JUNE 1, 2024, "WILL MARK 34 YEARS" OF BEING TOBACCO FREE. "WANT #1" IS RECOGNITION AND RESPECT TO BE SHOWN FOR SUCH -- ABSENT THE INDIFFERENCE, SNUBBING, AND 'FALSIFICATION OF NONEXISTENT PROBLEMS.'

..."WANT #2" IS FOR THE FORCED ATTENDANCE (UNDER A "CLOUD OF C.D.C.R. PROGRESSIVE DISCIPLINE THREATS") OF I.S.U.D.T. "CLASSES" TO CEASE. AS I HAVE DISCUSSED, SUPRA, IT IS UNJUST, UNCONSTITUTIONAL, AND ILLEGAL "TO CLASSIFY THE ENTIRE STATE'S INMATE POPULATION AS HAVING SUBSTANCE [AB]USE DISORDERS" SUCH AS: NARCOTICS; "HARD DRUGS;" ALCOHOL; AND / OR TOBACCO -- THEN -- "UNDER THE CANOPY OF 'MANDATORY REGULATIONS'" -- FORCING / BULLYING ALL INMATES STATEWIDE INTO ATTENDING I.S.U.D.T. OR ONE OF ITS "SPLINTER GROUPS" -- OR FACE THE WRATH OF C.D.C.R. PROGRESSIVE DISCIPLINE FOR 'RESISTING OR REFUSING.' THE CONCEPTS OF SUCH GROUPS ARE COMMENDABLE. HOWEVER, THEY SHOULD BE **VOLUNTARY** -- NOT MANDATORY. "EVERYBODY IS NOT THE SAME." "MANDATORY" VIOLATES THE EIGHTH AMENDMENT'S CRUEL & UNUSUAL GUARANTEE.

..."WANT #3" IS FOR C.C.H.C.S.' MEDICAL STAFF AND SOCIAL WORKERS TO "STOP SMUTTING UP" MY MEDICAL FILE AS I HAVE SHOWN THAT THEY DID THROUGHOUT THIS MEM. OF P'S & A'S, SUPRA -- THAT "THEY" "QUIT INVENTING PROBLEMS THAT NEVER EXISTED."

..."WANT #4" **IS PEACE.** I WANT TO BE LEFT ALONE -- I WANT **ALL** C.C.H.C.S. MEDICAL PERSONNEL AND SOCIAL WORKERS "TO STOP HOUNDING AND HARASSING ME." [IF I EVER DO NEED "ANY OF THEIR SERVICES," I KNOW HOW TO SUBMIT "A WRITTEN 7362 REQUEST"].

IN CLOSING, PLEASE TAKE NOTICE THAT THE ISSUES PRESENTED ARE STILL ONGOING "IN EVERY ASPECT:" DESPITE "THE STATE GRIEVANCE," NOTHING HAS BEEN INSTITUTED TO "CLEAN UP" MY MEDICAL FILE; AND I AM STILL BEING FORCED UNDER THREAT OF PROGRESSIVE C.D.C.R. DISCIPLINARY CRITERIA, TO ATTEND I.S.U.D.T. "CLASSES" EVERY MONDAY, WEDNESDAY, AND FRIDAY NIGHT, FROM 5:30 P.M. - 7:30 P.M..

FINALLY, I APOLOGIZE FOR THE 'LENGTH OF THIS MEMORANDUM.' [I WANTED TO ENSURE THAT THIS HONORABLE COURT **KNOWS "ALL"**].

**4.(F)** **CLAIM II: ARGUMENT IS CONCLUDED**

///

///

///

///

5. **DECLARATION OF PLAINTIFF**

I, JAMES BRADLEY HAAG, DO HEREBY CERTIFY UNDER PENALTY OF PERJURY UNDER 28 U.S.C. §1746, THAT I AM THE PLAINTIFF AND AUTHOR OF THE FOLLOWING DOCUMENTS:

(1) THIS MEMORANDUM OF POINTS AND AUTHORITIES;

(2) [THE] 28 U.S.C. §1343(a) / 42 U.S.C. §1983 CIVIL RIGHTS COMPLAINT BY A PRISONER;

(3) [ACCOMPANYING] REQUEST FOR LEAVE OF COURT TO FILE DOCUMENT IN EXCESS OF 25 PAGES.

--- ADDITIONALLY, I AM ALSO THE PROCURER AND SUBMITTER OF THE ATTACHMENTS THAT ARE EVIDENCE TO -- AND SUPPORT FOR THIS ACTION.

I FURTHER DECLARE UNDER PENALTY OF PERJURY UNDER 28 U.S.C. §1746, THAT ALL BEING SUBMITTED AND PRESENTED IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF -- AND THAT I EXECUTED THIS "DECLARATION" AT:

[THE] CALIFORNIA INSTITUTION FOR MEN -- FACILITY "B" -- [C.D.C.R. #: T-75535] // SYCAMORE WEST 201-L[OW] -- P.O. BOX 3100 -- CHINO, CALIFORNIA -- 91708-3100.

DATED: June 4, 2024

RESPECTFULLY EXECUTED BY:

James Haag

JAMES BRADLEY HAAG;
PLAINTIFF;
IN PROPRIA PERSONA.

///
///
///
///
///
///
///
///
///
///
///
///

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

**PROOF OF SERVICE**

| | | |
|---|---|---|
| James Bradley Haag, Plaintiff. | C.D.C.R. #: T-75535 | Case #: ______ |

**I Hereby Certify** Under Penalty Of Perjury Under 28 U.S.C. §1746 -- That On June 4, 2024, I Served The Following:

-- ["FORM"] 28 U.S.C. §1343(a) / 42 U.S.C. §1983 - CIVIL RIGHTS COMPLAINT BY A PRISONER;

-- [SEPARATE] MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CIVIL RIGHTS COMPLAINT BY A PRISONER UNDER 42 U.S.C. §1983;

-- [ACCOMPANYING] REQUEST FOR LEAVE OF COURT TO FILE DOCUMENT IN EXCESS OF 25 PAGES;
[AND]

-- ATTACHMENTS THAT ARE EVIDENCE TO -- AND SUPPORT FOR THIS ACTION..........

...By Placing Said Documents Within A Postage-Paid, Secure Vessel -- Addressed To The Party Hereinafter Listed -- And By Submitting Said Vessel To Prison Staff For **Placement In The UNITED STATES MAIL At:**

[The] California Institution For Men -- Facility "B" -- Sycamore West - 201-L[ow] -- P.O. Box 3100 -- Chino, California -- 91708-3100.

**THE PARTY SERVED IS:**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION
501 "I" STREET - #4-200
SACRAMENTO, CALIFORNIA
95814

---

I Declare Under Penalty Of Perjury Under 28 U.S.C. §1746 -- That The Foregoing Is True And Correct.

Dated: June 4, 2024 [By] James Haag
(Signature Of Person Completing Service)